### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | Case No. 09 C 7666 |
| THIS DOCUMENT RELATES TO ALL CASES | |

## BERGER & MONTAGUE, P.C.'S
## NOMINATION OF COHEN MILSTEIN SELLERS & TOLL PLLC
## FOR THE PLAINTIFFS' STEERING COMMITTEE

Dated: February 9, 2010

H. Laddie Montague, Jr.
Eric L. Cramer
Daniel Simons
Andrew C. Curley
**BERGER & MONTAGUE, P.C.**
1622 Locust St.
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604
E-mail: hlmontague@bm.net
        ecramer@bm.net
        dsimons@bm.net
        acurley@bm.net

Pursuant to paragraph 11 of the Court's January 13, 2010 Order (Dkt. No. 12), Berger &

Montague, P.C., one of the firms representing plaintiff University of Utah in a case consolidated

for pre-trial purposes in the above-captioned matter (*University of Utah v. CSL Limited, et al.,*

No. 09-7855 (N.D. Ill.)), hereby nominates the law firm of Cohen Milstein Sellers & Toll PLLC[1]

("Cohen Milstein") for a position on plaintiffs' Steering Committee.

In litigating large complex antitrust class actions in numerous industries—including in

particular the pharmaceutical and medical products areas—attorneys from Berger & Montague,[2]

including the undersigned, have had occasion to work with various counsel for Cohen Milstein.[3]

From this experience, we can confidently state that the Court and the proposed class would

benefit from Cohen Milstein's service on the plaintiffs' Steering Committee, and wholeheartedly

endorse Cohen Milstein for that role.

Specifically considering the factors delineated in the Court's January 13, 2010 Order,

Cohen Milstein has: (1) shown through its actions to date a willingness to commit the time and

resources that this case will require; (2) proven its ability to work well with others in the

plaintiffs' bar, and with defense counsel where necessary and appropriate; (3) abundant

experience in the this kind of complex antitrust case; and (4) perhaps most remarkably,

assembled a team to work with them on this case—including, in particular, the undersigned

counsel from Berger & Montague—that has earned the explicit support and endorsement of one

---

[1] Cohen Milstein is also counsel for record for the plaintiff in *University of Utah v. CSL Limited* ("*Univ. of Utah*") and is counsel of record for the plaintiff in *Pemiscot Memorial Hospital v. CSL Ltd., et al.,* No. 09-3143-GP (E.D. Pa.) ("*Pemiscot Memorial*"), each of which have been consolidated for pre-trial purposes pursuant to the Court's January 13, 2010 Order.

[2] Berger & Montague is one of the country's largest and most distinguished complex litigation firms focusing on antitrust litigation and has regularly been cited as a nationwide leader in the antitrust arena. Indeed, Berger & Montague, and the undersigned attorneys, have spearheaded nearly $1 billion in settlements over the past decade on behalf of direct purchaser classes in pharmaceutical antitrust cases, and currently serves as co-lead class counsel in several such cases. *See* www.bergermontague.com (Berger & Montague firm website); www.bergermontague.com/attorney_bio.cfm?id=25 (H. Laddie Montague, Jr.); www.bergermontague.com/attorney_bio.cfm?id=10 (Eric L. Cramer); www.bergermontague.com/attorney_bio.cfm?id=98 (Andrew C. Curley).

[3] Cohen Milstein's firm resume can be found at www.cohenmilstein.com/about.php?AboutusID=1.

of the largest members of the proposed class, Cardinal Health, Inc. ("Cardinal Health"). Cardinal Health, one of the largest medical products distributors in the United States, made purchases of blood plasma derivative protein therapies totaling more than $2.3 billion between January 2005 and November 2009.

