Page 1

172 F.3d 299, 1999-1 Trade Cases P 72,491
**(Cite as: 172 F.3d 299)**

H

United States Court of Appeals,
Third Circuit.
Charles SHAW; Bret D. Schwartz; Steve Promislo, Individually, and on Behalf of all Persons Similarly Situated
v.
DALLAS COWBOYS FOOTBALL CLUB, LTD.; New England Patriots Football Club; New York Giants Football, Inc.; Philadelphia Eagles Limited Partnership; San Francisco Forty-Niners, Ltd.; National Football League, Appellants
**Nos. 98-1629, 98-1887.**

Argued March 11, 1999.
Decided April 9, 1999.

Class action was brought, alleging that agreement among members of National Football League (NFL) to sell broadcast rights jointly to satellite distributors violated Sherman Act. The United States District Court for the Eastern District of Pennsylvania, Robert S. Gawthrop, J., 1998 WL 419765, denied NFL's motion to dismiss, and certified question. The Court of Appeals, Mansmann, Circuit Judge, held that agreement did not involve sale of "sponsored telecasting," within meaning of Sports Broadcasting Act's exemption.

Affirmed.

West Headnotes

**[1] Antitrust and Trade Regulation 29T ⚷537**

29T Antitrust and Trade Regulation
  29TVI Antitrust Regulation in General
    29TVI(B) Cartels, Combinations, Contracts, and Conspiracies in General
      29Tk537 k. In General. Most Cited Cases
  (Formerly 265k12(1.3), 265k12(1.1))

**Antitrust and Trade Regulation 29T ⚷560**

29T Antitrust and Trade Regulation
  29TVI Antitrust Regulation in General
    29TVI(D) Illegal Restraints or Other Misconduct
      29Tk560 k. In General. Most Cited Cases
  (Formerly 265k12(1.1))

**Antitrust and Trade Regulation 29T ⚷961**

29T Antitrust and Trade Regulation
  29TXVII Antitrust Actions, Proceedings, and Enforcement
    29TXVII(B) Actions
      29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
        29Tk961 k. Interstate or Foreign Nature of Transaction. Most Cited Cases
  (Formerly 265k12(1.1))

To make out violation of restraint of trade provision of Sherman Act, plaintiff must prove: (1) contract, combination or conspiracy; (2) restraint of trade; and (3) effect on interstate commerce. Sherman Act, § 1, as amended, 15 U.S.C.A. § 1.

**[2] Antitrust and Trade Regulation 29T ⚷604**

29T Antitrust and Trade Regulation
  29TVI Antitrust Regulation in General
    29TVI(E) Particular Industries or Businesses
      29Tk602 Telecommunications
        29Tk604 k. Television and Radio. Most Cited Cases
  (Formerly 265k12(6))

Agreement among members of National Football League (NFL) to sell broadcast rights jointly to satellite distributors was not agreement to sell "sponsored telecasting" within Sports Broadcasting Act's (SBA) exemption to antitrust laws, but rather, entailed sale of broadcast rights to non-sponsored medium. Sherman Act, § 1, as amended, 15 U.S.C.A. § 1; 15 U.S.C.A. 1291.

**\*299** Howard J. Sedran (Argued), Donald E. Haviland, Jr., Levin, Fishbein, Sedran & Berman, Philadelphia, On the Brief: Michael D. Hausfeld,

Daniel Small, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., William Bernstein, Joseph R. Saveri, Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Samuel D. Heins, Daniel E. Gustafson, Heins, Mills & Olson, P.L.C., Minneapolis, MN, David T. Shulick, Frank & Rosen, Philadelphia, PA, Roberta D. Liebenberg, Liebenberg & White, Jenkintown, PA, Allyn Z. Lite, Goldstein, Lite & DePalma, Newark, NJ, Ira Neil Richards, Trujillo, Rodriguez & Richards, LLC, Philadelphia, PA, Dennis Stewart, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, March Edelson, Hoffman & Edelson, Doylestown, PA, Joseph C. Kohn, Kohn, Swift & Graf, P.C., Philadelphia, PA, Bruce McNew, Taylor Gruver & McNew, P.A., Kennett Pike, Greenville, DE, Gregory Veith, Esquire, Wynnewood, PA, for Appellees.

