

For opinion see 2009 WL 4748554, 129 S.Ct. 2859, 129 S.Ct. 1400

Supreme Court of the United States.
AMERICAN NEEDLE, INC., Petitioner,
v.
NATIONAL FOOTBALL LEAGUE, et al., Respondents.
**No. 08-661.**
November 17, 2008.

On Petition for a Writ of Certiorari to the United States Court of Appeals for the Seventh Circuit

Petition for a Writ of Certiorari

Jeffrey M. Carey, 790 Frontage Road, Suite 306, Northfield, Illinois 60093, 847-441-2480, Attorney for Petitioner.

*i QUESTIONS PRESENTED

The Seventh Circuit affirmed the district court's grant of summary judgment, holding that the National Football League and its member teams constitute a single entity that is exempt from rule of reason claims under Section 1 of the Sherman Antitrust Act. The antitrust claims arose from the teams' activities in the licensing and sale of consumer headwear and clothing decorated with the teams' respective logos and trademarks ("Team Products"). In 2000, the teams entered into an agreement among themselves and with Reebok International, a Team Products licensee, pursuant to which the teams agreed (1) not to compete with each other in the licensing of Team Products and (2) not to permit any licenses to be granted to Reebok's competitors for a period of ten years, thus creating in Reebok a monopoly in the markets for Team Products. Petitioner American Needle, Inc., a former licensee, challenged the restrictive agreements as violative of the Sherman Act. The NFL claimed that the teams' agreements were exempt from the Sherman Act because the teams and the League constitute a single entity for purposes of the Act's plurality requirement. The district court granted summary judgment in favor of the NFL on the single entity issue and the Seventh Circuit affirmed, holding that the NFL is a single entity simply because they collectively produce NFL football games. In holding that the NFL and its member teams are exempt from rule of reason claims under the Sherman Act, the Seventh Circuit's decision directly conflicts with the Supreme Court's decision in Radovitch v. NFL, 352 U.S. 445 (1957), as well as the holdings of the First, Second, Third, Sixth, Eighth, Ninth, and D.C. Circuits.

*ii Two questions are presented:

1. Are the NFL and its member teams a single entity that is exempt from rule of reason claims under Section 1 of the Sherman Act simply because they cooperate in the joint production of NFL football games, without regard to their competing eco-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

nomic interests, their ability to control their own economic decisions, or their ability to compete with each other and the league?

2. Is the agreement of the NFL teams among themselves and with Reebok International, pursuant to which the teams agreed not to compete with each other in the licensing and sale of consumer headwear and clothing decorated with the teams' respective logos and trademarks, and not to permit any licenses to be granted to Reebok's competitors for a period of ten years, subject to a rule of reason claim under Section 1 of the Sherman Act, where the teams own and control the use of their separate logos and trademarks and, but for their agreement not to, could compete with each other in the licensing and sale of Team Products?

**\*iii** LIST OF PARTIES

1. Plaintiff below is American Needle, Inc.

2. Defendants below are:
 National Football League
 National Football League Properties, Inc.
 National Football League Trust
 Reebok International
 New Orleans Saints
 Seattle Seahawks
 Oakland Raiders
 New England Patriots
 Detroit Lions
 Green Bay Packers
 New York Giants
 New York Jets
 Washington Redskins
 Baltimore Ravens
 Cleveland Browns
 Indianapolis Colts
 Dallas Cowboys
 Miami Dolphins
 Atlanta Falcons
 St. Louis Rams
 Buffalo Bills
 Pittsburgh Steelers
 Philadelphia Eagles
 Denver Broncos
 Arizona Cardinals
 Minnesota Vikings
 Cincinnati Bengals
 Tennessee Titans
 **\*iv** Jacksonville Jaguars
 San Diego Chargers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

  Kansas City Chiefs
  Carolina Panthers
  Tampa Bay Buccaneers
  San Francisco 49ers
  Houston Texans

CORPORATE DISCLOSURE STATEMENT

Petitioner, American Needle, Inc., has no parent corporation and no publicly held company owns 10% or more of its stock.

