UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANITRUST LITIGATION | ) ) ) ) ) ) ) | Case No. 09 C 7666 MDL No. 2109 |
| THIS ORDER RELATES TO ALL ACTIONS | | Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

On September 16, 2009 Detroit Medical Center ("Detroit") filed a complaint in the Eastern District of Pennsylvania against Baxter International, Inc., CSL Limited, and CSL Behring LLC. *See Detroit Med. Ctr. v. CSL Ltd.*, No. 09 C 4216 (E.D. Pa. Sept. 16, 2009). Pursuant to a consolidation order issued by the United States Judicial Panel on Multidistrict Litigation, Detroit's complaint is pending before the court for disposition of all pre-trial proceedings. *See* Dec. 12, 2009 Order (Doc. No. 1). In the court's initial order, applicable to all of the consolidated actions, the court indicated that it would appoint attorneys to a plaintiffs' steering committee (the "Committee") and would review applications for that committee prior to the initial status conference. *See* Jan. 13, 2010 Order (Doc. No. 12). Detroit subsequently filed an objection to the Committee application of Cohen, Milstein, Sellers & Toll PLLC ("Cohen"), asserting that Cohen has a conflict of interest with Detroit because Cohen is prosecuting an action against Detroit in the Eastern District of Michigan styled *Cason-Merendo v. Detroit Medical Center*, No. 06 C 15601 (E.D. Mich.). Detroit raised the issue again at the initial status conference and the court ordered further briefing on the alleged conflict.

## I. ANALYSIS

A court evaluates the merits of a disqualification motion by determining first whether an ethical violation occurred and then considering whether disqualification is the appropriate remedy. *See Alex Munoz Gen. Contractor, Inc. v. MC3D, Inc.*, No. 98 C 4489, 1998 WL 831806, at *2 (N.D. Ill. Nov. 25, 1998). It is the moving party's burden to show facts meriting disqualification. *Lanigan v. Resolution Trust Corp.*, No. 91 C 7216, 1992 WL 350688, at *1 (N.D. Ill. Nov. 23, 1992). Disqualification is a drastic remedy that courts should hesitate to impose. *See Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983).

Detroit moves to disqualify Cohen contending that its appointment to the Committee would violate Local Rule 83.51.7, which provides in relevant part:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> \* \* \*
>
> (2) each client consents after disclosure.

L.R. 83.51.7. Detroit maintains that this rule bars Cohen's appointment to the Committee because Cohen is directly adverse to Detroit in *Cason-Merendo* and Detroit will not consent to Cohen's representation of it in this action. In opposition, Cohen urges that its appointment to the Committee would create no conflict because Detroit would never become Cohen's "client" within the meaning of the rule, as the client of the Committee is the putative class, not individual class members. Accordingly, Cohen contends that its "representation" of Detroit as a member of the Committee would be analogous to its representation of other absent class members. Such conflicts, Cohen submits, do not bar

counsel's representation pursuant to the American Bar Association's (the "ABA"'s) Model Rules of Professional Conduct and in the view of a number of district courts that have considered the issue.

Both Detroit and Cohen appear to agree that Rule 83.51.7 would operate as a bar to Cohen's direct representation of Detroit, and also concur that Cohen would be able to represent the purported class in this matter had Detroit not filed a complaint.[1] The crux of the dispute, then, is whether Cohen's membership on the Committee would create a relationship between Cohen and Detroit that is more analogous to class counsel's relationship with an absent class member (Cohen's position) or to the classic attorney-client relationship (Detroit's position).

In support of the attorney-client analogy, Detroit directs the court to the court's own order outlining the responsibilities of the Committee, which include "conducting all pre-trial discovery on behalf of plaintiffs in all actions" and filing motions on behalf of plaintiffs in all actions. *See* Jan. 13, 2010 Order 7-8. From this directive Detroit reasons that Cohen would be acting as Detroit's attorney and Detroit as Cohen's client.

