# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | Case No. 09 C 7666<br><br>MDL No. 2109<br>Honorable Joan B. Gottschall |
| THIS DOCUMENT RELATES TO ALL CASES | |

## STIPULATION AND [PROPOSED] ORDER FOR THE PRESERVATION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to this Court's Order of March 18, 2010 (docket number 186), the Parties (as defined below) stipulated and agreed to a proposed order for the preservation and production of documents, including electronically stored information ("ESI"). The Court, having reviewed the Parties' stipulated proposed order, adopts the Parties' stipulation and agreement, and now orders as follows:

## I. EXTENT OF PRESERVATION OBLIGATION

This Order sets forth a protocol for the preservation and production of documents, including ESI. This Order adopts the Parties' agreement regarding the scope of preservation obligations. Consistent with the Federal Rules of Civil Procedure, and subject to this Order, each Party shall preserve any Retained Record (as defined below) the Party knows, or reasonably should know, may be relevant to the claims or defenses asserted in the action, may reasonably be calculated to lead to the discovery of admissible evidence, and/or is the subject of a pending discovery request.

This Order does not address, limit, or determine the relevance, discoverability, or admission

into evidence of any Record (as defined below), regardless of whether the Record is required to be preserved pursuant to the terms of this Order. The Parties (as defined below) do not waive any objections as to the production, discoverability, or confidentiality of documents and ESI preserved under this Order.

A. DEFINITIONS

1. "Custodians" shall mean any Party's present or former officers, employees, or agents who could reasonably be expected to possess, control or have access to materials that could reasonably be expected to be the subject of discovery in this case. Custodian includes, but is not limited to, a Party's IT personnel or IT consultants or IT contractors retained to possess, control or maintain a Party's records.

2. "Defragmenting" means to rearrange hard drive files as well as free space on hard drive files in a manner so that the time to read a file on a hard drive is reduced.

3. "Exact Image" shall mean a bit-by-bit copy of the media.

4. "Hand Held Device" means any device other than a laptop that may or may not be able to be connected physically or electronically to a network on which data may be kept or entered. Hand Held Devices include Blackberries, iPhones, Palm Pilots, other PDAs and smart phones.

5. "Local Data Storage Device" shall mean any hard drive or other data storage device attached to, contained within, or connected to a personal computer (whether a desktop or a laptop) or other device that may be used to store electronic data. For purposes of clarification, Local Data Storage

Device includes, but is not limited to, external hard drives, portable thumb drives, floppy disks, CDs or similar data storage devices.

6. "Media" refers to any form or device on which ESI may be copied to or stored, including but not limited to CDs, thumb drives, laptop hard drives, disks, floppy disks, external hard drives and PDAs.

7. "Network Accessible Storage Device" shall mean any hard drive or other data storage device accessible to multiple users remotely over a computer network.

8. "Parties" shall mean all class representative plaintiffs named in the Consolidated Amended Complaint in this action and all named defendants.

9. "Preserve" or "Preservation" is to be interpreted in accordance with the Federal Rules of Civil Procedure to accomplish the goal of maintaining the integrity of all documents, ESI, and tangible things reasonably anticipated to be the subject of discovery under the Federal Rules of Civil Procedure in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, deletion, shredding, incineration, wiping, theft or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

10. "Records" shall have the same meaning as "documents" as defined in Fed. R. Civ. P. 34(a). Records shall also include ESI, as contemplated by the Federal Rules of Civil Procedure.

11. "Retained Records" shall have the same meaning as set forth in paragraph I(B)(1), of this Order.

12. "Native Format" means the file format defined by the application in which ESI has been created, viewed, and/or modified.

13. "E-Discovery Liaison" shall have the same meaning as set forth in the Seventh Circuit's Electronic Discovery Principles.

14. "Slip Sheet" shall mean an electronic document created to accompany each native file indicating that a particular document has been produced in its Native Format and identifying the Bates number of the document in Native Format. The Slip Sheet shall also contain any statement as to whether the native file is designated as privileged pursuant to a Protective Order and the type of privilege being asserted, including whether the native file contains confidential health care information protected by statute or regulation.