## 1. Willingness and Availability to Commit to Time-Consuming Project

Cohen Milstein has conducted a thorough months-long investigation—using public and exclusive non-public sources—uncovering key facts that form part of the core of the operative complaints in *Univ. of Utah* and *Pemiscot Memorial*. Through this work, Cohen Milstein has already shown a willingness to dedicate significant time and resources to this litigation. Among other things, Cohen Milstein's investigative efforts[4] have uncovered several key factual allegations regarding the defendants' anticompetitive conduct at issue here. *See Univ. of Utah* Compl., ¶ 5; *Pemiscot Memorial* Am. Compl., ¶ 5.[5] Additionally, Cohen Milstein—as a national firm with over 50 attorneys—has the resources and staff to represent the class.

## 2. Ability to Work Cooperatively with Others

While working on numerous complex antitrust class actions with counsel for Cohen Milstein playing various roles, including that of co-lead or lead counsel, it has been Berger & Montague's experience that the attorneys from Cohen Milstein working on this case have displayed a high degree of skill, professionalism, and integrity. Moreover, these lawyers have a long history of working cooperatively and successfully with co-counsel—including many of the other plaintiffs' firms that have appeared in this case to date—to advance the interests of their clients and the classes they represent.

---

[4] Rule 23(g)(1)(A)(i) of the Federal Rules of Civil Procedure instructs the Court to consider "the work counsel has done in identifying or investigating potential claims in the action" in appointing class counsel.
[5] *See* Excerpts of paragraph 5 of each of the Complaints attached as Exhibit A.

### 3.    Professional Experience in this Type of Litigation

The Cohen Milstein attorneys involved in this case have significant experience in prosecuting antitrust class actions.  Indeed, Cohen Milstein has been litigating antitrust class action claims for over thirty years, and constitutes one of the preeminent antitrust class action law firms in the United States.

### 4.    Support by Major Member of Proposed Class in this Case

Notably, the litigation team assembled by Cohen Milstein, including the undersigned, has earned the explicit support of one of the most significant members of the proposed class in this case, namely, Cardinal Health—a Fortune 20 company and one of the largest pharmaceutical distributors in the United States.  Cardinal Health purchased more than $2.3 billion worth of blood plasma derivative protein therapies between January 2005 and November 2009, and is likely one of the largest—if not *the* largest—member of the absent class.  Through its long-time outside counsel, Cardinal Health has taken the unusual step of writing a letter to this Court (attached hereto as Exhibit B), expressing confidence in Cohen Milstein (and the undersigned) as class counsel.  In that letter, **Cardinal Health specifically endorses the appointment of "Cohen Milstein as one of the interim co-lead class counsel for the proposed direct purchaser class in this litigation."** *See* Exhibit B.  Cardinal Health's support is important here as this company is one of the largest members of the proposed class with a sizable share of the market for the Plasma-Derivative Protein Therapies at issue in this case.  If Cohen Milstein is appointed, the Court can have confidence that the plaintiffs' Steering Committee will include at least one firm with the explicit support of a major member of the proposed class.

In sum, based on the factors set out above, this Court should appoint Cohen Milstein to the Steering Committee in this case.

Dated: February 9, 2010

Respectfully submitted,

/s/_____
H. Laddie Montague, Jr.
Eric L. Cramer
Daniel Simons
Andrew C. Curley
**BERGER & MONTAGUE, P.C.**
1622 Locust St.
Philadelphia, PA  19103
Tel: (215) 875-3000
Fax: (215) 875-4604
E-mail: hlmontague@bm.net
         ecramer@bm.net
         dsimons@bm.net
         acurley@bm.net

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNIVERSITY OF UTAH, on behalf of itself and all others similarly situated , <br><br> Plaintiff, <br><br> v. <br><br> CSL LIMITED; CSL BEHRING LLC; BAXTER INTERNATIONAL INC.; and PLASMA PROTEIN THERAPEUTICS ASSOCIATION, <br><br> Defendants. | Civil Action No. <br><br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

Plaintiff University of Utah ("Plaintiff"), individually and on behalf of a class of all others similarly situated, brings this action for treble damages under the antitrust laws of the United States against Defendants, and demands a jury trial.