Peter J. Nickles, Timothy C. Hester (Argued), Neil K. Roman, Covington & Burling, Washington, D.C., Richard P. McElroyBlank Rome Comisky & McCauley, Philadelphia, PA, for Appellants.

Before: MANSMANN, SCIRICA and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal involving a certified question, we must determine, as a matter of first impression, whether an agreement *300 among members of the National Football League[FN1] to sell broadcast rights jointly to satellite distributors is exempt from scrutiny under the Sherman Act, 15 U.S.C. §§ 1 et seq. Citing the Sports Broadcasting Act (the "SBA"), 15 U.S.C. § 1291, the NFL sought dismissal of a class action antitrust suit brought by Charles Shaw, Bret D. Schwartz, and Steven Promislo ("Shaw"). The NFL asserted that the rights being sold were "residual" rights in a "sponsored telecasting" and therefore within the SBA's exemption to the antitrust laws. The District Court rejected this characterization, holding that the statutory exemption turns on the nature of the broadcast in question and that the phrase "sponsored telecasting" exempts only a commercially sponsored free broadcast. The District Court further observed that the SBA's legislative history contradicts the NFL's interpretation and that exceptions to the antitrust laws must be narrowly construed.

> FN1. The members of the National Football League which are parties to the agreement and to this action are the: Dallas Cowboys Football Club, Ltd.; New England Patriots Football Club; New York Giants Football, Inc.; Philadelphia Eagles Limited Partnership; and San Francisco Forty-Niners, Ltd. We refer to these members and the League itself collectively as the "NFL".

Accordingly, we must first determine whether the SBA unambiguously exempts from antitrust law scrutiny only the right to sell those images for commercially sponsored free broadcast. If not, we must turn to the Act's legislative history. Because we agree with the District Court that it does, we will affirm.

I.

The NFL and its member teams own all rights to make and distribute images of football performances (the "games") between the teams. By agreement, they permit the broadcasting of approximately a dozen NFL games each week on free television networks, such as NBC or Fox. Because different games are broadcast within different local markets, however, any television viewer has free access to only two or three NFL games.[FN2] This leaves an unserviced market for those NFL games outside a viewer's local broadcast area (*e.g.,* the Pittsburgh Steelers fan who lives in Los Angeles). With the development and expansion of satellite distribution, that market can now be tapped. The NFL and mem-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ber teams entered into a pooled agreement to sell jointly their rights in all football games broadcast nationwide to a satellite broadcast distributor (DIRECTV) which in turn offers those games as an all-or-nothing package (the "NFL Sunday Ticket") to individual viewer-subscribers at a fixed cost per season.[FN3]

> FN2. *Shaw v. Dallas Cowboys Football Club, Ltd.,* 1998 WL 419765, *1-2 (E.D.Pa. June 23, 1998).

> FN3. This cost is in addition to the subscriber's monthly satellite access fee. *Id.* at *2.

[1] Shaw filed this class action suit, alleging that the NFL's joint agreement with the satellite distributor violates Section 1 of the Sherman Act[FN4] and seeking declaratory and injunctive relief. Specifically, Shaw alleges that the combined agreement causes artificially high and noncompetitive prices for NFL satellite broadcasts and restricts the options available to NFL fans.

> FN4. The antitrust laws were designed for the protection of the public. Under Section 1 of the Sherman Act, as interpreted by the Supreme Court, agreements which unreasonably restrain trade are illegal. *See, e.g., Standard Oil v. United States,* 221 U.S. 1 (1911). To make out a Section 1 violation, plaintiffs must prove: (1) a contract, combination or conspiracy; (2) a restraint of trade; and (3) an effect on interstate commerce. *See Fuentes v. South Hills Cardiology,* 946 F.2d 196, 198 (3d Cir.1991).

The NFL filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), alleging that (1) the pooled sale to the satellite distributor is a sale of "residual" rights in **\*301** a "sponsored telecast" exempted from antitrust law under the SBA, and (2) Shaw failed adequately to allege the necessary joint action. The District Court denied the NFL's motion on both grounds and, at the NFL's request, certified the question of SBA exemption for interlocutory review.[FN5]

> FN5. Our appellate jurisdiction lies pursuant to 28 U.S.C. § 1292(b).