**\*v** TABLE OF CONTENTS

QUESTIONS PRESENTED ... i

LIST OF PARTIES ... iii

CORPORATE DISCLOSURE STATEMENT ... iv

TABLE OF CONTENTS ... v

TABLE OF APPENDICES ... vii

TABLE OF CITED AUTHORITIES ... viii

OPINION BELOW ... 1

STATEMENT OF JURISDICTION ... 1

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ... 1

STATEMENT OF THE CASE ... 3

REASONS FOR GRANTING THE PETITION ...

**\*iv** ARGUMENT

Review Is Warranted To Resolve A Conflict Between The Seventh Circuit's Decision And the Decisions of The Supreme Court And Other Circuit Courts Regarding The Application Of The Rule of Reason Under Section 1 Of The Sherman Act To The National Football League And Other Professional Sports Leagues ... 8

A. The Seventh Circuit's Decision Conflicts With This Court's Decision In *Radovitch*. ... 8

B. The Seventh Circuit's Decision Conflicts With The Decisions Of The Other Circuits. ... 10

C. The Conflict Created By The Seventh Circuit's Decision Presents An Issue Of Significant Importance That Warrants Review By The Supreme Court. ... 12

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

CONCLUSION ... 13

*vii TABLE OF APPENDICES

Appendix A - Opinion Of The United States Court Of Appeals For The Seventh Circuit Decided August 18, 2008 ... 1a

Appendix B - Memorandum Opinion And Order Of The United States District Court For The Northern District Of Illinois, Eastern Division Dated November 19, 2007 ... 20a

Appendix C - Memorandum Opinion And Order Of The United States District Court For The Northern District Of Illinois, Eastern Division Dated July 12, 2007 ... 22a

*viii TABLE OF CITED AUTHORITIES

Cases:

*Copperweld Corporation v. Independence Tube Corporation,* 467 U.S. 752 (1984) ... 5, 11

*Federal Baseball Club of Baltimore v. National League,* 259 U.S. 200 (1922) ... 8

*Fraser v. Major League Soccer, LLC,* 284 F.3d 47 (1st Cir. 2002) ... 10, 11

*Freeman v. San Diego Ass'n. of Realtors,* 322 F.3d 1133 (9th Cir. 2003) ... 11

*Los Angeles Memorial Coliseum Commission v. N.F.L.,* 726 F.2d 1381 (9th Cir. 1984), *cert. den.,* 469 U.S. 990 (1984) ... 10, 11

*Mackey v. NFL,* 543 F.2d 606 (8th Cir. 1976) ... 10

*McNeil v. NFL,* 790 F. Supp. 871 (D. Minn. 1992) ... 11

*MidSouth Grizzlies v. NFL,* 720 F.2d 772 (3rd Cir. 1983), *cert. den.,* 467 U.S. 1215 (1984) ... 10

*ix *Murray v. NFL,* 1996 WL 363911 (E.D. Pa.) ... 11

*NCAA v. Board of Regents,* 468 U.S. 85 (1984) ... 9, 11

*NHL Players' Association v. Plymouth Whalers Hockey Club,* 419 F.3d 462 (6th Cir. 2005) ... 10, 11

*North American Soccer League v. NFL,* 670 F.2d 1249 (2nd Cir. 1982), *cert den.,* 459 U.S. 1074 (1982) ... 9, 10

*Radovitch v. NFL,* 352 U.S. 445 (1957) ... i, 7, 8, 9, 10, 12

*Shaw v. Dallas Cowboys Football Club, Ltd.,* 1998 WL 419765 (E.D. Pa.), *aff'd,* **172**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

*F.3d* 299 (3rd Cir. 2000) ... 11

*Smith v. Pro Football, Inc.,* 593 F.2d 1173 (D.C. Cir. 1978) ... 10

*St. Louis Convention & Visitors Comm'n v. NFL,* 154 F.3d 851 (8th Cir. 1998) ... 11