While the Committee's review of discovery does suggest that the relationship between Detroit and Cohen would differ from the relationship between class counsel and an absent class member, the signing of legal documents on Detroit's behalf strikes the court as indistinguishable from class counsel's role with respect to all putative class members whether actually involved in these consolidated proceedings or absent from them. Moreover, though Detroit has raised the issue of the Committee's review of

---

[1] While Detroit has cited *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 10-12 (D.D.C. 1992) as an example of a case where a court disqualified class counsel based on its position adverse to absent class members, it also notes cases supporting Cohen's position that absent class members do not create conflicts of interest.

documents generally, and relied on that role to support its position that Cohen would enter into an attorney-client relationship with it if appointed to the Committee, Detroit has not articulated how Cohen's review of its documents would prejudice it. All that Detroit offers in this regard is an assertion that it could not fully trust Cohen with its confidential information, failing to specify what kind of discovery is likely to arise in this action and why Detroit could not trust Cohen with that particular kind of information. Such precision is important, as courts consider these factors highly relevant to the disqualification analysis in class actions. The district court in *Lewis v. National Football League*, 146 F.R.D. 5 (D.D.C. 1992), for example, declined to certify a class under Rule 23(a)(4) of the Federal Rules of Civil Procedure after finding counsel inadequate because it was adverse to nearly ten percent of the plaintiff class in another lawsuit *and* discovery in *Lewis* might require disclosure of "confidential information [which] could be used to [plaintiffs'] detriment" in the adverse action. *Id*. at 11. Detroit has not provided the court with any reason to believe that discovery would pose the same problem here and it is not obvious how it would. An action alleging that a hospital unlawfully suppressed the wages of its nurses seems completely unrelated to the claims at issue here: that hospitals and other entities purchased plasma-derivative products at supra-competitive prices. The court also rejects Detroit's contention that the prejudice to it from Cohen's appointment and the relationship between the instant suit and *Cason-Merendo* are irrelevant to the analysis under L.R. 83.51.7, as the authority Detroit cites in support of these assertions arose outside the class context. *See, e.g.*, *H.G. Gallimore, Inc. v. Abdula*, No. 85 C 7190, 1987 WL 5940, at *2 (N.D. Ill. Jan. 29, 1987) (finding overlap between subject matter of lawsuits creating conflict irrelevant because "duty of loyalty, not the need to protect

4

attorney-client confidences," is the policy driving the prohibition against simultaneous adverse representation).

For its part, Cohen bolsters its position that absent class members do not create conflicts by looking to the ABA's Model Rules of Professional Conduct (upon which this district's local rules are patterned, *see* L.R. 83.50.1), focusing in particular on Comment 25 to Model Rule 1.7 (analogous to L.R. 83.51.7), which provides "that unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying . . . this rule." ABA Model R. of Prof'l Conduct 1.7, Comment No. 25. Other courts have similarly exempted attorneys whose adverse positions to absent class members would have violated Model Rule 1.7 and its progeny if the rule were mechanically applied. *See In re Fine Paper Antitrust Litig.*, 617 F.2d 22, 25 (3d Cir. 1980); *Dean v. Kraft Foods N. Am., Inc.*, No. 02-8609, 2004 WL 614588 (E.D. Pa. Mar. 26, 2004).[2]

Such precedent is persuasive but is not precisely on point, as Detroit manifestly is not an *absent* class member; it has filed a complaint and is present here before this court for consolidated pre-trial proceedings. Cohen's insistence that Detroit's position is exactly equivalent to an absent class member at this stage is as misdirected as Detroit's request that the court apply conflict rules designed for mine-run lawsuits – without modification – to the most complex litigation structure that the federal judicial system permits. And Cohen's repeated invocation of the Seventh Circuit's statement "in a class action, the client is the class," *Rand v. Monsanto Corp.*, 926 F.2d 596, 600 (7th Cir.

---

[2] Detroit's objection to Cohen's submission of expert reports in support of its response to Detroit's motion is overruled as moot, as the court found it unnecessary to consider the reports in resolving the instant motion.

1991), is similarly unilluminating, as the aphorism elides the unique duties and relationships that the Committee's management of a consolidated multi-district litigation necessarily creates.