B. RECORDS REQUIRED TO BE PRESERVED

1. Unless otherwise provided in this Order, paper Records, and Records stored in electronic form on computer systems, Network Accessible Storage Devices, Local Data Storage Device, or Hand Held Devices, from 2001 to the conclusion of this litigation, that may contain information potentially relevant to the claims alleged in the Consolidated Amended Complaint, or any defenses thereto, or may be reasonably calculated to lead to the discovery of admissible evidence and/or is the subject of a pending discovery request, are subject to Preservation. Unless otherwise

limited by court order or a joint discovery plan or report pursuant to Fed. R. Civ. P. 26(f), such Records which may be potentially relevant to the claims alleged in the Consolidated Amended Complaint, or any defenses thereto, and not otherwise exempted from Preservation by this Order, including without limitation all potentially relevant documents and electronically stored information already collected and preserved pursuant to preservation obligations in other potential or actual litigation(s) involving claims relating to the production, distribution or sale of Plasma Derivative Protein Therapies in the United States including, but not limited to, IG and albumin, shall be Preserved. All information to be preserved under this order shall be referred to as "Retained Records."

2. The Parties shall Preserve any Retained Records in their possession, custody or control during the pendency of this action, including any appeals. This includes taking reasonable steps to preserve all security keys, encryption/decryption information, and policies that exist or are related to any data contemplated by this Agreement for the sole purpose of accessing the data.

3. Unless otherwise required, this Order does not generally obligate Parties to segregate Retained Records from other Records, wherever stored. The Parties, however, are required to make an Exact Image of all media reasonably likely to contain Retained Records not physically or electronically connected to or stored on a network.

4. <u>Retained Records</u>. The Parties shall preserve Retained Records as follows:

   a. <u>Paper Records</u>: For all Retained Records maintained in paper form, the Parties shall Preserve at least one copy of all unique Records in paper or in electronic form. A unique Record shall be deemed to include drafts.

   b. <u>Electronic Mail:</u> For electronic mail Retained Records, the Parties shall preserve at least one copy of all such Retained Records in Native Format, including those in deleted items folders and any attachments, and all metadata that exists.

   c. <u>Other Electronic Records Located on Network Accessible Storage Devices:</u> For Retained Records maintained in electronic form on Network Accessible Storage Devices, and not covered by I(B)(4)(b) above, the Parties shall Preserve all such Retained Records in Native Format and accompanying metadata. A Retained Record includes any native format as well as a PDF or TIFF image of the document that has been made in the normal course of business.

   d. <u>Other Electronic Records Saved on Local Data Storage Devices, Hand Held Devices, and/or Media:</u> For Retained Records saved to a Local Data Storage Device, Hand Held Devices, and/or Media, the Parties shall preserve such Retained Records in Native Format and accompanying metadata consistent with this Order.

  e. Subsequent to the entry of this Order, Custodians may generate business documents without preserving dictation, drafts, interim versions, or other temporary compilations of information if such documents would not have been preserved in the ordinary course of business.

  f. <u>Backup Media:</u> In addition to any other preservation required by this order, the Parties shall take reasonable steps to preserve, in Native Format, the oldest known complete Backup Media of all files not substantially duplicative of material available elsewhere.

## II. IDENTIFICATION OF RESPONSIBLE PERSONS

 A. Ultimately, the Custodians (as that term is defined above) identified by each Party are responsible for carrying out the preservation obligations on behalf of each Party. Accordingly, each Party shall identify its Custodians.

 B. To assist the Custodians identified by each Party, each Party will designate Discovery Administrators who will undertake to provide notice of the duty to preserve to persons identified as Custodians, and monitor, certify and audit Custodian compliance with preservation obligations.

 C. The Discovery Administrators shall become knowledgeable about the Party's document and ESI systems and capability, and knowledgeable about the Party's electronic document storage, organization and formation as well as the Party's relevant information retrieval technology in order to best assist the Custodians to comply with their preservation obligations.

    D.    Each Party will also designate E-Discovery Liaison(s) for the purpose of meeting, conferring, and attending court hearings regarding a dispute concerning the preservation or production of ESI.

## III. FORM AND METHOD OF PROVIDING NOTICE OF DUTY TO PRESERVE

    A.    Each Party will mail or email the existence and substance of this Order to each Custodian identified by the Party. Each Party shall maintain a record of all persons or employees to whom the existence and substance of this Order has been communicated.

## IV. MECHANISMS FOR MONITORING, CERTIFYING, OR AUDITING CUSTODIAN COMPLIANCE

    A.    At least quarterly, each Party will communicate with each Custodian to audit compliance with this Order and obtain a confirmation from each Custodian that he or she is still preserving all Retained Records. Such quarterly communication may be by an email that contains "Voting Buttons or equivalent" to confirm the preservation requirements.