## NATURE OF THE CASE

1.     Plaintiff alleges that Defendants conspired, combined or contracted to restrict output and to fix, raise, maintain or stabilize the prices of Plasma-Derivative Protein Therapies that they sold to Plaintiff and the other Class members in the United States from at least as early as July 1, 2003 through the present, a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As a result of Defendants' unlawful conduct, Plaintiff and other members of the Class (defined below) paid supra-competitive prices for Plasma-Derivative Protein Therapies, and thus suffered injury of the type the federal antitrust laws are designed to prevent.

1

4.      Meanwhile, the government intervention served its purpose.   Plasma manufacturers implemented stricter safety guidelines and, once the temporarily closed plants came back on line, increased production of Plasma-Derivative Protein Therapies. The early 2000s witnessed a period of abundant supply of Plasma-Derivative Protein Therapies, and manufacturers, including Baxter and CSL, suffered severe drops in profitability.

5.      These sinking profits spurred Baxter and CSL to unlawfully agree to reduce supply and fix prices of Plasma-Derivative Protein Therapies.  As more fully described below, Baxter and CSL took various actions, the bulk of which formed the crux of the conspiracy, to reduce supply and increase profitability.  *First,* Baxter and CSL gained significant market share by acquiring competitors and soon thereafter closed many of these newly acquired plants, thereby reducing industry supply.  *Second,* they worked with the PPTA to refine the data monitoring system, initiated in 1999, so that they could determine their fellow suppliers' current inventory and supply levels.   *Third,* they signaled to each other and to fellow suppliers the desirability of restricting supply to the marketplace.  *Fourth,* they frequently engaged in anticompetitive discussions involving supply and pricing issues at PPTA meetings, and upon information and belief, continued those discussions privately at bars and restaurants after trade association meetings and at business meetings.   *Fifth,* in an effort to ward off government intervention once the conspiracy began to produce results, Baxter and CSL, in coordination with the PPTA, publicly and falsely denied supply shortages, significantly over-reported industry supply figures, and misleadingly blamed Medicare reimbursement rates for patients' difficulties in obtaining these crucial therapies.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEMISCOT MEMORIAL HOSPITAL, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CSL LIMITED; CSL BEHRING LLC; BAXTER INTERNATIONAL INC.; and PLASMA PROTEIN THERAPEUTICS ASSOCIATION, <br><br> Defendants. | Civil Action No. 09-3143 (GP) <br><br><br> FIRST AMENDED <br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED |

Plaintiff Pemiscot Memorial Hospital ("Plaintiff"), individually and on behalf of a class of all others similarly situated, brings this action for treble damages under the antitrust laws of the United States against Defendants, and demands a jury trial.

## NATURE OF THE CASE

1.      Plaintiff alleges that Defendants conspired, combined or contracted to restrict output and to fix, raise, maintain or stabilize the prices of Plasma-Derivative Protein Therapies that they sold to Plaintiff and the other Class members in the United States from at least as early as July 1, 2003 through the present, a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. As a result of Defendants' unlawful conduct, Plaintiffs and other members of the Class (defined below) paid supra-competitive prices for Plasma-Derivative Protein Therapies, and thus suffered injury of the type the federal antitrust laws are designed to prevent.

1

4.     Meanwhile, the government intervention served its purpose. Plasma manufacturers implemented stricter safety guidelines and, once the temporarily closed plants came back on line, increased production of Plasma-Derivative Protein Therapies. The early 2000s witnessed a period of abundant supply of Plasma-Derivative Protein Therapies, and manufacturers, including Baxter and CSL, suffered severe drops in profitability.