II.

Congress passed the Sports Broadcasting Act in 1961 in response to a federal court ruling[FN6] that the NFL's package sale of games to a commercial television network (CBS) violated the Sherman Antitrust Act, 15 U.S.C. § 1. Its purpose was to preserve the availability of NFL games on free broadcast television.[FN7] The SBA therefore exempts from the antitrust laws:

> FN6. *See United States v. National Football League,* 116 F.Supp. 319 (E.D.Pa.1953).

> FN7. *See, e.g.,* S.Rep. No. 1087, 1961 U.S.C.C.A.N. at 3044 (noting the Senate Judiciary Committee's concern for "the public interest in viewing professional league sports"). *See generally U.S. Football League v. National Football League,* 842 F.2d 1335, 1346-7 (2d Cir.1988) (discussing history of agreements between the NFL and major television networks and history of the SBA).

any agreement by or among persons engaging in or conducting the organized professional team sports of football, ..., by which any league of clubs participating in professional football ... contests sells or otherwise transfers *all or any part of the rights of such league's member clubs in the sponsored telecasting of the games of football,* ... engaged in or conducted by such clubs.

15 U.S.C. § 1291 (emphasis added). Our first task is to consider the plain meaning of the statute, heeding the Supreme Court's direction that exceptions to the antitrust laws must be narrowly construed.[FN8]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN8. *See, e.g., Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 126 (1982) (holding that exceptions to the antitrust laws are narrowly construed, as they circumvent Congress's commitment to open competition).

[2] As the District Court explained and as the NFL does not dispute, the phrase "sponsored telecasting" refers to broadcasts which are financed by business enterprises (the "sponsors") in return for advertising time and are therefore provided free to the general public. *Shaw,* 1998 WL 419765, *3. Although the NFL concedes that a package of satellite broadcasts sold to individual subscribers is not a "sponsored telecasting", it asserts that its pooled sale to the satellite distributor is nonetheless within the SBA's antitrust law exemption because it constitutes a sale of residual or retained rights in the sponsored telecasts, *i.e.,* that it is "part of [those] rights."

The NFL correctly asserts that it "still own[s] a partial right to the games broadcast by the free networks." *Id.* at *2. It errs when it characterizes its remaining rights as rights in the sponsored telecasts. The NFL's underlying rights are in the games themselves and, more specifically, they include the right to sell the images of those games for broadcast through various media. The broadcast rights sold to sponsored telecasters do not subsume the separate broadcast rights sold to a non-sponsored medium. FN9 Each transaction is a sale ***302** of a part of the NFL's underlying right in the images of the games, but only the former is exempt from antitrust scrutiny. We agree with the District Court that one looks to the nature of "the broadcast which goes to these particular plaintiffs." *Id.* at *3. As that court observed, to hold otherwise-to adopt the construction urged by the NFL-would allow the exception to swallow the rule: a sponsored telecast to a limited geographic area would secure an antitrust law exemption for nationwide sales. FN10

FN9. The NFL attaches great significance to the fact that the satellite broadcasts utilize the same images as the sponsored telecasts, fed from the same network television cameras. The use of the same signal for broadcast over two media, however, does not render the rights in one broadcast derivative of rights in the other. One could just as readily conclude that the network television broadcast rights are derivative, and constitute part of the NFL's rights in the non-sponsored satellite broadcast. The network's provision of cameras and commentary does not remove the arbitrariness of calling one broadcast derivative of the other. Exemption from the antitrust laws cannot be predicated on the simple expedient of assigning ownership of cameras or payment of camera crews and commentators to a television network. Rather, it is predicated on the "sponsored *telecast*" of the image, *i.e.,* its *transmission* in a form freely receivable by the public.

FN10. *See id.* ("Were the rule otherwise, the NFL could circumvent the statutory confines, nullify the statutory scheme, simply by always using earlier broadcasts with commercials.... [T]o construe the statute that way would cause [it] to self-destruct-an absurd result.").

### III.

In light of the NFL's contentions regarding the meaning of the statutory provisions, the District Court considered the SBA's legislative history and concluded that it demonstrated that the Act did not exempt the challenged sale. *See id.* at *4. Although we need not turn to the Act's legislative history, we do so because the District Court examined it in detail.