*Sullivan v. NFL,* 34 F.3d 1091 (1st Cir. 1994) ... 10

**x** Statutes:

15 U.S.C. § 1 ... i, 1, 4, 7, 8

15 U.S.C. § 2 ... 2, 4

**\*1** OPINION BELOW

The opinion of the United States Court of Appeals for the Seventh Circuit is reported at *American Needle, Inc., v. National Football League,* 538 F.3d 736 (7th Cir. 2008). The Seventh Circuit affirmed the decisions of the United States District Court for the Northern District of Illinois, dated July 12, 2007, and November 19, 2007, which are reported at 496 F. Supp. 2d 941 (N.D. Ill. 2007), and at 533 F.Supp.2d 7901 (N.D. Ill. 2007), respectively.

STATEMENT OF JURISDICTION

This Court's jurisdiction is invoked under 28 U.S.C. § 1254(1).

The Seventh Circuit's decision was rendered on August 18, 2008. (*See* Appendix A).

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Title 15 United States Code, Section 1 (Sherman Antitrust Act).

§ 1. Trusts, etc., in restraint of trade illegal; penalty

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall **\*2** make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

Title 15 United States Code, Section 2 (Sherman Antitrust Act).

§ 2. Monopolizing trade a felony; penalty

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by impris-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

onment not exceeding 10 years, or by both said punishments, in the discretion of the court.

**\*3** STATEMENT OF THE CASE

1. The National Football League (the "NFL" or the "League") is a joint venture of 32 member teams through which the teams produce a season of professional football games. Each team is a separate business entity that owns and operates a football team. The League does not have any ownership interest in any of the teams and no team owns any interest in any other team. Each team has its own players, coaches, managers, administrators and marketers. The teams do not share capital, profits or losses, and income and profits vary considerably from team to team. The teams operate the League by agreement, through a constitution that may be amended only by agreement of the teams. [FN1]

> FN1. The NFL itself is organized as a voluntary not-for-profit association under New York state law.

Separate from their participation in the production of football games, the teams also license the sale of headwear and apparel ("Team Products") bearing their respective logos and trademarks (the "Club Marks") to consumer fans. The retail market for Team Products amounts to billions of dollars annually.

The teams own and control their respective Club Marks separately; neither the League nor any other team has any rights to another team's Club Marks. But for their agreement not to, the teams have the right to license their Club Marks independently of, and in competition with, each other and the League. Historically, the teams granted multiple licenses for the **\*4** use of their respective Club Marks through a common licensing agent, National Football League Properties, Inc. ("NFLP").

2. In 2000, after a decline in revenues from sales of Team Products, the teams privately negotiated an agreement among themselves and Reebok International, a licensed manufacturer and distributor of Team Products, to restrict output of Team Products. The teams agreed not to compete with each other in the licensing of their respective Club Marks for Team Products, and not to permit any licenses for Team Products to be given to any of Reebok's competitors for a period of at least ten years, thereby creating in Reebok a monopoly in the Team Products markets. The Teams directed NFLP to implement the agreement by granting Reebok an exclusive 10-year license for all Team Products.

As a result of the agreement, American Needle's licenses, as well as those of Reebok's other competitors, were not renewed. Consumer prices for Team Products rose substantially. As a Reebok executive put it in 2006: "Basic fitted caps that were selling for $19.99 a few years ago because of the price pressures are now selling for $30.00."

3. American Needle filed its complaint in this matter on December 1, 2004, al-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

leging that the teams' agreement among themselves and Reebok violated Section 1 and Section 2 of the Sherman Act. The complaint charged that the agreement constituted an unlawful restraint of *5 trade, both on a *per se* theory [FN2] and under the rule of reason, and that the teams had conspired with each other and Reebok to monopolize, had attempted to monopolize, and had monopolized the Team Products licensing, manufacturing, and wholesale markets.