Indeed, the problem of Cohen's prosecution of the *Cason-Merendo* litigation against Detroit is most apparent on consideration of the Committee's role in appointing and working with class representatives. Detroit insists that were it appointed a class representative, the conflict between Cohen and Detroit would be too glaring to ignore, while Cohen contends that even if Detroit is named a class representative, no conflict would inhere because the "client is the class." *Id*. There are actually two issues here: whether (1) Cohen's appointment to the Committee would effectively preclude Detroit from service as a consolidated class representative or severely prejudice its chances of being named, and (2) in the event Detroit is named as a consolidated class representative a nascent conflict would ripen and merit Cohen's disqualification.

As to whether Detroit will receive impartial consideration to become a named consolidated class representative if Cohen is appointed to the Committee, Detroit maintains that Cohen's response brief has already revealed the prejudice Detroit would suffer by Cohen's appointment because the response opined that Detroit is unlikely to be named a consolidated class representative. This point is poorly taken. Detroit has itself invited such supposition by requesting prospective relief under Local Rule 83.51.7 based in part on the problems that would arise in the event Detroit is named as a consolidated class representative and Cohen serves on the Committee. Consequently, Cohen's conjecture in opposition to Detroit's hypothetical conflict is entirely appropriate. But even so, it is fair to presume that Cohen will not be impartial to Detroit's appointment as

named plaintiff based of its adverse relationship to Detroit in *Cason-Merendo*, begging whether such prejudice merits Cohen's disqualification. The court finds that the prejudice to Detroit would be too insubstantial to merit this disfavored remedy, *see Schiessle*, 717 F.2d at 420, especially because the court intends to appoint more than one firm to the Committee, all of which will share equally the fiduciary responsibility due the putative class and consolidated plaintiffs. Detroit will receive fair consideration as a potential consolidated class representative within such a structure, whether or not Cohen is appointed to serve on the Committee. Additionally, a Committee so composed also disposes of any conflict that might arise in the event Detroit is appointed as a consolidated class representative, as the service on the Committee of attorneys who are not adverse to Detroit in other actions will alleviate any concerns arising out of Cohen's purported conflict. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("addition of new and impartial counsel can cure a conflict of interest" where conflicted counsel remains involved in the class action); *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 305-06 (E.D. Pa. 1980) (finding counsel involved in litigation adverse to absent class members "adequate" to represent class where co-counsel were not engaged in similar adverse suits).

    The court now turns to Solaris Health Systems, Inc.'s request (in reply to Cohen's response to the instant motion) that in ruling on Detroit's motion, the court consider evidence that Cohen's prosecution of actions against members of the putative class is broader than the purported conflict with Detroit. Relying on a case list from Cohen's website bearing the header, "Defendants that Conspired to Depress Nurses Wages," Solaris Reply, Ex. A, Solaris argues that Cohen has active conflicts with seventy-two

hospitals (in addition to Detroit) that are likely to be members of the plaintiff class, and urges that this fact renders *Lewis* more pertinent to the court's analysis of the instant motion.  In surreply, Cohen asserts that (1) absent class members are irrelevant to the conflict analysis, (2) many of the hospitals adverse to Cohen in its nurses' wages litigation will not be absent class members because most hospitals do not purchase plasma derivative products directly from Defendants, and (3) at least one other firm seeking appointment to the Committee is also engaged in unrelated litigation against hospital defendants.

The court notes at the outset that Solaris has put forth no evidence beyond conjecture that the hospitals it enumerates in its brief are likely to be absent class members.  But even presuming that these hospitals are part of the putative class, *Lewis* is no more persuasive than it was when the court considered the case only in light of Cohen's adverse relationship with Detroit.  While the *Lewis* court did rely *in part* on the number of absent class members involved in adverse actions prosecuted by proposed class counsel to find counsel inadequate under Rule 23, it also reasoned that the potential prejudice to the absent class members adverse to proposed counsel was substantial because discovery in *Lewis* could uncover documents that might be used against those absent class members in the adverse action.  *Lewis*, 146 F.R.D. at 11.  Solaris, like Detroit, has not described how Cohen's supervision of discovery in the instant action could prejudice the absent class members adverse to Cohen in the nurses' wages actions.