## V. WHETHER PRESERVATION WILL REQUIRE SUSPENDING OR MODIFYING ANY ROUTINE BUSINESS PROCEDURES WITH RESPECT TO RETAINED RECORDS

    A.    Use of software that automatically updates the metadata relating to date and time created or date and time last modified (as reflected on Table I) on a Retained Record, will be suspended.

    B.    Auto purge features of email systems that may contain Retained Records will be suspended. This includes, but is not limited to, the purging of emails that may contain Retained Records after a certain time or after a certain size of an email file is reached.

    C.    Auto purge features of data bases that may contain Retained Records will be suspended. This includes, but is not limited to, the purging of database records after a certain time.

    D.    Each Custodian will be instructed to suspend auto defragmenting on desktops, laptops and other media that may contain Retained Records.

## VI. METHODS TO PRESERVE VOLATILE BUT POTENTIALLY DISCOVERABLE MATERIAL.

    A.    As set forth above, media that is reasonably likely to contain Retained Records not physically or electronically stored on a network will be Exact Imaged.

    B.    Backup tapes, if they exist, of voicemail systems and active data in databases that may contain Retained Records will be preserved.

    C.    Logs of instant messaging systems that may contain Retained Records, if they exist, will be preserved.

    D.    Hand Held Devices pursuant to section I(B)(3) that are reasonably likely to contain Retained Records shall have the data memory and SIM cards Exact Imaged.

## VII. COSTS

The Parties will endeavor to minimize the costs of preservation, consistent with their obligation to preserve potentially relevant information. Absent further Order of this Court, each party shall bear the costs of its own preservation.

## VIII. MECHANISM TO REVIEW AND MODIFY PRESERVATION OBLIGATION

    A.    The Parties are directed to confer to resolve any questions that may arise as to what specific Records are required to be preserved under this Order. Counsel for the Parties may stipulate and agree in writing, including but not limited to a

written report under Fed. R. Civ. P. 26(f), that specific Records need or need not be preserved under this Order.

B. In the event that any Party's data management systems are such as to make any term of this Order unreasonably burdensome or impossible for that Party to comply with, counsel for that Party and opposing counsel may negotiate and agree to a reasonable exception to or modification of this Order. If such negotiation does not lead to an agreed-upon modification, the Party may apply to this Court for an exception to or modification of this Order.

C. If the Parties are unable to agree as to what Records: (1) are outside the scope of this Order, (2) may be destroyed, lost or otherwise altered pursuant to routine policies and programs, or (3) otherwise need not be preserved, any Party may apply to the Court for clarification or relief from this Order upon reasonable notice.

## IX. INITIAL SEARCH FORMATS AND TERMS

A. The Parties agree that it may be valuable to use search terms for both the initial discovery of Retained Records as well as the determination of those records to be designated as privileged and placed on a privilege log.

B. The Parties agree to work cooperatively to develop such search terms after the exchange of discovery requests pursuant to Rule 34 of the Federal Rules of Civil Procedure.

C. The Parties also agree that the use of culling technologies may be valuable. The Parties agree to work cooperatively to develop the use of culling technologies after the exchange of discovery requests.

X. **INADVERTENT PRODUCTION**

    A. Applicable law, including Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the inadvertent production of any privileged materials or other materials exempt from production by any Party.

XI. **FORMAT AND PROTOCOLS FOR PRODUCTION OF ESI**

Documents gathered from electronic data should be provided in the following format:

    A. <u>TIFFs.</u> For all documents except Excel files, single-page Group IV TIFFs should be provided in at least 300 dpi format. For Office documents that use dynamic fields to display date/time when a document is opened, the field code should be displayed instead of the date/time value when converting to TIFF image. The requirement to display field codes instead of date/time values shall not apply to any documents that a Party has converted to TIFF images prior to the entry of this order.

    B. <u>Native Format.</u> With respect to all electronic documents, the parties agree that only Excel files initially will be produced in Native Format. For Retained Records that cannot be displayed in TIFF format, the Parties reserve the right to request a native file. Native files will be produced with a full path to the native document from the "NATIVEPATH" field set forth in Table 1. Bates-numbered Slip Sheets shall also be provided to accompany each native file produced. It is understood that any native file that has been imaged by a producing party in the normal course of its business into a TIFF image, PDF, or other format is a separate document and will be preserved and produced as such. The Parties agree that all rights are reserved under Fed. R. Civ. P. 34(b)(1)(C) to make reasonable

requests that specify ESI other than Excel files be produced in Native Format. Partially privileged Native Format electronic documents may be produced in TIFF format. Upon a Party's request, and to the extent practicable, non-privileged portions of Excel spreadsheets shall be produced in Native Format.