5.     These sinking profits spurred Baxter and CSL to unlawfully agree to reduce supply and fix prices of Plasma-Derivative Protein Therapies. As more fully described below, Baxter and CSL took various actions, the bulk of which formed the crux of the conspiracy, to reduce supply and increase profitability. *First*, Baxter and CSL gained significant market share by acquiring competitors and soon thereafter closed many of these newly acquired plants, thereby reducing industry supply. *Second*, they worked with the PPTA to refine the data monitoring system, initiated in 1999, so that they could determine their fellow suppliers' current inventory and supply levels. *Third*, they signaled to each other and to fellow suppliers the desirability of restricting supply to the marketplace. *Fourth*, they frequently engaged in anticompetitive discussions involving supply and pricing issues at PPTA meetings, and upon information and belief, continued those discussions privately at bars and restaurants after trade association meetings and at business meetings. *Fifth*, in an effort to ward off government intervention once the conspiracy began to produce results, Baxter and CSL, in coordination with the PPTA, publicly and falsely denied supply shortages, significantly over-reported industry supply figures, and misleadingly blamed Medicare reimbursement rates for patients' difficulties in obtaining these crucial therapies.

3

# EXHIBIT B

# Baker Hostetler

Baker&Hostetler LLP

Capitol Square, Suite 2100
65 East State Street
Columbus, OH 43215-4260

T 614.228.1541
F 614.462.2616
www.bakerlaw.com

Thomas L. Long
direct dial: 614.462.2626
TLong@bakerlaw.com

January 15, 2010

The Honorable Joan B. Gotschall
United States District Judge
United States District Court for the Northern District of Illinois
219 North Dearborn Street, Suite 2356
Chicago, Illinois

Re:   in re Plasma-Derivative Protein Therapies Antitrust Litigation
      MDL Action No. 2109, Ci. Action No. 09-cv-7666

Dear Judge Gotschall:

Our firm represents Cardinal Health, Inc. ("Cardinal Health"), which is a Fortune 20 company headquartered in Dublin, Ohio, a suburb of Columbus. As one of the three largest pharmaceutical distributors in the United States, Cardinal Health has purchased substantial quantities of Plasma-Derivative Protein Therapies, including immunoglobulin (Ig) and albumin directly from Defendants CSL Limited, CSL Behring LLC, and Baxter International Inc. As a result, Cardinal Health is a member of the proposed class in this case.

Over the past decade, Cardinal Health has been a class member in a number of antitrust actions in which the direct purchasers alleged they have been damaged by overcharges arising from the actions of a number of different pharmaceutical manufacturers. In nearly all of those cases, the class was represented, at least in part, by the firm Berger & Montague, P.C. In particular, Daniel Berger, Eric L. Cramer and David Sorensen of Berger & Montague have exhibited the highest ethical and professional standards in representing the classes in which Cardinal Health was a member. Cardinal Health has been very satisfied with the results obtained by Berger & Montague and the professional manner by which they were achieved.[1]

---

[1] Tellingly, Cardinal Health first became familiar with the Berger & Montague firm when it represented a class against Cardinal Health and other defendants in a case in this court which was completed a number of years ago prior to the filing of the class actions in which Cardinal Health was a class member. Even in opposing Cardinal Health, Berger & Montague, represented its clients with vigor but with the same high professional standards the firm has exhibited in handling the class cases in which Cardinal Health has been a class member.

Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver   Houston   Los Angeles   New York   Orlando   Washington, DC

The Honorable Joan B. Gotschall
January 15, 2010
Page 2

Cardinal Health understands that in this particular case Berger & Montague is working closely with the firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), another firm with a national reputation for complex antitrust litigation. Cardinal Health understands further that while Berger & Montague expects to continue to work for its clients and the proposed class in this case, Berger & Montague is not seeking to be interim co-lead counsel, but instead is supporting the application for leadership of Cohen Milstein. I have been authorized by our client Cardinal Health to inform the Court that Cardinal Health supports the appointment of Cohen Milstein as one of the interim co-lead class counsel for the proposed direct purchaser class in this litigation.

Sincerely

Thomas L. Long