Our review of the Act's legislative history also leads us to conclude that it clearly reflects Congress's intent, and the NFL's express contemporaneous concurrence, that the Act address only the sale

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

of games to a sponsored television network. *See* Telecasting of Professional Sports Contests: Hearing before the Antitrust Committee of the House Committee on the Judiciary on H.R. 8757, 87th Cong. 1st Sess. at 4 (Sept. 13, 1961) (stating that the bill applies to "sponsored telecasting" and "does not apply to closed circuit or subscription television");[FN11] *Id.* at 36 (Aug. 28, 1961) (wherein the NFL Commissioner acknowledged "absolutely" under oath his understanding that the bill "covers only the free telecasting of professional sports contests, and does not cover pay T.V.").[FN12] As the District Court observed in its well-reasoned opinion, the NFL obtained in the 1961 Act an expressly limited exception to "the normal prohibition on monopolistic behavior"; one which permitted it to sell pooled rights to sponsored telecasters and which expressly did *not* apply to subscription television. The NFL got what it lobbied for; it cannot now expect the federal courts to transform "narrow, discrete, special-interest" **\*303** legislation into a far broader exemption. *Shaw,* 1998 WL 419765, at \*5.[FN13] This is particularly so, once again, because the Act must be narrowly applied.[FN14]

> FN11. Subsequent congressional hearings characterized subscription television as a "program to be received by members of the public only upon the payment by such members of a charge, fee, or other form of direct compensation." *See* Subscription Television, Hearings Before the Subcommittee on Communications and Power of The Committee on Interstate and Foreign Commerce, House of Representatives, 90th Cong., 1st Sess. at 2-3 (1967) (*quoting* H.R. 12435, 90th Cong., 1st Sess., para. (hh)).

> FN12. *See also Chicago Pro. Sports Ltd. Partnership v. NBA,* 808 F.Supp. 646, 649-50 (N.D.Ill.1992) (reviewing legislative history and concluding that the SBA's legislative history showed that sponsored telecasting was limited to free commercial television); Letter from Charles F. Rule, Asst. Atty. Gen., Antitrust Division, U.S. Department of Justice, to the Hon. Howard M. Metzenbaum, Chairman, Senate Subcommittee on Antitrust, Monopolies, and Business Rights, March 30, 1988, *reprinted in* Antitrust Implications of the Recent NFL Television Contract: Hearing Before the Subcommittee on Antitrust, Monopolies, and Business Rights of the Commission on the Judiciary, 100th Cong., 1st Sess. 67 (1987) (citing legislative history and concluding-as did the FTC-that the SBA provides no antitrust immunity to the NFL for its contract with ESPN, a cable operator, as that programming is not within the "sponsored telecasting" exemption).

> The NFL argues on appeal that references in the House records to sales to networks and "other potential purchasers" of television rights conflicts with a finding that the exemption was not intended to extend to broadcasts requiring payment by viewers. This is not so. In the context of the 1961 Act, the "other potential purchasers" were quite probably other *sponsored* (but non-network) purchasers, such as local and regional television stations.

> FN13. *See also Chicago Pro. Sports Ltd. Partnership v. NBA,* 961 F.2d 667, 671 (7th Cir.1992), *cert. denied,* 506 U.S. 954 (1992) (holding that it is "inappropriate to extend [special interest laws] to achieve more of the objective the lobbyists wanted") (citations omitted). The Court of Appeals observed that "When special interests claim they have obtained favors from Congress, a court should ask to see the bill of sale." *Id.*

> FN14. See supra note 8; see also *Chicago Pro. Sports,* 961 F.2d at 672 (noting that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

"courts read exceptions to the antitrust laws narrowly, with beady eyes and green eyeshades") (citations omitted).

### IV.

Because we find that the subscription satellite broadcast of NFL games is not a part of the NFL's rights to the sponsored telecasting of those games and therefore not within the Sports Broadcasting Act's exemption to the antitrust laws, we will affirm the District Court's decision.

C.A.3 (Pa.),1999.
Shaw v. Dallas Cowboys Football Club, Ltd.
172 F.3d 299, 1999-1 Trade Cases P 72,491

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.