>  FN2. The district court dismissed the *per se* claims on May 5, 2005.

Before any discovery had been conducted, the NFL and its teams filed a summary judgment motion claiming that the League and its teams are exempt from rule of reason scrutiny because they constitute a single entity and do not fulfill the Sherman Act's plurality requirement. [FN3] The district court permitted only limited discovery, ruling that the extent to which the teams were actual or potential competitors, generally or in respect of the licensing or sale of Team Products, was irrelevant to the single entity issue. The court also denied discovery of the teams' agreement with Reebok, as well as its negotiation, purpose, or effect.

>  FN3. A violation of Section 1 of the Sherman Act, which applies to contracts, combinations or conspiracies, necessarily requires the presence of two or more actors, i.e., a "plurality" of actors; the unilateral actions of a single entity cannot form the basis of a Section 1 antitrust claim. *See Copperweld Corporation v. Independence Tube Corporation,* 467 U.S. 752, 768 (1984).

On July 17, 2007, the district court granted summary judgment against American Needle on the rule of reason and conspiracy to monopolize claims, holding that the teams act as a single entity regarding Team Products. (Appendix C at 24a). On November 19, 2007, the district court granted summary judgment against *6 American Needle on the remaining monopolization claims because, according to the court, as a single entity, the teams can lawfully grant an exclusive license to use their respective Club Marks. (Appendix B at 21a).

American Needle appealed and the Seventh Circuit affirmed the summary judgments in a decision dated August 18, 2008. (Appendix A). The Circuit Court held that the NFL teams are a single entity simply because they cooperate in the joint production of league football games. (Appendix A at 16a, "Certainly the NFL teams can function only as one source of economic power [i.e., a single entity] when collectively producing NFL football"). The court concluded that the teams' licensing activities benefit derivatively from the League's status as a single entity, because the sale of Team Products promotes NFL football. (Appendix A at 16a-17a). The Seventh Circuit upheld the district court's ruling that the teams' ability to compete with each other is irrelevant to the single entity analysis. (Appendix A at 16a, "We therefore cannot fault the district court for not considering whether the NFL teams could compete against one another when licensing and marketing their intellectual property").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

***7** REASONS FOR GRANTING THE PETITION

In *Radovitch v. NFL,* 352 U.S. 445 (1957), the Court held that the NFL and other professional sports leagues are subject to Section 1 of the Sherman Act. The Seventh Circuit's decision conflicts directly with *Radovitch.* In the more than 50 years since *Radovitch*, the courts have consistently held that the NFL and other professional sports leagues are subject to rule of reason analysis under Section 1 of the Sherman Act. The Seventh Circuit's decision that the NFL is a single entity, exempt from the rule of reason, stands alone, in direct conflict with the decisions of the First, Second, Third, Sixth, Eighth, Ninth, and D.C. Circuits. The conflict created by the Seventh Circuit's decision raises an important issue that warrants review by the Supreme Court. Whether Section 1 of the Sherman Act applies to the NFL and other professional sports leagues is an issue that should be resolved consistently throughout the circuits. The Seventh Circuit's decision undermines *Radovitch* and threatens to cause major disruption in the heretofore consistent application of the Sherman Act to professional sports.

***8** ARGUMENT

Review Is Warranted To Resolve A Conflict Between The Seventh Circuit's Decision And the Decisions of The Supreme Court And Other Circuit Courts Regarding The Application Of The Rule of Reason Under Section 1 Of The Sherman Act To The National Football League And Other Professional Sports Leagues.