Cohen's remaining arguments in opposition – that many of the hospitals Solaris counts will not be absent class members and that other applicants to the Committee are adverse to hospitals – are, respectively, insufficiently supported and irrelevant.  This

analysis along with the legal precedent and ethical commentary discussed *supra*, finding that absent class members do not create conflicts, disposes of Solaris' objection.[3]

Finally, at the initial status conference DMC asserted that Charles Tompkins of Shapiro Haber & Urmy LLP might have a conflict with DMC because he helped prosecute the nurses' wages litigation against DMC while he worked at Cohen. But since DMC raised this objection it has not moved to disqualify Tompkins, or otherwise pursued the issue. For the record, the court finds that Local Rule 83.51.7 does not preclude Tompkins's service on the Committee for the same reasons that apply to Cohen and, additionally, because Rule 83.51.7 precludes only the simultaneous representation of adverse parties and Tompkins is no longer at Cohen prosecuting the nurses' wages action against DMC.

In closing, the court must address the *ad hominem* attacks that parties on both sides of this issue have seen fit to lob in view of the court. It is impossible accurately to discern the merits of such arguments on this record, but it is surely true that all counsel involved in this litigation have self-interested motives—monetary, reputational or otherwise. None of the lawyers prosecuting these actions are doing so out of charity, nor should they. Class actions were in part designed to harness attorney's selfish motives to good by providing a vehicle through which lawyers can act as private attorneys general. The court has therefore disregarded such arguments and taken the issues before it on the

---

[3] The court finds Solaris' additional arguments in reply inadequately supported and unavailing. As the court discussed above, Detroit's rights in this consolidated litigation will not be abrogated in the event the court appoints Cohen to the Committee. And the hypothetical proposition that Cohen's appointment would bar other hospital plaintiffs adverse to Cohen in other actions (but not yet part of this consolidated proceeding) from becoming named plaintiffs in the consolidated complaint is too attenuated a harm for the court seriously to consider. Lastly, Solaris' unsupported allegation that Cohen is in surreptitious discussions with absent class member employees to further its ongoing prosecution of hospitals in unspecified nurse's wages cases is rejected as pure innuendo.

merits. While the court does not expect that such behavior will continue after it appoints counsel to the Committee, it wishes to make plain that sniping directed at any counsel is counterproductive since, to the extent it has any effect, it is to cause the court to think badly of the sniper.

### A. Appointment to the Committee

The following firms seek appointment to the PSC: Freed Kanner London & Millen LLC, Shapiro Haber & Urmy LLP, Spector Roseman Kodroff & Willis P.C., Haviland Hughes, LLC, Wolf Haldenstein Adler Freeman & Herz LLP, Cohen Milstein Sellers & Toll PLLC, Heins Mills & Olson, P.L.C., and Kirby McInerney LLP (collectively, the "Applicants"). Additionally, Freeborn & Peters LLP was nominated to serve as liaison counsel.

Rule 23(g)(3) of the Federal Rules of Civil Procedure permits the appointment of interim class counsel, a practice which the Manual for Complex Litigation (the "Manual") encourages in cases as involved as this one. *See* Manual § 22.11. In some instances plaintiffs attorneys reach a consensus regarding which firm or firms will represent the class; that did not happen here. The Committee application process has been hard fought, but the court assures the Applicants that it has looked past the bluster and puffery in many of the briefs and applications to consider the merits of each applicant in light of the criteria set out in Rule 23(g)(1)(A) and the Manual, guideposts courts have followed in appointing interim counsel in other MDLs. *See, e.g.*, *In Re: Air Cargo Shipping Servs. Antitrust Litig.*, No. 06 MD 1775 (E.D.N.Y. November 15, 2006) (citing *Parkinson v. Hyundai Motor Am.*, No. CV06-345, 2006 WL 3299144, at *2 (C.D. Cal. Aug 7, 2006)). These factors include: an applicant's (1) work in identifying or

investigating potential claims in the action, (2) experience in handling complex litigation and the types of claim asserted in this action, (3) knowledge of applicable law, (4) ability to commit sufficient resources to representing the class, and (5) ability to work cooperatively with opposing counsel and the court.