C. <u>Text Files.</u> For each document a text file should be provided. Each text file should bear the name of the beginning Bates number of each document. To the extent possible, the text of native files should be extracted directly from the native files, except that for a text file corresponding to a redacted document the text may be extracted from OCR of the redacted TIFF file (instead of the native document).

D. <u>Unique IDs.</u> Each image should have a unique file name. For single-page TIFFs, the unique file name will be the Bates number of the page.

E. <u>Metadata Fields.</u> All metadata fields set forth in Table 1 should be provided, if they exist. Metadata pertaining to date/time should be standardized to one time zone, GMT.

F. <u>Database Load Files and Cross Reference Files.</u> Documents should be provided with a Concordance (e.g., .dat)-delimited file and an Opticon-delimited file. Every TIFF in each production must be referenced in the corresponding Load File. The total number of TIFF files referenced in a Load File within the production should match the total number of image files in the production.

G. File Formats.

   1. Opticon Delimited File

      PROD00000001,20081123,IMAGES\001\PROD00000001.TIF,Y,,,60

   2. Standard Concordance Delimited File

- Field separator (comma) = ¶ (020)
- Quote Character = p (254)
- Newline = ® (174)
- Multi-entry = ; Semicolon
- FIELD NAMES AS THE FIRST LINE IN THE DATA FILE

    pBEGBATESp¶ pENDBATESp¶ pBEGATTACHp¶ pCUSTODIANp

3. Documents gathered from hard copy documents may be provided in the manner in which they were kept in the ordinary course of business, which includes a copy of the file folder or other identifier indicating the location in which the document was kept. The Parties agree, however, that if a Party intends to produce hard copy documents in hard copy form, the producing Party will provide opposing counsel with reasonable notice regarding the nature and estimated length (in individual pages) of said hard copy production. Nevertheless, if the Producing Party converts hard copy documents into electronic form for its own purposes or the Requesting Party agrees to pay for conversion of the hard copy documents to electronic form, those hard copy documents converted to electronic form shall be produced in the following format:

    a. <u>TIFFs.</u> Single-page Group IV TIFFs should be provided, in at least 300 dpi format.

    b. <u>Unique IDs.</u> Each document should have a unique identifier, which correlates with the Bates number of the first page.

c. <u>OCR Text Files.</u> Multi-page OCR files should be provided as a separate text file for each document. The file name itself should match the beginning Bates number of each document. The total number of OCR text files should match the total number of documents. OCR text files should be provided in a separate folder from their corresponding TIFF images (e.g., not as a field with the Concordance-delimited file). The text files will not contain redacted portions of the documents. However, the text file will indicate that it has been redacted. For native files that are images of text documents (e.g., PDF and TIFF) and do not contain extractable text, the Parties agree to perform manual OCR on these documents to deliver searchable text to the extent it exists.

d. <u>Database Load Files.</u> Documents should be provided with a Concordance-delimited data file and an Opticon-delimited file as detailed above. Each TIFF in a production must be referenced in the corresponding Load File. The total number of documents or pages referenced within a Load File in a production must match the total number of TIFF files in the production.

    (i) <u>Bates numbering.</u> Bates numbers shall be unique IDs with a prefix that can be readily attributed to the producing party. Bates numbering must be sequential. The Parties agree to use placeholders (e.g., "intentionally left blank" pages), rather than skipping Bates numbers in productions.

(ii) <u>Unitizing of Documents.</u> In scanning paper documents, multiple documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will make their best efforts to have their service providers unitize documents correctly and will commit to address situations where there are improperly unitized documents.

(iii) <u>Parent-Child Relationships.</u> Parent-child relationships (the association between an attachment and its parent document) should be preserved. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s).

(iv) <u>Objective Coding/Metadata Format.</u> The objective coding and or/electronic file metadata gathered during the electronic discovery conversion process should be provided in the following format using standard Concordance delimiters:

- Field separator (comma) = ¶ (020)

- Quote Chacter = þ (254)

- Newline = ® (174)

- Multi-entry = ; Semicolon

- Field names as the first line in the data file

pBEGBATESp¶pENDBATESp¶ pBEGATTACHp¶pCUSTODIANp

The first line of the Concordance-delimited file should contain objective coding and/or electronic file metadata headers and below the first line there should be exactly one line for each document. Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row.