A. The Seventh Ciircuit's Decision Conflicts With This Court's Decision In *Radovitch.*

The Seventh Circuit's decision that the NFL teams are exempt from scrutiny under Section 1 of the Sherman Act conflicts directly with the Supreme Court decision in *Radovitch v. NFL,* 352 U.S. 445 (1957). There the Court held unequivocally that the activities of the NFL and its member teams (as well as those of other professional sports leagues) are subject to rule of reason claims under Section 1 of the Sherman Act. 352 U.S. at 447. The Court declined to extend to the NFL and other professional sports leagues the Sherman Act exemption that had been enjoyed by professional baseball since the *Federal Baseball* decision in 1922. *Id.* at 447, 451-52; see *Federal Baseball Club of Baltimore v. National League,* 259 U.S. 200 (1922). [FN4] Not only did *Radovitch* decline to extend *Federal Baseball,* it specifically rejected as "lacking in merit" the NFL's "remaining contentions," including the argument that ***9** the NFL teams are in essence a single business entity. 352 U.S. at 454; see *Radovitch*, Brief of Respondents, 1956 WL 89185, slip op. at 53-54 (arguing that the teams are "quasi partners" and that "to refer to a conspiracy among the member teams of the National Football League is to disregard the nature of the enterprise"). The Court concluded in *Radovitch* that any antitrust exemption for professional sports leagues should be left to Congress. 352 U.S. at 452. The Supreme Court has never retreated from its decision that the NFL and other professional sports leagues are subject to rule of reason scrutiny. *Cf. North American Soccer League v. NFL,* 459 U.S. 1074, 1075-77 (1982) (Rehnquist, J., dissenting from denial of *certiorari*, and stating that the NFL's cross-ownership

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ban "is a covenant by joint venturers ... not to compete with one another" that is to be examined as an ancillary restraint under the rule of reason).

> FN4. The Supreme Court has made clear that it believes *Federal Baseball* to have been wrongly decided ("at best a dubious ruling") and that if it were to revisit the issue "upon a clean slate," it would not find professional baseball to be exempt from the antitrust laws. See Radovitch, 352 U.S. at 450, 452.

The Court has stated, on more than one occasion, that application of the Sherman Act to professional sports teams is wholly consistent with Congressional intent. In *Radovitch*, the Court observed that Congress had considered, but did not pass, four separate bills that would have extended baseball's exemption to other professional sports. 352 U.S. at 450, n. 7. In NCAA v. Board of Regents, 468 U.S. 85 (1984), the Court stated that

it is not without significance that Congress felt the need to grant professional sports an exemption from the antitrust laws for joint marketing of television rights .... The legislative history of this exemption ***10** demonstrates Congress' recognition that agreements among league members to sell television rights in a cooperative fashion could run afoul of the Sherman Act.

468 U.S. at 105 n. 28 (citations omitted). The Seventh Circuit decision in this case directly conflicts with *Radovitch* and the will of Congress, as interpreted by the Supreme Court. The Seventh Circuit did not discuss *Radovitch* or explain its radical departure from its holding.

B. The Seventh Circuit's Decision Conflicts With The Decisions Of The Other Circuits.

In the 50 years since *Radovitch*, every appellate decision to have considered the question has held that the NFL and other professional sports leagues are subject to rule of reason scrutiny under Section 1 of the Sherman Act. See NHL Players' Association v. Plymouth Whalers Hockey Club, 419 F.3d 462, 469-70 (6th Cir. 2005); Fraser v. Major League Soccer, LLC, 284 F.3d 47, 57 (1st Cir. 2002); Sullivan v. NFL, 34 F.3d 1091, 1099 (1st Cir. 1994); Los Angeles Memorial Coliseum Commission v.N.F.L., 726 F.2d 1381 (9th Cir. 1984), *cert. den.,* 469 U.S. 990 (1984); MidSouth Grizzlies v. NFL, 720 F.2d 772, 787 (3rd Cir. 1983), *cert. den.,* 467 U.S. 1215 (1984); North American Soccer League v. NFL, 670 F.2d 1249, 1257 (2nd Cir. 1982), *cert den.,* 459 U.S. 1074 (1982); Smith v. Pro Football, Inc., 593 F.2d 1173 (D.C. Cir. 1978); **11**Mackey v. NFL, 543 F.2d 606, 616 n. 19, 620  (8th Cir. 1976). [FN5] Many of the cases specifically considered, and rejected, the leagues' claims to be single entities under the rationale of the Supreme Court's decision in Copperweld Corporation v. Independence Tube Corporation, 467 U.S. 752 (1984). See NHL Players' Association, 419 F.3d at 469-70; Fraser, 284 F.3d at 57; Sullivan, 34 F.3d at 1099; *cf.* Los Angeles Memorial Coliseum Commission, 726 F.2d at 1388-89. [FN6] *Copperweld* did nothing to alter the application of the Sherman Act to joint ventures like sports leagues. "[J]oint ventures ... are judged under the rule of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