According to these criteria, all of the Applicants are qualified to represent the putative class and would do so adequately if given the opportunity. But the legion of law firms up to the task means the court must select counsel it believes would best represent the interests of the putative class in this high-stakes suit, which will surely present complex and unsettled issues of law, and where the defendants are well-capitalized corporations represented by two of the leading law firms in the United States. *See* Fed. R. Civ. P. 23(g)(2) ("if more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class"). In light of these particular circumstances, the court believes that Shapiro Haber & Urmy LLP ("Shapiro") and Cohen Milstein Sellers & Toll PLLC ("Cohen") would best, and most efficiently, execute the duties delegated to the Committee.

Cohen has extensive experience in complex antitrust litigation, was the first to file a complaint, and later filed a detailed amended complaint which contains allegations that may prove critical to overcoming a motion to dismiss. The court understands (from the briefs and applications) that this MDL emerged out of an investigation by the Federal Trade Commission, other applicants invested resources to investigate these complaints, and other counsel may not have filed amended complaints because a consolidated complaint would ultimately be filed. Nevertheless, Cohen's amended complaint is

detailed and showcases its attorneys' efforts in prosecuting this matter, and the court therefore considered it favorably when evaluating the relative merits of the applicants.

Shapiro has similarly extensive experience in the antitrust arena and enjoys the support of Mayo Clinic, a sophisticated non-profit healthcare organization with a substantial stake in the outcome of this litigation and a strong candidate for lead consolidated plaintiff. *See* Manual § 14.211 (courts may allow the most adequate plaintiff to select counsel). Moreover, Shapiro has worked closely with Cohen in the past, and the court anticipates that the two firms will work cooperatively to prosecute this case.

The court also appoints Freeborn & Peters LLP to act as liaison counsel. The court expects, however, that this role will be relatively minor and that appointing liaison counsel will result in efficient coordination of this MDL; it will reevaluate the need for liaison counsel in the even that this goal is not being met.

A word on attorney's fees. The court will begin its supervisory relationship with the Committee by trusting that it will avoid the duplication of effort, excessive staffing, *see* Manual § 14.212, and accrual of unnecessary costs that so often plague class-action suits. To ensure that this trust is not betrayed, the Committee shall submit a billing statement to chambers for the court's review six months from the entry of this order and again six months after that. Thereafter, the Committee will submit such records annually. To facilitate meaningful review, billing entries should be as detailed as possible.

While the court will not enter, as other courts have, a detailed order regulating the number of attorneys that may attend depositions or hearings, or prescribing the frequency with which the PSC may communicate with other plaintiff's counsel, *see, e.g.*, *In re:*

*Continental Sec. Lit.*, 572 F. Supp. 931 (E.D.N.Y. 1983), should there be any indication that the PSC is violating its duties to the class or co-plaintiffs, or otherwise engaging in unduly expensive practices, the court will reconsider this liberal approach and significantly curtail the discretion of the Committee to manage this MDL.

Finally, Manual § 14.215 indicates that the court should establish a fund to facilitate the sharing of costs incurred by the Committee in prosecuting the MDL on behalf of plaintiffs. Thirty days from the entry of this order the Committee shall file a proposed order which establishes such a fund and addresses the other issues raised in section 14.215. (An order clarifying the Committee's other duties will be issued shortly.)

If the Committee requires further guidance from the court or believes that the court might resolve some of these administrative matters in a way that would enhance the efficiency of these proceedings, it should submit its suggestions to the court in writing within fourteen days.

## CONCLUSION

Detroit Medical Center's Motion to Disqualify is denied. Cohen Milstein Sellers & Toll PLLC and Shapiro Haber & Urmy LLP are appointed to jointly represent plaintiffs on the Committee and to cooperatively carry out the duties set out in the court's January 13, 2010 order (Doc. No. 12), which will be clarified in a forthcoming order. Freeborn & Peters LLP is appointed liaison counsel.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 7, 2010