(i) <u>Audio files or Voice Mail.</u> Audio files, including voice mail, should be produced in the native audio format in which the files were maintained in the ordinary course of business. If the audio files are maintained in a non-standard format, they should be produced in MP3 format.

(ii) For Retained Records that cannot be displayed properly in a TIFF format, a Party reserves the right to request a native file.

(iii) <u>Database and statistical software applications.</u> Reports from applications to TIFF images may be acceptable. If not, access to native data and application may be necessary.

## XII. MISCELLANEOUS

A. <u>Additional Parties.</u> Any Party named, served and appearing in this action after

the date this Order is entered shall be bound by its terms, effective once the Order has been served upon such Party, unless the Court orders otherwise on good cause shown. Any Party who causes another Party to be added to this action after the entry of this Order shall serve that new Party with a copy of this Order and any subsequent amendments to it at the time it serves its pleading and summons.

B. <u>Further Amendment.</u> Except as otherwise provided in this Order, its terms may be amended only by written stipulation of the Parties approved by the Court or by order of the Court, on noticed motion, for good cause shown.

ACCEPTED AND AGREED TO this 12th day of August, 2010.

**ON BEHALF OF CSL LIMITED, CSL BEHRING LLC, AND CSL PLASMA**

By:\_\_\_/s/ Robin J. Elowe_____
Brian D. Roche
Robin J. Elowe
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
(312) 207-1000
broche@reedsmith.com
relowe@reedsmith.com

Kevin J. Arquit
Joseph F. Wayland
Aimee H. Goldstein
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
karquit@stblaw.com
jwayland@stblaw.com
agoldstein@stblaw.com

Andrew M. Lacy
SIMPSON THACHER & BARTLETT LLP
1155 F St., N.W.
Washington, DC 20004

(202) 636-5500
alacy@stblaw.com


**ON BEHALF OF BAXTER INTERNATIONAL INC.**

By: /s/ David E. Laytin
David J. Zott, PC
Daniel E. Laytin
Christa C. Cottrell

KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000
david.zott@kirkland.com
dlaytin@kirkland.com
christa.cottrell@kirkland.com

**ON BEHALF OF PLASMA PROTEIN THERAPEUTICS ASSOCIATION**
By:   /s/ Stephen Wood
Stephen Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
26th Floor
Chicago, IL 60606
(312) 857-7070
swood@kelleydrye.com

Stephen R. Freeland
Joanna Baden-Mayer
KELLEY DRYE & WARREN LLP
Washington Harbour, Suite 400
3050 K Street, NW
Washington, DC 20007-5108
(202) 342-8635
sfreeland@kelleydrye.com
jbaden-mayer@kelleydrye.com

**ON BEHALF OF PLAINTIFFS' STEERING COMMITTEE**
By:   /s/ Richard A. Koffman
Daniel A. Small
Kit A. Pierson
Richard A. Koffman
Benjamin D. Brown

Christopher J. Cormier
Emmy L. Levens
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
Telephone: 202-408-4600
Facsimile: 202-408-4699
Email:dsmall@cohenmilstein.com
kpierson@cohenmilstein.com
rkoffman@cohenmilstein.com
bbrown@cohenmilstein.com
ccormier@cohenmilstein.com
elevens@cohenmilstein.com

Seth R. Gassman
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street14th Floor
New York, NY 10005
Telephone: 212-838-7797
Facsimile: 212-838-7745
E-mail:sgassman@cohenmilstein.com

Charles E. Tompkins
Edward F. Haber
Todd S. Heyman
Ian J. McLoughlin
SHAPIRO, HABER & URMY LLP
53 State Street
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134
Email:ctompkins@shulaw.com
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com


**ON BEHALF OF LIAISON COUNSEL**

By:    /s/ Deborah H. Bornstein
Deborah H. Bornstein
David C. Gustman
Jeffery M. Cross

FREEBORN & PETERS LLP
311 S. Wacker Dr.

Suite 3000
Chicago, IL 60606
Telephone: 312-360-6000
Facsimile: 312-360-6571
E-mail:dbornstein@freebornpeters.com
dgustman@freebornpeters.com
jcross@freebornpeters.com

**THE FOREGOING IS SO ORDERED:**

Dated: _____AUG 25 2010_____

_____
Hon. Joan B. Gottschall