reason." *Copperweld,* 467 U.S. at 768; *see also NCAA v. Board of Regents,* 468 U.S. 85, 113 (1984) ("joint ventures have no immunity from antitrust laws").

> FN5. The lower courts have also held that the NFL is subject to Section 1 of the Sherman Act. *See, e.g., St. Louis Convention & Visitors Comm'n v. NFL,* 154 F.3d 851, 859, 865 n.9 (8th Cir. 1998) (trial court held the NFL collaterally estopped to raise single entity defense; issue not reached on appeal); *Shaw v. Dallas Cowboys Football Club, Ltd.,* 1998 WL 419765 (E.D. Pa. 1998), *aff'd,* 172 F.3d 299 (3rd Cir. 2000); *McNeil v. NFL,* 790 F.Supp. 871, 878-80 (D. Minn. 1992); *see also Murray v. NFL,* 1996 WL 363911 (E.D. Pa. 1996).

> FN6. *L.A. Memorial Coliseum* was decided before *Copperweld*, but the Ninth Circuit has reaffirmed its vitality under *Copperweld*. See *Freeman v. San Diego Ass'n. of Realtors,* 322 F.3d 1133, 1148 n.17 (9th Cir. 2003) ("*Los Angeles Memorial Coliseum* was decided before *Copperweld*, but nothing in the latter impugns our holding in the former").

The Seventh Circuit's decision that the NFL and its teams are not subject to rule of reason scrutiny under the Sherman Act stands alone and in direct conflict with the decisions of the First, Second, Third, Sixth, Eighth, **\*12** Ninth, and D.C. Circuits. The Seventh Circuit had these precedents from the other Circuits before it, but it did not discuss or distinguish them.

C. The Conflict Created By The Seventh Circuit's Decision Presents An Issue Of Significant Importance That Warrants Review By The Supreme Court.

The conflict created by the Seventh Circuit's decision raises an important issue that warrants review by the Supreme Court. Whether Section 1 of the Sherman Act applies to the NFL and its teams is an issue that should be resolved consistently throughout the circuits; it is untenable that the NFL should be exempt from the antitrust laws only in the Seventh Circuit. The inconsistency created by the Circuit Court's decision is not limited to the NFL. The Seventh Circuit's rationale that the NFL is exempt from the Sherman Act simply because its teams collectively produce the League's games extends to all professional sports, since all such leagues comprise teams that collectively produce league games. Nor can the Seventh Circuit's decision be limited to those aspects of league activities necessary to the production of games. The Seventh Circuit's decision extends the NFEs exemption, *derivatively*, to activities, like the licensing of Team Products for sale to consumers, that "promote" the interests of the League or the teams. Under the Seventh Circuit's rationale, there is little, if any, aspect of professional sports teams' businesses that would not be exempt from Section 1 scrutiny. The Seventh Circuit's decision in this case undermines *Radovitch* and threatens to cause major disruption in the heretofore consistent application of the Sherman Act to professional sports.

**\*13** CONCLUSION

For the foregoing reasons, petitioner American Needle, Inc. respectfully requests that the Supreme Court grant review of this matter.

American Needle, Inc. v. National Football League
2008 WL 4948434
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.