**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION** | Case No. 09 C 7666<br>MDL No. 2109<br>Judge Joan B. Gottschall |
| This Document Relates to:<br><br>COUNTY OF SAN MATEO, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CSL LIMITED; CSI BEHRING LLC; CSL PLASMA; BAXTER INTERNATIONAL INC.; and THERAPEUTICS ASSOCIATION,<br><br>Defendants. | Case No. 11 C 1468 |

**INDIRECT-PURCHASER PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.     Defendants' Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.     Plaintiff's Injuries Resulting From the Conspiracy. . . . . . . . . . . . . . . . . . . . . 2

       C.     Claims Stated in the Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    DEFENDANTS' ARGUMENTS IN FAVOR OF DISMISSAL OF
       PLAINTIFF'S ANTITRUST CLAIMS STATED IN THE COMPLAINT ARE
       WITHOUT MERIT .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.     Defendants' Article III Standing Challenges to Certain Antitrust
              Claims Made in the Complaint are Unavailing. . . . . . . . . . . . . . . . . . . . . . . 3

       B.     Issues of Class Certification are Logically Antecedent to Questions
              of Standing Under These Laws and Should Be Determined First. . . . . . . . . . . . 4

       C.     Whether Plaintiff, Itself, if Suing Individually Has Standing Under
              Non-California States' Laws is a Mixed Question of Law and Fact
              Inappropriate for Resolution on the Pleadings.. . . . . . . . . . . . . . . . . . . . . . . . 10

IV.    THE CLAIMS ARE NOT BARRED BY *AGC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.     *AGC* Factors Have No Application to the Instant Case Which Involves
              Direct and Indirect Purchasers Down a Chain of Supply . . . . . . . . . . . . . . . . . 12

       B.     Even If the *AGC* Test Could *Theoretically* be Applicable to State Law
              Antitrust Claims Like Those Brought Here on Behalf of Indirect
              Purchasers, Defendants do not Provide Sufficient Authority to Support
              its Application to Any of the State Law Antitrust Claims . . . . . . . . . . . . . . . . . 15

           1.     *Lorix v. Crompton Corp.* Does Not Support Application of the
                   *AGC* Test to Minnesota Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

           2.     Harmonization Provisions Cited by Defendants Are Not
                   Indicative of Those States' Intentions to Incorporate *AGC*
                   Into Their Laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

3.      Decisions by Federal District Courts Concerning Applicability of
        *AGC* Under Certain States' Laws Cited by Defendants are
        Entitled to Little if any Weight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4.      Decisions by State Trial Courts Applying the *AGC* Test do not
        Constitute a Clear Indication that the *AGC* Test is Part of These
        States' Antitrust Laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5.      The Decision of One Intermediate California State Appellate Court
        Applying *AGC* is Insufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6.      Defendants' Highest State Court Authorities Say Nothing About the
        Applicability of the *AGC* Test to Indirect Purchaser Claims Such as
        Those Stated Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.      Even if *AGC* is Applicable, it Does Not Bar The Claims. . . . . . . . . . . . . . . . . . 23

1.      Causal Connection and Improper Motive. . . . . . . . . . . . . . . . . . . . . . . 23

2.      Nature of Injury in Relation to Purpose of Antitrust Statutes . . . . . . . . . 24

3.      The Directness of the Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4.      The Speculative Nature of the Damages . . . . . . . . . . . . . . . . . . . . . . . . . 25

5.      Risk of Duplicative Recovery and Complex Damage Apportionment. . . 26

D.      Plaintiff has Standing to Sue for Injunctive Relief Under the
        Sherman Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.      PLAINTIFF SUFFICIENTLY ALLEGES FACTS REQUIRED BY
        CERTAIN STATES' ANTITRUST OR UNFAIR COMPETITION LAWS .. . . . . . . . . 27

A.      The Complaint Sufficiently Alleges Claims Under Utah State
        Antitrust Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.      The Complaint Sufficiently Alleges Claims Under Alaska
        Antitrust Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.     THE COMPLAINT ADEQUATELY ALLEGES FACTS TO PROCEED
        WITH THE STATE UNFAIR COMPETITION CLAIMS . . . . . . . . . . . . . . . . . . . . . 28

A.     Rule 9(b) Does Not Apply to the Complaint's Unfair
Competition Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.     The Complaint Establishes that Defendants' Conduct Caused Plaintiff
and Class Members to Pay Artificially-High Prices For Plasma Therapies . . . . . 30

     1.     The Complaint's Allegations Satisfy Illinois Law's Causation
Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

     2.     The Complaint's Allegations Satisfy The Causation Standards
Of The Other 13 States' Unfair Competition Laws. . . . . . . . . . . . . . . . . 32

C.     Defendants Misconstrue Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . 33

D.     Plaintiff Sufficiently Pleads Facts to Proceed with Claims Under the Illinois
Unfair Competition Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.     Plaintiff's Standing Under Nebraska and New York Law. . . . . . . . . . . . . . . . . . 35

F.     Plaintiff is a Protected Party Under the Unfair Competition Statute
of New York. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

G.     Plaintiffs Allege Sufficient Facts to Proceed with Unfair Competition Claims
Under Maine and Colorado  Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

H.     The Complaint Adequately Alleges that Defendants' Deceptive and
Unconscionable Efforts to Fix the Price of Life-Saving Plasma Therapies
Occurred within Certain States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

I.     Plaintiff Sufficiently Pleads Facts to Support its Claims Against PPTA. . . . . . . . 38

V.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

<u>**TABLE OF AUTHORITIES**</u>

<u>**U. S. CONSTITUTION**</u>

Article III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

<u>**CASES**</u>

*Abel v. Eli Lilly and Co.*,
    94 Mich.App. 59,
    289 N.W.2d 20 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Ali v. Mid-Atlantic Settlement Services, Inc.*,
    640 F.Supp.2d 1 (D.D.C. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Amchem Prods. v. Windsor*,
    512 U.S. 591 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,
    459 U.S. 519 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

*Boisjoly v. Morton Thiokol, Inc.*,
    706 F. Supp. 795 (D. Utah 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bubar v. Ampco Foods, Inc.*,
    752 F.2d 445 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Casavant v. Norwegian Cruise Line, Ltd.*,
    76 Mass. App. Ct. 73 (Mass. App. Ct. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Clayworth v. Pfizer, Inc.*,
    49 Cal. 4th 758 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 24-26

*Comes v. Microsoft Corp.*,
    646 N.W.2d 440 (Iowa 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Conley v. Aggeler*,
    2007 U.S. Dist. LEXIS 5307 (W.D. Mich. Jan. 25, 2007). . . . . . . . . . . . . . . . . . 32

*Contra California v. ARC America Corp.*,
    490 U.S. 93 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Corley v. Rosewood Care Ctr., Inc.*,
    142 F.3d 1041 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Cox v. Microsoft Corp.*,
    778 N.Y.S. 2d 147 (N.Y. App. Div. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Crouch v. Crompton Corp.*,
    No. 02 CVS 4375, 2004 NCBC LEXIS 6 (N.C. Super. Ct. 2004). . . . . . . . . . . . . . 19, 26

*D.R. Ward Const. Co. v. Rohm and Haas Co.*,
    470 F.Supp.2d 485 (E.D. Penn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 23, 25

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Emery v. American Gen. Fin.*,
    134 F.3d 1321 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Excellus Health Plan, Inc. v. Tran*,
    287 F. Supp. 2d 167 (W.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Fahey v. R.J. Reynolds Tobacco*,
    4 Mass.L. Rptr. 21, 1995 WL 809837 (Mass. Super.Ct June 12, 1995). . . . . . . . . . . . 39

*Gaebler v. New Mexico Potash Corp.*,
    676 N.E.2d 228 (Ill. App. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Holder v. Archer Daniels Midland Co.*,
    C.A. No. 96-2975, 1998 D.C. Super. LEXIS 39 (D.C. Super. Ct. Nov. 4, 1998) . . . . . . 24

*Holmes v. Young,*
    885 P.2d 305 (Colo.App 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Hyde v. Abbott Labs.,*
    473 S.E.2d 680 (N.C. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,*
    253 F. Supp. 2d 262 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Illinois Brick Co. v. Ill.,*
    431 U.S. 720 (1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

*In re Aftermarket Filters Antitrust Litig.,*
    2009 U.S. Dist. LEXIS 104114 (N.D. Ill. Nov. 5, 2009) . . . . . . . . . . . . . . . . . . *in passim*

*In re Buspirone Patent Litigation,*
    185 F. Supp. 2d 363 (S.D.N.Y. 2002) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Chocolate Confectionary Antitrust Litig.,*
    602 F.Supp.2d 538 (M.D. Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Flash Memory Antitrust Litig.,*
    643 F.Supp.2d 1133 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Grand Theft Auto Video Game Consumer Litig.,*
    2006 U.S. Dist. LEXIS 78064 (S.D.N.Y. Oct. 25, 2006). . . . . . . . . . . . . . . . . . . . . 5, 8, 9

*In re Graphics Processing Units Antitrust Litig.,*
    540 F.Supp.2d 1085 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17-20, 36

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
    263 F.Supp. 2d 172 (D. Mass. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Relafen Antitrust Litig.,*
    221 F.R.D. 260 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Rubber Chemicals Antitrust Litig.,*
    504 F.Supp.2d 777 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re TFT-LCD (Flat Panel) Antitrust Litigation ("TFT-LCD"),*
    586 F.Supp.2d 1109 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 21, 36

*Kanne v. Visa U.S.A., Inc.*,
    723 N.W.2d 293 (Neb. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 35

*Kerwin v. Paul Revere Life Ins. Co.*,
    6 Fed. Appx. 233 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Knowles v. Visa U.S.A.*,
    CV-03-707, 2004 Me. Super. LEXIS 227 (Oct. 20, 2004) . . . . . . . . . . . . . . . . 18, 19, 25

*Laughlin v. Evanston Hosp.*,
    550 N.E.2d 986 (Ill. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Lewis v. Casey*
    518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Loeb Industries Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15, 24

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

*Neely v. Bar Harbor Bankshares*,
    270 F.Supp.2d 50 (D. Me. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*New York v. Daicel Chem. Indus., Ltd.*,
    42 A.D. 3d 301 (N.Y. App. Div. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-8, 13

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, *N.A.*,
    85 N.Y.2d 20 (N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36

*Owens Corning v. R. J. Reynolds Tobacco Co.*,
    868 So.2d 331 (Miss. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Pappas v. Pella Corp.*,
    363 Ill. App. 3d 795 (Ill. App. Ct. 1st Dist. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Rael v. Cadena*,
    604 P.2d 822 (N.M.Ct.App. 1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Rhino Linings United States v. Rocky Mt. Rhino Lining*,
    62 P.3d 142 (Colo. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Robinson v. Toyota Motor Credit Corp.*,
    201 Ill. 2d 403 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2d Dist. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 33

*Salsitz v. Peltz*,
    210 F.R.D 95 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schiffels v. Kemper Fin. Serv., Inc.*,
    978 F.2d 344 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Siegel v. Shell Oil Co.*,
    480 F. Supp. 2d 1034 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29, 35

*Smith v. Brown & Williamson Tobacco Corp.*,
    108 F. Supp. 2d 12 (D.D.C. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Southard v. Visa U.S.A., Inc.*,
    734 N.W.2d 192 (Iowa 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*State by Humphrey v. Philip Morris, Inc.*,
    551 N.W.2d 490 (Minn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83
    118 S.Ct. 1003 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Teague v. Bayer AG*,
    195 N.C. App. 18 (N.C. Ct. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Thompson's Gas & Electric Service v. B.P. Am. Inc.*,
    691 F.Supp.2d 860 (N.D. Ill. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Tungate v. Maclean-Stevens Studios, Inc.*,
    714 A.2d 792 (Me. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 37

*U.S. Network Serv., Inc. v. Frontier Comm., Inc.*,
    115 F. Supp. 2d 353 (W.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal. App. 4th 1811 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whitlock v. Johnson*,
     153 F.3d 380 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*,
     536 F.3d 663 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*WWP, Inc. v. Wounded Warriors Family Support, Inc.*,
     628 F.3d 1032 (8th Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## STATUTES & RULES

15 U.S.C.

     § 1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     § 26.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 10

Alaska Statute § 45.50.577(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ariz . Rev. Stat. §§ 44-1402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Bus. & Prof. Code

     § 16700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     § 16750(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     § 16770.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P.

     Rule 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

     Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30

     Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

     Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

G.L.c. 93A, § 9.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Illinois Consumer Fraud Act, 815 ILCS 505/2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

U.C.A. 1953 § 13-5-14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Utah Code Ann. § 76-10-919 (1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I.    INTRODUCTION

This is an action brought by purchasers of blood plasma protein-derivative products ("Plasma Therapies") that were sold at supracompetitive prices due to an illegal price-fixing conspiracy in violation of federal and state law.  For present purposes, the existence of the price-fixing conspiracy is not subject to dispute.  The fact that Plaintiff purchased such Plasma Therapies is not subject to dispute.  The challenges brought by defendants are instead arcane legal arguments, twisting the law in order to impose non-existent technical hurdles to valid claims for damages due to a conspiracy to fix the prices of life-saving medical products.

Plaintiff's claims are "precisely the kind of [claims] the [*Illinois Brick*] repealer states envisioned when they enacted state antitrust laws."  *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883 (RWG), 2009 U.S. Dist. LEXIS 104114, at *34 (N.D. Ill. Nov. 5, 2009).  Although this case primarily involves state law, it is before this Court because of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Prior to the enactment of CAFA, the case would have proceeded before a state court.  Defendants seek to have this Court disregard and override the will and intent of the legislatures of these repealer states which enacted the laws under which Plaintiff sues specifically to provide remedies for antitrust and unfair business practices violations to the types of persons on whose behalf Plaintiff seeks to sue.  The Court should reject this invitation to conduct irreparable damage to the intentions of state legislatures and to the principles of federalism.  Except as set forth in Footnote 1 below, Defendants' motion should therefore be denied in its entirety.[1]

---

[1]Plaintiff consents to the dismissal without prejudice of the antitrust claims stated in the Complaint under Alabama law, ¶¶ 317-321, and Maryland law, ¶¶ 457-461.  Plaintiff consents to dismissal without prejudice to claims stated in the Complaint for damages under Alaska and Wyoming

1

## II.    RELEVANT FACTS

### A.    Defendants' Conspiracy

The Complaint alleges the same conspiracy by Defendants that the Court found was sufficiently alleged in the Direct Purchasers' Consolidated Complaint.  *In re: Plasma Derivative Protein Therapies Antitrust Litig.*, 2011 U.S. Dist. LEXIS 13279 (N.D. Ill., Feb 9, 2011) (hereinafter the "Order").  Defendants' motion does not present any argument that an antitrust conspiracy has not been properly alleged.

### B.    Plaintiff's Injuries Resulting From the Conspiracy

Plaintiff County of San Mateo ("San Mateo" or "Plaintiff") operates medical facilities and purchases the plasma-derived protein therapies globulin and albumin to treat life-threatening conditions in patients.  Complaint, ¶¶ 1, 28.[2]  Plaintiff spends millions of dollars on the purchase of Plasma Therapies, including purchases of hundreds of thousands of dollars for which it is not reimbursed.  ¶ 30.  As a result of Defendants' conspiracy, Plaintiff was forced to pay artificially high prices for these products and suffered financial injuries flowing therefrom.  *Id.*

/ / /

---

antitrust law. ¶ 541.  Plaintiff consents to the dismissal without prejudice of the unfair competition claims made under Kentucky law, ¶¶ 574-579; Utah law, ¶¶ 622-627; Maryland law, ¶¶ 586-591; Kansas law, ¶¶ 568-573; and Massachusetts law, ¶¶ 592-597.  Plaintiff respectfully requests leave to amend the Complaint to add claims under Mass. Gen. Laws 93A, § 11, and Mass. Gen. Laws 93A, § 9 after Plaintiff complies with the demand provision of §9(3).  Section 11 contains no such demand provision.  *See* Mass. Gen. Laws 93A, § 11; *compare* Mass. Gen. Laws 93A, § 9(3).

[2]All paragraph ("¶") references are to the Complaint of the County of San Mateo.  For the Court's convenience, a true and correct copy of that complaint is submitted to the Court contemporaneously with this opposition as Exhibit A to the County of San Mateo's Request for Judicial Notice.

C.     **Claims Stated in the Complaint**

Plaintiff states antitrust and unfair competition claims on behalf of itself and all other

similarly situated persons and entities who purchased Plasma Therapies indirectly from

Defendants during the class period of July 1, 2003, to the present.  ¶ 300-301.  These claims are

brought under the so-called *Illinois Brick*[3] repealer statutes of the states at issue, which provide

that under those states' laws antitrust claims may be brought by plaintiffs who are not in direct

privity with an antitrust defendant.

III.   **DEFENDANTS' ARGUMENTS IN FAVOR OF DISMISSAL OF PLAINTIFF'S
       ANTITRUST CLAIMS STATED IN THE COMPLAINT ARE WITHOUT MERIT**

A.     **Defendants' Article III Standing Challenges to Certain Antitrust Claims
       Made in the Complaint are Unavailing**

Defendants premise almost all of their arguments on Article III standing grounds - which

Defendants argue should be determined now and with reference only to Plaintiff rather than

putative class members - and *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council*

*of Carpenters ("AGC")*, 459 U.S. 519 (1983) - which Defendants paradoxically argue should be

applied by the Court to deny standing under various State antitrust laws to precisely the types of

persons those laws were enacted to protect.  None of these arguments have merit.

Defendants do not challenge Plaintiff's Article III standing to sue under California's

Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, or for injunctive relief under Section 1

of the Sherman Act, 15 U.S.C. § 1, and Section 16 of the Clayton Act, 15 U.S.C. § 26.  Rather,

Defendants challenge Plaintiff's Article III standing with regard to claims brought on behalf of

non-California members of the putative class under the antitrust laws of non-California states

_____

[3] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

arguing that (1) these non-California state statutes "require that at least some part of the alleged injury have occurred in that particular state" and (2) that Plaintiff does not allege making purchases in these states. Both of these arguments are without merit.

**B.**    **Issues of Class Certification are Logically Antecedent to Questions of Standing Under These Laws and Should Be Determined First**

Where questions of class certification issues are "'logically antecedent' to Article III concerns," it is appropriate for the court to "determine class certification issues before standing." *Kuhl v. Guitar Center Stores, Inc.,* No. 07-0204 (JBG), 2008 U.S. Dist. LEXIS 17222, at *4 (N.D. Ill. 2008) (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)). Given the manner in which Plaintiff has defined the proposed class and subclasses, and the manner in which claims under these various state laws are alleged on behalf of members of these classes, *see* Complaint at ¶¶ 300-310, pp. 69-76, "[i]t is only through a determination of typicality of claims across the various state statutes that the court will know whether standing is appropriate for all the claims asserted." *Kuhl*, 2008 U.S. Dist. LEXIS 17222, at *8.

Even if it was appropriate to determine Article III standing issues concerning the non-California state law claims in the Complaint solely with reference to Plaintiff, as a result of Defendants' conspiracy and the ensuing artificial shortages of Blood Plasma, Plaintiff and other class members were sometimes forced to purchase life-saving drugs on the spot market when Plasma Therapies were needed to treat their patients. Complaint at ¶¶ 21, 61. In these transactions, a market-maker would arrange for Plaintiff and similarly-situated class members to purchase these drugs - at an inflated price - from anyone in the nation that had a sufficient supply. *See* ¶ 61, 62. The location where Plaintiff made these purchases is a mixed question of law and

4

fact, i.e. where the ultimate sellers in these transactions were located, and where the purchase was "made" for purposes of each state's laws, that cannot be resolved at this stage of the proceedings.

Class certification is logically antecedent to questions of standing here because "class certification is the source of [all] the potential standing problems" that Defendants raise in their Motion. *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06-1739 (SWK), 2006 U.S. Dist. LEXIS 78064, at *9 (S.D.N.Y. Oct. 25, 2006). The standing issues raised by Defendants only apply to the non-California state law claims that Plaintiff seeks to pursue on behalf of members "of an as-yet uncertified class." *Kuhl*, 2008 U.S. Dist. LEXIS 17222, at *8. The Complaint defines the Class as any person that qualifies for membership in one of the thirty "Identified State Subclasses." ¶ 300. In turn, each of the thirty identified State Subclasses are defined as the indirect purchasers of Blood Plasma that respectively reside in each of those thirty states. ¶ 301. Thus, Plaintiff would be a member of the California State Subclass, if certified, and - for example - a hospital in Detroit that indirectly purchased Blood Plasma-Derivative Protein Therapies from one or more Defendants would be a member of the Michigan State Subclass, if certified. On behalf of Plaintiff, as a member of the California State Subclass, the Complaint seeks injunctive relief under § 16 of the Clayton Act, ¶ 314, and damages and other remedies under California's Cartwright Act. ¶ 336. On behalf of the hypothetical Detroit hospital, the Complaint seeks injunctive relief under § 16 of the Clayton Act, ¶¶ 24, 314, and damages and other remedies under Michigan's Antitrust Reform Act. ¶ 466. Plaintiff will seek certification of a Class that will include the members of all of the thirty Identified State Subclasses on the basis *inter alia* that certain fundamental factual questions going to Defendants'

conspiracy predominate among the claims of all the members of the putative Class, regardless of whether they are members of one Identified State Subclass and thus would seek remedies under one state's laws or are members of another, ¶ 303, and will seek appointment of Plaintiff as Lead Representative of the Class on the basis *inter alia* that its claims are typical of the claims of other members of the putative class, whether those claims are stated under California State law or that of another state. ¶ 305.

Just as in *Kuhl*, "[b]efore any class is certified [here], the class claims [that Plaintiff seeks to state on behalf of the members of the non-California Identified Subclass] are conjectural." 2008 U.S. Dist. LEXIS 17222, at *8. Moreover, "[i]t is only through a determination of typicality of claims [that Plaintiff seeks to state] across the various state statutes that the court will know whether standing is appropriate for all the claims asserted." *Id.* The facts of the instant case are remarkably similar to those in *Kuhl* and the reasoning and conclusion of the Court in *Kuhl* fit well in application to the facts of the instant case. *Id.*, at *7.

Defendants seek to cast this Court's decision in *Kuhl* as an outlier and introduce false distinctions between the instant situation and that which the Court was presented with in *Kuhl*. For the reasons discussed below, *Kuhl* is not an outlier and the distinctions that Defendants raise are not significant. *Kuhl* was premised on *Ortiz v. Fibreboard Corp.*, which held that:

> [C]lass certification issues are, as they were in *Amchem* [*Prods., Inc. v. Windsor*], "logically antecedent" to Article III concerns, 521 U.S. [591, 612 (1997)], and themselves pertain to statutory standing, which may properly be treated before Article III standing, *see Steel Co.* [*v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 92 (1998)].

/ / /

6

527 U.S. 815, 831 (1999). Defendants' attempt to minimize the *Ortiz* decision ignores the well-supported precedential underpinning of the *Ortiz* decision as well as the underlying logic of the decision.

In *Kuhl*, this Court recognized that where there is no dispute over the lead plaintiff's Article III standing to pursue the claims it alleges on its own behalf, before the court has ruled on a motion to certify the proposed class, any questions regarding the standing of members of that putative class are "conjectural," and that questions concerning the lead plaintiff's entitlement to speak for such persons goes to the issue of typicality under Fed. R. Civ. P. 23 and thus *not* the issues of injury and redressability under Article III. 2008 U.S. Dist. LEXIS 17222 , *8; *accord Ortiz*, 527 U.S. at 831 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591 at 612 (1997)). This conclusion logically flows from the rule that standing is determined with reference to the class as a whole, not just the lead plaintiff:

> We understand *Ortiz* to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff."

*Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (quoting *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998) (reversing the district court's dismissal of action on standing grounds and remanding the case to the district court to make a decision concerning class certification before taking up the issue of standing));[4] *accord, e.g., Aftermarket Filters*, 2009 U.S.

---

[4] Defendants' citation to the Seventh Circuit's admonishment in *Payton* "that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action," is misplaced. As the *Payton* court made clear, the case before it was *not* such a case; rather, "[the] putative representatives were personally injured by the operation of the very same statute

Dist. LEXIS 104114, at *24-25 (denying Defendants' standing-based motion to dismiss putative class claims pled on behalf of residents of states in which no named plaintiff resided, noting that "all of the plaintiffs, named and unnamed, have Article III standing to sue defendants," thus holding that "the name[d] plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states.  Thus, any 'standing' issues arise from plaintiffs' attempts to represent the proposed classes.  These are class certification issues 'logically antecedent' to the standing concerns."); *In re Chocolate Confectionary Antitrust Litig.*, 602 F.Supp.2d 538, 579 (M.D. Pa. 2009) (deferring Article III standing inquiry until after class certification proceedings); *Grand Theft Auto*, 2006 U.S. Dist. LEXIS 78064, [*10] (same); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 269 (D. Mass. 2004) (same; recognizing that *Ortiz* created a "flexible, functional" exception and that otherwise courts would force class counsel to "identify representatives from each state involved in a multistate class action, rendering class actions "considerably more cumbersome to initiate."); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 263 F.Supp.2d 172 (D. Mass. 2003); *In re Buspirone Patent Litigation*, 185 F.Supp.2d 363 (S.D.N.Y. 2002) (same); *Salsitz v. Peltz*, 210 F.R.D 95, 98 (S.D.N.Y. 2002) (same).

_____

that caused the injuries to all other members of the class." *Payton,* 308 F.3d at 682.  Similarly here, Plaintiff was injured by the same alleged conspiracy that is alleged to have caused injuries to all members of the class, *see* ¶ 313, and Defendants do not, and cannot, challenge that fact.  For the same reasons, Defendants' citations to *Lewis v. Casey* 518 U.S. 343, 357 (1996) and *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987) are also inapposite: these cases merely stand for the unremarkable proposition that a lead plaintiff must have suffered injury from the same complained of course of conduct based on which he seeks remedies for the class.  Again, just as in *Kuhl, Grand Theft Auto, Payton*, and other cases, there is no dispute that Plaintiff has alleged an injury from the same course of conduct based on which it seeks to pursue claims on behalf of members of the class.

Defendants do not address this authority, and instead cite non-controlling cases from the Eastern District of Pennsylvania, Northern District of California, and Southern District of Florida. Defendants rely on *Potash,* but the reasoning of *Potash* cannot be reconciled with its ultimate conclusion and thus provides little if any persuasive authority for Defendants' argument. The *Potash* court's decision hinged on its erroneous limitation of the Seventh Circuit's holding in *Payton*, discussed *supra*, to the narrow context where "an appellate court simultaneously fac[es] both class certification and Article III standing issues," in which case the appellate court "must deal with Rule 23 issues first when they are dispositive." 667 F.Supp.2d at 923. Significantly, the *Payton* decision provides no support for this limitation. In fact, as discussed above, upon finding that the *district court* "never undertook [the] inquiry" required under Rule 23, concerning the "typicality of claims presented by the named parties" and other factors going to propriety of plaintiffs as class representatives, the court remanded the case to the district court to make this inquiry. *Payton*, 308 F.3d at 680. The *Potash* court's proposed limitation of the rule stated in *Payton* cannot be reconciled with the fact that the *Payton* court applied this rule to overturn a *district* court decision and remanded the case to the *district* court, with instructions that the *district* court reconsider the matter in accordance with the rule that the *Payton* court articulated. *Id.*

As this Court found in *Kuhl*, Judge Kram found in *Grand Theft Auto*, Judge Gettleman found in *After Market Filters*, and the Seventh Circuit found in *Payton*, where - as here - there is no question, and indeed no dispute, that a plaintiff has alleged that it was injured by the same course of conduct for which it seeks a remedy on behalf of the class and, accordingly has standing under, at least, the state laws of its home state (in this case California), the question of

9

standing as to the other state law claims the plaintiff seeks to bring on behalf of putative class members of other states is premature, and should instead be addressed at class certification.

### C. Whether Plaintiff, Itself, if Suing Individually Has Standing Under Non-California States' Laws is a Mixed Question of Law and Fact Inappropriate for Resolution on the Pleadings

Ignoring *arguendo* "the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be addressed with reference to the class as a whole, not simply with reference to the individually named plaintiffs," and the related rule that class certification issues in situations such as that before the Court are logically antecedent to Article III standing questions, *Payton*, 308 F.3d at 380, the question of whether Plaintiff, individually, has standing to sue under more than just California's Cartwright Act and for injunctive relief under § 16 of the Clayton Act is inappropriate for resolution at this stage.

Defendants offer no argument as to why Plaintiff would not have individual standing to sue for violations of Colorado State consumer protection laws or Michigan State antitrust laws. Defendants acknowledge that the laws of neither Michigan or Colorado require that some part of the alleged injury occur within the state. Defendants offer no argument why Plaintiff's claims under these laws should nonetheless be dismissed on Article III grounds, effectively conceding no such argument exists.

As to those states in which Defendants argue that the instate purchase standing requirement applies, whether or not Plaintiff individually (which, again, is not the relevant inquiry) has met this requirement is not appropriate to resolve at this stage on the pleadings, but rather is a mixed question of law and fact that needs to be resolved on a state-by-state basis after discovery has taken place. Defendants state broadly and generally "[t]hirty-six of the 39 statutes

10

under which [Plaintiff] seeks damages expressly require that at least some part of the alleged injury have occurred in that particular state."[5]  However, a review of the authority that Defendants offer in purported support of this far-reaching generalization (contained in Defendants Appendix B)[6] belies it.  For example, the relevant Arizona statute states "'[a] contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, *any part of which is within this state*, is unlawful,'" Ariz . Rev. Stat. §§ 44-1402), while the relevant Wyoming authority "appl[ies] the statutory scheme to '[a]ny person, firm, corporation, foreign or domestic, or other entity doing business *in the state of Wyoming* and engaged in the production, manufacture, sale or distribution of any commodity in general use.'" *Id*. (W.S. § 40-4-101).  There is no language requiring that the complained of injury occur within the respective states, and it is not clear that these authorities would be susceptible to such an interpretation.  However, accepting *arguendo* that they are susceptible to such an interpretation, there is certainly nothing in either authority that would suggest that the same standard would apply under both laws as to whether such a requirement was met in a particular instance.

 Moreover, even accepting *arguendo* that under all of these laws Plaintiff was required to have made a purchase in the particular State, and again, it was only Plaintiff's purchases (as

---

 [5]As discussed above, Plaintiff does not seek damages, *on behalf of itself*, under any law other than California's Cartwright Act. Therefore, all of the damages sought under these thirty-six state laws are on behalf of unnamed members of the putative class; accordingly it is these unnamed putative class members' Article III standing to pursue such claims that is relevant, not Plaintiff's. *Payton* 308 F.3d at 380.

 [6]As stated in Plaintiff's Motion to Strike the four Appendices filed with Defendants' Motion to Dismiss, which has been filed concurrently with Plaintiff's Opposition, the Court should not consider arguments contained in the Appendices because they effectively constitute substantive briefing in excess of the page limit established by the Court.

opposed to that of putative class members) that were relevant, Plaintiff alleges sufficient facts in light of the circumstances. Plaintiff alleges that, as result of Defendants' conspiracy and the artificial shortages of Plasma Therapies created thereby, Plaintiff was frequently forced to purchase these life-saving Plasma Therapies on the spot market when the drugs were needed to treat their patients. Complaint at ¶ 61. In these transactions, a market-maker would arrange for Plaintiff to purchase (at an inflated price) these drugs from anyone in the nation that had a sufficient supply. *See* ¶ 62. It is thus quite probable that Plaintiff did, in fact, make purchases of Plasma Therapies in some or all of the non-California states under the laws of which Plaintiff has pled claims.[7] Moreover, it is because of Defendants' wrongful conduct that Plaintiff was forced to make purchases of Plasma Therapies in this manner. Thus, assuming *arguendo* that where Plaintiff made *its* purchases of Plasma Therapies is the only relevant inquiry, it would be contrary to well-established law and equity to bar Plaintiff from stating claims under these state laws because it has not alleged with precision where those purchases took place. *See generally Emery v. American Gen. Fin.*, 134 F.3d 1321, 1323 (7th Cir. 1998).

## IV.    THE CLAIMS ARE NOT BARRED BY *AGC*

### A.    *AGC* Factors Have No Application to the Instant Case Which Involves Direct and Indirect Purchasers Down a Chain of Supply

San Mateo has the same interest and has suffered the same injury as all other class members. Defendants argue that the claims Plaintiff seeks to state on behalf of itself and putative class members should be dismissed because they are too "remote," citing *AGC*. This is wrong

---

[7] Defendants' argument also ignores allegations in the Complaint as to the various locations throughout the nation in which Defendants are located and/or participated in the wrongful conduct alleged therein.

because the claims allege horizontal price fixing on behalf of indirect purchasers who are "down a chain of supply" of the price-fixed product; thus, *AG*C test has no application to these claims. *Aftermarket Filters*, 2009 U.S. Dist. LEXIS 104114, *31.

In *Aftermarket Filters,* after rejecting (on *Ortiz/Payton* grounds) the same Article III arguments that Defendants have raised here and that are discussed above, 2009 U.S. Dist. LEXIS 104114, at *24-25, Judge Gettleman rejected the *AGC* argument made by the defendant, ruling that "*AGC* was obviously never intended to apply to the instant situation involving claims of price fixing down a chain of distribution, because in the federal context such claims were already barred by *Illinois Brick*." *Id*. at *31-32. Rather, as Judge Gettleman continued, *AGC* applies only in "cases where the defendants' conduct causes damage in two separate but related markets." *Id.* at *32 (citing in support of this distinction *Loeb Industries Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481-485 (7th Cir. 2002).

Here, the state law antitrust claims allege price fixing down a chain of distribution of the same type as that alleged in *Aftermarket Filters*. *See* Complaint at ¶¶ 58-61. Judge Gettleman's reasoning in support of his holding that *AGC* had no applicability to the question of the indirect purchasers' standing to pursue the state law antitrust claims made in *Aftermarket Filters* equally supports a conclusion that *AGC* has no applicability to the right of the putative class members to pursue the state law antitrust law claims stated on their behalf here.

*AGC* should not be applied to bar indirect purchaser claims in cases involving price-fixing down the chain of distribution because such cases are "precisely the kind of cases the repealer states envisioned when they enacted state antitrust laws." *Aftermarket Filters*, 2009 U.S. Dist. LEXIS 104114, at *34. If applied in the manner that Defendants propose, *AGC* would

13

nullify the *Illinois Brick* repealer statutes enacted by 33 states and the District of Columbia. *Contra California v. ARC America Corp.*, 490 U.S. 93, 105-06 (1989) ("The congressional purposes on which *Illinois Brick* was based provide no support for a finding that state indirect purchaser statutes are pre-empted by federal law.")  Defendants complain that Plaintiff's claims are "by definition, indirect," but that is precisely what the repealer statutes were enacted to do. *See, e.g.,* Cal. Bus. & Prof. Code § 16750(a); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 782 (2010).  Defendants seek to have this Court nullify the legitimate decisions of state legislatures which have provided rights of actions for indirect purchasers victimized by price-fixing conspiracies.

These statutes were enacted as deliberate policy choices following the Supreme Court's decision in *Illinois Brick*.  Many of these states, such as California, recognize that the chief policy purpose behind its law is "deterring antitrust violations." *Clayworth*, 49 Cal. 4th at 783. The "concept of prudential standing in the antitrust context is intertwined with the substantive content of and intent behind the particular statute authorizing the cause of action." *D.R. Ward Const. Co. v. Rohm and Haas Co.*, 470 F.Supp.2d 485, 494-495 (E.D. Penn. 2006).  *Aftermarket Filters* is not the only court to have recognized that it is not appropriate to apply the *AGC* test to determine antitrust standing of indirect purchasers under a particular state's antitrust laws. *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 987 (9th Cir. 2000).

To support their argument that Plaintiff's allegations do not satisfy the *AGC* test, Defendants rely chiefly on *Loeb Indus. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002).  In that case, the Seventh Circuit reviewed, among other rulings, the District Court's denial of a motion for class certification filed by indirect purchasers, as well as its granting of motions for summary

14

judgment. *Loeb*, 306 F.3d at 478-479. Because the instant case is only at the pleading stage of proceedings, Defendants' reliance on that case is entirely misguided. As Judge Gettleman found as to antitrust claims brought under state law on behalf of indirect purchasers in *Aftermarket Filters, AGC* does not bar Plaintiff's claims.

> **B.** **Even If the *AGC* Test Could *Theoretically* be Applicable to State Law Antitrust Claims Like Those Brought Here on Behalf of Indirect Purchasers, Defendants do not Provide Sufficient Authority to Support its Application to Any of the State Law Antitrust Claims**

Even if the *AGC* test had any relevance to the prudential standing of members of the putative class – who are indirect purchasers in a chain of distribution – to seek remedies under State antitrust laws for the injuries they suffered as a result of Defendants' conspiracy, Defendants have not provided sufficient authority to support its application under the laws of any state to such claims. Courts have exercised great caution in evaluating whether the *AGC* test applies to indirect purchaser standing under such repealer statutes. *D.R. Ward*, 470 F.Supp.2d at 495 (cautioning against the contrary scenario in which "the federal judiciary would be entitled to disregard the intent of the state legislature . . . by applying federal, judicially-fashioned principles of practicality."); *In re TFT-LCD (Flat Panel) Antitrust Litigation ("TFT-LCD")*, 586 F.Supp.2d 1109, 1123 (N.D. Cal. 2008). Courts refuse to "apply the *AGC* test to plaintiffs' claims under the repealer states' laws in the absence of a <u>clear directive from those states' legislatures or highest courts</u>." *Id.*; *In re Graphics Processing Units Antitrust Litig. ("GPU II"),* 540 F.Supp.2d 1085, 1097 (N.D. Cal. 2007)); *Aftermarket Filters*, 2009 U.S. Dist. LEXIS 104114, *30 (citing with approval the *LCD-TFT* court's approach).

/ / /

15

1.      *Lorix v. Crompton Corp*. **Does Not Support Application of the *AGC* Test to Minnesota Claims**

Defendants cite *Lorix v. Crompton Corp.,* 736 N.W.2d 619 (Minn. 2007) for the proposition that **Minnesota** has "expressly adopted *AGC* or held that at least some of the *AGC* factors apply." This is not correct: in *Lorix*, the Minnesota Supreme Court held *AGC* does not apply to state antitrust claims. *Id.* at 629. The *Lorix* court stated: "We do not believe that the legislature repudiated *Illinois Brick* and invited indirect purchaser suits only for courts to dismiss those suits on the pleadings based on the very concerns that motivated *Illinois Brick*." *Id*. Thus, the court concluded the "application of the *AGC* factors in Minnesota would contravene the plain language of the statute and in some cases thwart the intent of the legislature by barring indirect purchaser suits for the reasons articulated in *Illinois Brick*." *Id*. It is clear that *AGC* does not apply under **Minnesota** law.

2.      **Harmonization Provisions Cited by Defendants Are Not Indicative of Those States' Intentions to Incorporate *AGC* Into Their Laws**

Almost equally unavailing is Defendants' effort to prove that the *AGC* test has been adopted by **Alaska, New Mexico, New York, Nevada,** and **West Virginia**, by reference to harmonization provisions in those States' statutes or to judicial decisions. Courts consistently reject efforts by defendants to extrapolate from general instructions that a state's antitrust laws should be interpreted in harmony with federal law to the conclusion that the *AGC* test is part of those laws. *See, e.g.*, *In re Potash*, 667 F.Supp.2d at 943 ("While we take note of … the state harmonization provision, this Court is hesitant to decide who may be a proper plaintiff under Michigan's antitrust laws without any signal from authoritative judicial or legislative source");

16

*GPU II,* 540 F.Supp.2d at 1097 (holding that defendants citation to "harmonization provisions . . . is not the same thing as showing that *AGC* has been adopted as the law of those states."); *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1153 (N.D. Cal. 2009) (refusing to "adopt an across-the-board rule that a state's harmonization provision . . . is an appropriate means of predicting how a state's highest court would rule regarding the applicability of *AGC* to state law antitrust claims"); *In re TFT-LCD,* 586 F.Supp.2d at 1123 (holding harmonization provisions did not amount to clear directives from the states that the *AGG* test should apply). Accordingly, this Court should refuse to apply *AGC* to Plaintiff's antitrust claims under the law of **Alaska, New Mexico, New York, Nevada,** and **West Virginia**.

### 3. Decisions by Federal District Courts Concerning Applicability of *AGC* Under Certain States' Laws Cited by Defendants are Entitled to Little if any Weight

The U.S. District Court decisions cited by Defendants in support of the proposition that the *AGC* test is part of the laws of **Kansas, New York, North Dakota, Oregon, South Dakota,** and **Utah** do not constitute a clear indication by those states of their intention to make the *AGC* test part of their laws for the simple reason that they have not even been rendered by a court of those states. Such decisions, to the extent that they appear to find that the *AGC* test applies to certain state laws, are <u>merely</u> examples of "district judge[s], in *ipse dixit* style, . . . bypass[ing] . . . state legislatures and . . . state appellate courts . . . to pronounce . . . [a] revision of . . . [those] state antitrust laws." *In re Graphics Processing Units Antitrust Litig. ("GPU I")*, 527 F.Supp.2d 1011, 1026. "Standing under each state's antitrust statute is a matter of that state's law," and is not for a "federal judge to impose by fiat." *Id.* Defendants' reliance on cases where federal judges have done just this – in the case of South Dakota, a federal judge in California, and in the

17

case of New York, a federal judge in North Dakota – provides no support for Defendants'

argument that the *AGC* test is part of these States' laws.[7]

### 4. Decisions by State Trial Courts Applying the *AGC* Test do not Constitute a Clear Indication that the *AGC* Test is Part of These States' Antitrust Laws

Only mildly more persuasive are decisions by state trial courts applying the *AGC* test,

which Defendants offer up as support for their contention that the test is part of the laws of

**Arizona, D.C., Maine, Michigan, North Carolina, Vermont,** and **Wisconsin**. While these

courts are at least part of one branch of the governments of those states, they are far from vested

with the power to authoritatively determine the respective contents of those states' laws. Thus,

citation to such decisions cannot be considered "the same as showing that *AGC* has been adopted

as the law of those states." *GPU II,* 540 F.Supp.2d at 1097. Even a cursory examination of these

decisions confirms this to be the case. For example, in the case that Defendants cite for the

proposition that the *AGC* test is part of Maine State antitrust law, *Knowles v. Visa U.S.A.*, the

court states:

> It is <u>probable</u> that the Maine Law Court, if presented with this
> issue, would look to the *Associated General Contractors* factors in
> determining standing under Maine's antitrust laws and would apply
> those factors <u>except</u> to the extent that those factors cannot be
> reconciled with the legislature's adoption of the Illinois Brick
> repealer.

CV-03-707, 2004 Me. Super. LEXIS 227, *13 (Oct. 20, 2004) (emphasis added). First, a

---

[7]Indeed, the court *In re Potash* rejected a citation by the defendants - which was purported to support their argument that the *AGC* test was part of Kansas state antitrust laws - to the same Northern District of California case cited by Defendants here, finding the case was unpersuasive to support the argument. 667 F. Supp. 2d at 944. And in the case Defendants cite for the proposition that the *AGC* test is part of Utah state antitrust law, *Boisjoly v. Morton Thiokol, Inc.*, 706 F. Supp. 795 (D. Utah 1988), the court does not even apply any of the *AGC* factors but instead merely cites to *AGC* in passing.

statement by a trial court that Maine's highest court would *probably* apply the *AGC* test comes

nowhere close to a "showing that *AGC* has been adopted as the law of [that] state." *GPU II*, 540

F.Supp.2d at 1097. Second, as discussed below, this case, as well as the state trial court cases

cited by Defendants to define the laws of the District of Columbia, Michigan, Vermont and

Wisconsin are all decisions rendered in *Visa cases*, in which the parties seeking standing were

neither direct nor indirect purchasers. These cases have no applicability to the claims made here

on behalf of indirect purchasers in a chain of supply and are not indicative of whether the highest

courts of those states would apply it in cases that involved indirect purchasers: to borrow from

the Defendants' Maine decision, to "apply those factors [in such cases] . . . cannot be reconciled

with the legislature's adoption of the *Illinois Brick* repealer." *Knowles*, 2004 Me. Super. LEXIS

227, *13; *see Aftermarket Filters*, 2009 U.S. Dist. LEXIS 104114, at *34 (finding that a case like

the instant one is "precisely the kind of case the repealer states envisioned when they enacted the

state antitrust laws.").

The lack of merit of this argument is demonstrated by an examination of the case that

Defendants cite for the proposition that North Carolina has adopted *AGC* – *Crouch v. Crompton

Corp.,* No. 02 CVS 4375, 2004 NCBC LEXIS 6 (N.C. Super. Ct. 2004). In a later opinion, the

Court of Appeals of North Carolina, distinguished the *Crouch* decision as not involving indirect

purchaser standing, and held that "the *AGC* factors do not apply in determining which indirect

purchasers have standing to sue under the North Carolina antitrust statutes." *Teague v. Bayer AG,*

195 N.C. App. 18, 26 (N.C. Ct. App. 2009) (noting further ["t]he injury that [p]laintiff alleges

appears to be within the type of injury that the General Assembly intended to address through our

state's antitrust and consumer fraud law."). This decision not only conclusively refutes

19

Defendants' assertions regarding the contents of North Carolina antitrust law, it also confirms the impropriety of basing a determination of the contents of any state's antitrust laws on a single decision of trial court of that state. Accordingly Defendants' arguments that the *AGC* test is a part of the antitrust laws of **Arizona, D.C., Maine, Michigan, North Carolina, Vermont, and Wisconsin** should be rejected.

> **5.     The Decision of One Intermediate California State Appellate Court Applying *AGC* is Insufficient**

Also insufficient to demonstrate that the *AGC* analysis applies to California law is Defendants' citation to an intermediate appellate court decision from California. Indeed, when Judge Alsup in *GPU II* referred to a citation by the defendants there to "one decision from an intermediate appellate court . . . not [being] the same as showing that *AGC* has been adopted as the law of those states," he was explicitly including in this evaluation citation to *Vinci v. Waste Mgmt.*, *Inc.*, 36 Cal.App.4th 1811, 1814-15 (Cal. Ct. App. 1995), the very case that Defendants cite here to purportedly prove the contents of California antitrust law. *GPU II,* 540 F.Supp.2d at 1097. Accordingly, Defendants' argument that the *AGC* test is part of California State antitrust law should be rejected.

> **6.     Defendants' Highest State Court Authorities Say Nothing About the Applicability of the *AGC* Test to Indirect Purchaser Claims Such as Those Stated Here**

Finally, the cases from the highest courts of **Mississippi, Iowa,** and **Nebrask**a that Defendants offer in purported support for the proposition that the antitrust laws of these States provide for application of the *AGC* test to indirect purchaser claims, such as those brought, here establish no such thing. The Mississippi case that Defendants cite, *Owens Corning v. R.J.*

*Reynolds Tobacco Co.,* only cites *AGC* for the unremarkable proposition that defendants' alleged wrongful conduct must be the proximate cause of the plaintiff's injury. 868 So. 2d 331, 339 (Miss. 2004). Nowhere in the opinion is there any discussion of any of the *AGC* factors let alone their application or applicability to claims brought under Mississippi State antitrust law. Thus, this decision falls far short of "a clear directive from . . . [Mississippi's] highest court[]" that the *AGC* test so applies. *TFT-LCD,* 586 F.Supp.2d at 1123.

In addition, in none of these cases were the courts presented with the question of whether the *AGC* test applied to the claims of indirect purchasers in a chain of distribution, such as those which are made here. The antitrust claims at issue in *Owens Corning* dealt with claims against a cigarette manufacturer by an asbestos manufacturer: that "never smoked, purchased, or competed in the market for cigarettes." 868 So. 2d at 343-344. The Mississippi Supreme Court made no decision regarding the applicability of the *AGC* test to claims brought under Mississippi State antitrust laws, much less whether *AGC* would apply to claims brought under Mississippi State antitrust law by indirect purchasers in the chain of the supply.

Similar fatal distinctions afflict Defendants' Iowa and Nebraska authorities, including *Southard v. Visa U.S.A., Inc.,* 734 N.W.2d 192 (Iowa 2007), and *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293 (Neb. 2006). *Southard* and *Kanne* are part of a line of cases that the *Aftermarket Filters* court distinguished as "the *Visa* cases." 2009 U.S. Dist. LEXIS 104114, at *33.[8] The *Visa* cases were brought by consumers against Visa and Mastercard, alleging that merchants that accepted Visa and Mastercard credit cards were forced by Visa and Mastercard to also accept

---

[8] As mentioned above, the authorities cited by Defendants concerning the District of Columbia, Maine, Michigan, Vermont and Wisconsin, in addition to being merely state trial court decisions, are also *Visa* cases and thus suffer from the same deficiencies in this regard as do Defendants' Iowa and Nebraska authorities.

debit cards issued by the companies and pay the companies supra-competitive processing costs
for debit card transactions. *Id.* The consumers alleged that, as a result, merchants increased
prices at their stores; and thus, the merchant customers, i.e. the plaintiffs and putative class
members in these cases, including those who paid by cash or check, were forced to pay inflated
prices for products caused by Visa's tying arrangement. *See Id.* Courts that have adjudicated
*Visa* cases, including the *Kanne* and *Southard* courts, have consistently held that the consumer
plaintiffs lacked antitrust standing under the various State antitrust laws under which these
plaintiffs have sought to sue.

However, the basis on which these courts have consistently reached these decisions is that
these plaintiffs "are not indirect purchasers," in that they "did not purchase debit card services,
either directly or indirectly; rather they claim that they paid higher prices for goods resulting from
the merchants' purchase of Visa's and MasterCard's debit card services." *Kanne*, 723 N.W.2d at
301; *see also Southard*, 734 N.W.2d at 196-97 (same); *Aftermarket Filters*, 2009 U.S. Dist.
LEXIS 104114 at *33 (collecting cases). Thus, as the *Aftermarket Filters* court found, the
holdings in these and other *Visa cases*, and the policy concerns that animate them, have no
applicability to cases, such as the instant one, in which the plaintiffs and putative class members
are all purchasers in the "chain of distribution." *Id*. at *34. Cases such as this where indirect
purchasers in a chain of distribution seek damages for the injuries that they suffered as a result of
a Defendants' antitrust conspiracy are "precisely the kind of case the repealer states envisioned
when they enacted the state antitrust laws." *Id.; See also Teague,* 195 N.C. App. at 26 (holding
that the *Visa* case precedent cited by defendants there (which is the same as that cited by

Defendants here) does not warrant application of the *AGC* test to claims brought under North Carolina State antitrust law by indirect purchasers in a chain of distribution).

### C.     Even if *AGC* is Applicable, it Does Not Bar The Claims

Assuming *arguendo* that all of the law discussed above were non-existent, and that the *AGC* test applies to any of the Plaintiff's claims, Defendants have failed to meet their burden of demonstrating that neither Plaintiff nor members of the putative class have standing.

### 1.     Causal Connection and Improper Motive

Defendants claim that Plaintiff's "conclusory assertion that, because there was an alleged reduction in supply, indirect purchasers must have paid more for therapies is insufficient to allege causation[.]" Defs' Mot. at 15. This contention lacks merit. Plaintiff alleges that it and other Class members purchased Plasma Therapies from Defendants at supracompetitive prices. ¶ 283. Plaintiff further alleges that, as a result of Defendants' unlawful conduct: (a) price competition in the markets for Plasma Therapies was artificially restrained; (b) prices for Plasma Therapies sold by Defendants were raised, fixed, maintained, and/or stabilized at supra-competitive levels; and (c) purchasers of Plasma Therapies from Defendants were deprived of the benefit of free and open competition in the Plasma Therapies markets; and (d) Plaintiff and member of the Class have suffered financial injuries as a result. ¶ 287. Furthermore, Plaintiff alleges Defendants went to great lengths to conceal their conspiracy to restrict output of Plasma Therapies. ¶¶ 288-299. Plaintiff plainly alleges that it purchased Plasma-Derivative Protein Therapies from Defendants at inflated prices caused by their anticompetitive conduct. Plaintiff further adequately alleges Defendants' improper motive in their fraudulent concealment of these anti-competitve activities. This is all that is required at this stage of litigation. *See D.R. Ward*, 470 F.Supp.2d at 502.

## 2. Nature of Injury in Relation to Purpose of Antitrust Statutes

Defendants claim that Plaintiff's injury is not of the type the federal antitrust laws are meant to redress. This erroneously conflates federal and state antitrust law. "Antitrust injury" is a doctrine of statutory construction. *See Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003). "This inquiry forces the Court to connect the alleged injury to the purposes of the antitrust laws." *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.,* 253 F.Supp.2d 262, 272 (D. Conn. 2003) (internal quotations omitted). "Antitrust injury" under state law thus depends on the intent of the *state* legislature.

While federal law has rejected such suits, the repealer states have declared their clear intent to provide redress to indirect purchasers. Accordingly, Plaintiff's and the class' injuries are exactly the type that the state antitrust laws seek to remedy. *See e.g., Aftermarket* Filters, 2009 U.S. Dist. LEXIS 104114 at *33, *State by Humphrey v. Philip Morris, Inc.,* 551 N.W.2d 490, 497 (Minn. 1997); *Clayworth*, 49 Cal.4th at 782; *Holder v. Archer Daniels Midland Co.*, C.A. No. 96-2975, 1998 D.C. Super. LEXIS 39, at *9 (D.C. Super. Ct. Nov. 4, 1998); *Comes v. Microsoft Corp.,* 646 N.W.2d 440, 443 n.2, 451 (Iowa 2002); *Hyde v. Abbott Labs.,* 473 S.E.2d 680 (N.C. Ct. App. 1996).

## 3. The Directness of the Injury

Under the *AGC* framework, directness relates to "whether there exists a chain of causation between a defendant's action and a plaintiff's injury or (in contrast) if the connection is based instead only on 'somewhat vaguely defined links.'" *Loeb*, 306 F.3d at 486-87. As discussed above, Plaintiff has alleged more than enough at this stage of litigation to establish a causal nexus between its injuries and Defendants' unlawful conduct. Defendants argue that

direct purchasers are "more immediate victims" but this argument cannot be used to bar claims brought under repealer statutes, which are intended to give indirect purchasers remedies for injuries caused by antitrust violations. *Knowles v. Visa U.S.A.*, No. CV-03-707, 2004 Me. Super. LEXIS 227, at *16 (Me. Super. Ct. Oct. 20, 2004) (holding that directness factor "should be disregarded entirely in any inquiry as to standing under Maine's antitrust laws"). "[T]he strict application of this factor, in the context of indirect purchasers, would always caution against standing, an outcome incompatible with the purpose of *Illinois Brick* repealer statutes . . ." *D.R. Ward*, 470 F.Supp.2d at 503. Thus, Plaintiff's injuries are sufficiently "direct" under the repealer laws under which they sue.

### 4.  The Speculative Nature of the Damages

Defendants argue that it is unclear that Plaintiff has suffered any "true economic loss at all" because as a "middleman" patients reimburse Plaintiff. Defs' Mot. at 16. Defendants' argument amounts to a pass-on defense. *See Illinois Brick*, 431, 726 (1977). The validity of such a theory is a matter of state law and certain states have explicitly rejected such a defense. *See e.g., Clayworth*, 49 Cal. 4th at 787.

Furthermore, Plaintiff expressly alleges that it paid more for Plasma Therapies, Complaint at ¶ 283, and that such purchases included "hundreds of thousands of dollars worth of [Plasma Therapies] to provide treatment to indigent patients for which the County did not receive reimbursement." ¶ 30. In contrast, the *AGC* court questioned whether the plaintiff, independent from its members, had suffered any injury at all. *AGC*, 459 U.S. at 543. Plaintiff's Complaint specifically alleges that Plaintiff paid more than it would have in a competitive market. ¶ 283.

In any event, this inquiry is not appropriate at the motion to dismiss stage. *See, e.g., U.S. Network Serv., Inc. v. Frontier Comm., Inc.,* 115 F.Supp.2d 353, 358 (W.D.N.Y. 2000).

### 5. Risk of Duplicative Recovery and Complex Damage Apportionment

As discussed above, both *AGC* and *Illinois Brick* were animated by concerns over the risks of duplicative recovery and complex damage apportionment in federal antitrust suits brought under the Sherman and Clayton Acts. Repealer states have enacted their own laws in furtherance of their state policies to allow indirect purchaser claims in order to ensure that victims of antitrust violations are made whole and that antitrust violators are held responsible for their illegal conduct. *See Lorix,* 736 N.W.2d at 629 s*ee also Crouch,* No. 02 CVS 4375, 2004 NCBC LEXIS 6, at *43 (applying *AGC* but refusing application of risk of duplicative recovery and complex damage apportionment due to "the statutory recognition of indirect purchaser claims."). Accordingly, this Court should refuse application of these factors given each Repealer state's explicit rejection of these policy considerations.

Defendants argue that the damages are far too complex because there are "multiple 'indirect purchasers' for each therapy." Plaintiffs' allegations make clear, however, that there is no risk of duplicate recovery or complex damage apportionment. How each state's laws chose to deal with this issue reflects the particular policy choices that animate that law. *See, e.g., Clayworth*, 49 Cal. 4th at 783. And to the extent Defendants appear to discuss a full or partial pass-through defense – such is not at issue at this stage of the proceedings. In summary, assuming *arguendo* that the *AGC* test had any applicability to any of the state law antitrust claims made in the Complaint, the allegations therein more than satisfy each of the tests factors as applicable at the motion to dismiss stage.

26

**D.      Plaintiff has Standing to Sue for Injunctive Relief Under the Sherman Act**

Defendants address Plaintiff's claim for injunctive relief in two sentences, arguing that

the claim amounts to "unnecessary duplication" because "the Direct Purchasers are pursuing the

exact same injunctive relief." Defs' Mot. at 13. This argument clearly lacks merit. Those are

different parties. It is well established that standing to enjoin antitrust violations is more readily

pled than standing for damage claims. *Bubar v. Ampco Foods, Inc.,* 752 F.2d 445, 449 n.2 (9th

Cir. 1985). Accordingly, courts recognize that when injunctive relief is at issue, "some factors,

namely the speculative nature of the damages and the risk of duplicate recoveries or complex

damages apportionment, are inapplicable to the antitrust standing analysis." *In re Potash*, 667

F.Supp.2d at 937. Applying all *AGC* factors, Plaintiff has standing. Certainly the same is true

under the less stringent requirements for injunctive relief.

**V.      PLAINTIFF SUFFICIENTLY ALLEGES FACTS REQUIRED BY CERTAIN
         STATES' ANTITRUST OR UNFAIR COMPETITION LAWS**

**A.      The Complaint Sufficiently Alleges Claims Under Utah State Antitrust Law**

In pertinent part, Utah's antitrust law states: "A person who is a citizen of this state or a

resident of this state and who is injured or is threatened with injury in his business or property by

a violation of the Utah Antitrust Act may bring an action for injunctive relief and damages,

regardless of whether the person dealt directly or indirectly with the defendant." Utah Code Ann.

§ 76-10-919 (1)(a) (emphasis added). While amendment notes to the statute indicate that the

above-emphasized language became effective on May 1, 2006, Defendants direct the Court to no

authority indicating that the statute did not – prior to that date – otherwise provide a cause of

action for indirect purchasers. Indeed, even a cursory reading of subsection 1(a) without the

27

2006 amendment makes clear that the statute had still provided relief for "a person . . . who is injured . . . in his business or property" could bring an action for damages. Accordingly, Defendants have failed to demonstrate that Utah State Subclass members cannot recover damages for injuries they suffered before May 2006.[9]

### B. The Complaint Sufficiently Alleges Claims Under Alaska Antitrust Law

While Alaska's antitrust law provides that the Attorney General may secure monetary relief as *parens patriae* on behalf of persons doing business or residing in this state (Alaska Statute § 45.50.577(b)), Defendants direct the Court to no case law indicating that an indirect purchaser may not nonetheless seek *injunctive* relief under the statute.

## VI. THE COMPLAINT ADEQUATELY ALLEGES FACTS TO PROCEED WITH THE STATE UNFAIR COMPETITION CLAIMS

### A. Rule 9(b) Does Not Apply to the Complaint's Unfair Competition Claims

When it does apply, "Rule 9(b)'s heightened pleading standard applies only to allegations of fraud, and not to the complaint as a whole." *Siegel v. Shell Oil Co.*, 480 F.Supp.2d 1034, 1039-1040 (N.D. Ill. 2007) (citation omitted); *see also Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Here, Rule 9 does not apply at all, because Plaintiff's unfair competition claims are premised on allegations of Defendants' "unfair" and "deceptive" practices – which do not require proof of intentional misrepresentations – and so need only comply with pleading standards of Rule 8. *See* ¶ 545; *accord Siegel*, 480 F.Supp.2d at 1043-1044. The Complaint's unfair competition claims are not "based entirely" on allegations of fraudulent conduct. Indeed, to the extent that the Complaint alleges that Defendants acted fraudulently,

---

[9] Plaintiff has given notice to the Utah Attorney General of this action as of the date of filing of this brief.

such allegations relate to Defendants' fraudulent concealment of its deceptive acts and conduct, which are sufficiently alleged. *See* ¶¶ 288-89, 545. "It is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Rubber Chemicals Antitrust Litig.*, 504 F.Supp.2d 777, 789 (N.D. Cal. 2007). This is in accord with the rule "noted on a number of occasions" by the Seventh Circuit "that the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim[.]" *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) (citation omitted). The allegations related to "unfair and "deceptive" practices – which do not require proof of intentional misrepresentations – need only comply with pleading standards of Rule 8. *See Siegel*, 480 F.Supp.2d at 1043-1044.

The Complaint states that Defendants' "conspiracy was inherently self-concealing," ¶ 291 and avers that "Defendants knowingly and willfully engaged in deceptive and unconscionable conduct by creating and participating in a price-fixing conspiracy." ¶ 545. The Complaint further alleges Defendants "deceptively concealed their unlawful activities by agreeing not to divulge the existence of a conspiracy, conducting meetings and conversations in secret, confining the plan to a small group of high-level officials, and avoiding the creation of documents." *Id.*, *see also* ¶ 2. Because these alleged practices constitute plain deception, which does not require a showing of intentional misrepresentations, these allegations need not comply with the heightened pleading standards of Rule 9(b). Furthermore, because the proof of alleged fraudulent concealment is thus alleged to be in Defendants' hands – and Plaintiff otherwise lacks access to

29

facts necessary to detail its unfair competitions claims – it is inappropriate to address issues related to the Complaint's fraud allegations at this stage of the proceedings.

Finally, it should be noted that even if Rule 9 applied to the unfair competition claim in the Complaint (it does not), it would be satisfied by the allegations of the Complaint. The Complaint alleges the mechanisms by which Defendants reduced supplies of Plasma Therapies in order to artificially increase the prices therefore, while falsely blaming the shortages on other factors. These allegations go way beyond the proverbial "first paragraph of any newspaper story," resembling more closely the contents of a multi-part expose. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)

### B. The Complaint Establishes that Defendants' Conduct Caused Plaintiff and Class Members to Pay Artificially-High Prices For Plasma Therapies

#### 1. The Complaint's Allegations Satisfy Illinois Law's Causation Standard

Plaintiff's Complaint presents allegations of unfair <u>and</u> deceptive conduct. The Complaint's allegations are more than sufficient to satisfy the pertinent requirements of the Illinois Consumer Fraud Act, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 ILCS 505/2. "Because the statute is in the disjunctive," a plaintiff may seek relief for allegations of unfair and deceptive conduct. *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 804 (Ill. App. Ct. 1st Dist. 2006). Thus, "[r]ecovery may be had for unfair as well as deceptive conduct." *Id*. (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002)).

Plaintiff pleads facts sufficient to support the causation standard for unfair and deceptive acts. It is well settled that "'the required allegation of proximate cause [under the Act] is

30

minimal since that determination is best left to the trier of fact.'" *Pappas*, 363 Ill. App. 3d at 805-806 (quoting *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504 (Ill. 1996)). In order to prevail under Illinois law, a plaintiff must have been "actually . . . deceived by a statement or omission that is made by the defendant." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554 (2009). The Complaint satisfies these requirements, alleging in detail how Plaintiff and other putative class members - including members of the putative Illinois State Subclass (the only persons to which the requirement is relevant) – were deceived by Defendants' pretextual explanations of the source of the Plasma Therapy shortages. ¶ 225, 227. Moreover, the Complaint details how Defendants directed these pretextual explanations toward Plaintiff and other purchasers of Plasma Therapies, e.g. members of the putative class, in order to hide the true cause of the shortages – Defendants' conspiracy to restrict supply – and that, as a result, Plaintiff and other members of the putative class paid artificially high prices for Plasma Therapies and were injured thereby. ¶ 223. This more than satisfies the requirements under Illinois law.

The Complaint also satisfies the requirements to plead claims of unfair acts. In the Seventh Circuit, three factors may be looked to in determining whether conduct is <u>unfair</u>, including: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 672 (7th Cir. 2008) (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). Here, the gravamen of the Complaint makes the unfairness of Defendants' conduct -- Defendants raised the price of Plasma Therapies which were needed for life-saving medical treatment and artificially restricted the supply of these Therapies. *See* ¶ 2. Indeed, Defendants could have provided a

31

greater supply of Plasma Therapies, but instead "focused on preventing any oversupply of [the Therapies]." ¶ 150. Defendants unfairly benefitted from these acts, which caused Plaintiff and other Class members to purchase Plasma Therapies "at supracompetitive prices." ¶ 262. This pricing resulted "in significant annual increases [in] profits for [Defendants]." ¶ 269. Given the palpable effects (loss of life and grave risks to the health of patients) and shortages such conduct had on persons who need Plasma Therapies, Defendants cannot reasonably dispute that these acts do not satisfy the above-noted factors.

## 2. The Complaint's Allegations Satisfy The Causation Standards Of The Other 13 States' Unfair Competition Laws

Under the law of several states, a plaintiff is required only to establish a causal connection between the Defendants' conduct and the injury at issue. Contrary to Defendants' argument, the states do not require a plaintiff to plead that it relied on an affirmative misrepresentation in order to establish the causation element.[10] A plaintiff may satisfy the causation element of an unfair competition claim by alleging that the injury occurred *as a result* of acts at issue.[11] Moreover, contrary to Defendants' argument, the causation element for certain

---

[10] **Colorado** law requires only that a plaintiff show: that the challenged practice caused the plaintiff's injury. *Rhino Linings United States v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 147 (Colo. 2003) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). And with regard to **Utah**, that state's unfair competition law requires only that a plaintiff allege it was "injured by the act, for the recovery of damages." U.C.A. 1953 § 13-5-14. Under **Michigan** law, a plaintiff must allege that he "suffer[ed] loss as a result of [a defendant's] violation of [the pertinent act.]" *Conley v. Aggeler*, No. 1:05-CV-406, 2007 U.S. Dist. LEXIS 5307 (W.D. Mich. Jan. 25, 2007).

[11] To seek remedial measures under **Maine's** Unfair Trade Practices and Consumer Protection Act, a plaintiff need only show "show a loss of money or property <u>as a result</u> of the UTPA violation." *Tungate v. MacLean-Stevens Studios, Inc.*, 1998 ME 162, P13 (Me. 1998) (citation omitted) (emphasis added). Under "[t]he plain language of the statute," relief is only denied for plaintiffs who do not demonstrate an injury from the alleged deceptive or unfair practice." *Id.* Similarly, **Michigan** law provides that "a person who suffers loss <u>as a result</u> of a violation of [its Act] may bring an action to recover actual damages." *Kerwin v. Paul Revere Life Ins. Co.*, 6 Fed. Appx. 233, 242 (6th Cir. 2001) (citation omitted). Similarly, **New Mexico** law requires a plaintiff only to "establish causation" by

states may be satisfied by alleging that the injury occurred as a result of unfair _or_ deceptive

practices.[12]  Finally, where a plaintiff alleges that a Defendant engaged in deceptive conduct, a

plaintiff need not necessarily allege that he relied on a defendant's deceptive act.[13]  As noted

above, Plaintiff alleges that Defendants engaged in both deceptive and unfair conduct.  These

acts caused Plaintiffs and other Class members to pay supracompetitive prices for life-saving

Plasma Therapies.  ¶¶ 262-265.  These prices "limited those [- including Plaintiff and other Class

members -] treating indigent patients from obtaining enough plasma therapies at reasonable

rates." ¶ 257.  For these reasons, Plaintiff has clearly satisfied the causation requirements of each

of state under which it brings an unfair competition claim.

### C.    Defendants Misconstrue Plaintiff's Allegations

Defendants appear to argue that Plaintiff and State Subclass members could satisfy the

causation standard of the Illinois Consumer Fraud and Deceptive Business Practices Act only by

---

showing that Defendants' conduct caused Plaintiffs to suffer "actual damages."  *Brooks v. Norwest Corp.*, 103 P.3d 39, 51 (N.M. Ct. App. 2004) (citation omitted).

[12] Under **Florida** law, a plaintiff is only required to allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2d Dist. 2006).  And in **Nebraska**, the causation element of that state's law requires a plaintiff to plead "that [it] was injured in its business or property by [the defendant's] unfair method of competition and deceptive trade practice."  *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1042 (8th Cir. 2011).

[13] With regard to **Massachusetts** law, a plaintiff satisfies the pertinent standard by establishing: "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 76 (Mass. App. Ct. 2009) (citing G. L. c. 93A, § 9).  Likewise, under **New York** law, "while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual . . . harm."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (N.Y. 1995) (mphasis added).  And under the law of the **District of Columbia**, a plaintiff "[is only required to] show that defendants' allegedly deceptive trade practices caused her injuries, whether by virtue of her reliance on those practices or by virtue of some other reason. *Smith v. Brown & Williamson Tobacco Corp.*, 108 F. Supp. 2d 12, 19 (D.D.C. 2000) (emphasis added).

33

alleging that they relied on a misleading statement directed towards them. To support this proposition, Defendants rely chiefly on *Thompson's Gas & Electric Service v. B.P. Am. Inc.*, 691 F.Supp.2d 860, 869-70 (N.D. Ill. 2010), a non-controlling federal decision interpreting Illinois state law, which in turn relied upon *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002). This argument misconstrues Plaintiff's claims and allegations. In *Oliveira*, the plaintiff presented a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act and premised his claim on allegations that the defendant oil company made false advertisements that use of its gasoline would improve both engine performance and the environment. 776 N.E.2d at 154. According to the plaintiff, the oil company's advertisements increased consumer demand for its gasoline, and thereby permitted the company to command an inflated price for its gasoline. The plaintiff "[did] not allege that he was, in any manner, deceived by [the] defendant's advertisements." *Id*. (emphasis added). The court therefore rejected the plaintiff's theory that "purchasers of defendant's premium [gasoline] who never saw the ads and, thus, were 'not deceived' also [had] valid claims." *Id*. at 155. The court concluded that the plaintiff's argument was at odds with Illinois state precedent that "to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." *Id*.

The *Oliveira* court's decision turned on the plaintiff's failures to plead or otherwise show that the plaintiffs relied on a particular advertisement or statement. Unlike that case, however, Plaintiff does not allege that its injuries resulted entirely from a particular misrepresentation or misstatement made by a Defendant. Instead, Plaintiff alleges that it "suffered an ascertainable loss of money or property from the supracompetitive, artificially inflated prices." ¶ 565. This

34

allegation, when considered with those noted above, is sufficient to establish that Plaintiff's injuries were caused by Defendants' willful effort to fix the price of life-saving Plasma Therapies.

**D.     Plaintiff Sufficiently Pleads Facts to Proceed with Claims Under the Illinois Unfair Competition Laws**

Defendants argue that Plaintiff cannot plead claims under the state unfair competition law of Illinois.  This argument is not convincing because Plaintiff has sufficiently pleaded facts to support its unfair competition claims.  Defendants' reliance on *Gaebler v. New Mexico Potash Corp.*, 676 N.E.2d 228, 229-30 (Ill. App. Ct. 1996) is misguided because it relied on *Laughlin v. Evanston Hosp.*, which observed: "[t]o construe the Consumer Fraud Act to give a cause of action for discriminatory pricing that the legislature refused to give under the Antitrust Act would be incongruous."  550 N.E.2d 986, 993 (Ill. 1990).  But as the court in *Siegel v. Shell Oil Co.* found: "*Laughlin*, however, [was] silent" as to the situation here: whether consumers can elect to pursue a remedy under the Consumer Fraud Act where the Illinois Antitrust Act may also provide relief. As a result, Defendants have not established that *Laughlin* prohibits Plaintiffs' claim for concerted, artificial price inflation under the Consumer Fraud Act.  480 F.Supp.2d 1034, 1048-1049 (N.D. Ill. 2007).

**E.     Plaintiff's Standing Under Nebraska and New York Law**

*Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301-02 (Neb. 2006), involved plaintiffs who did not make purchases directly or indirectly, and thus bears no relevance to the instant case which involves purchasers in a chain of distribution.  *New York v. Daicel Chem. Indus., Ltd.* stands only for the unremarkable proposition that an injury deemed "too remote" is precluded

under its consumer protection statute. 42 A.D. 3d 301, 303-04 (N.Y. App. Div. 2007). (To be clear, this particular court did not hold that the *AGC* factors necessarily apply to New York's consumer protection claim.) Plaintiff has alleged sufficient facts to establish that Subclass members in both Nebraska and New York have sustained a direct injury as a result of Defendants' price-fixing scheme.

**F.      Plaintiff is a Protected Party Under the Unfair Competition Statute of New York**

In *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, N.A., the Court of Appeals of New York held that "plaintiffs claiming the benefit of section 349 . . . must charge conduct of the defendant that is consumer-oriented." 85 N.Y.2d 20, 25 (N.Y. 1995). Significantly, the Court of Appeals also clarified that, in order to sufficiently allege that Defendants' alleged conduct is oriented towards consumers, a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Id*. When a plaintiff alleges antitrust behavior, the effect of such behavior on prices paid by purchasers, as well as an element of deception, the "consumer-oriented" pleading requirement is sufficiently charged. *GPU I,* 527, F.Supp.2d at 1030. *Cox v. Microsoft Corp.*, 778 N.Y.S. 2d 147, 148 (N.Y. App. Div. 2004); *see also Excellus Health Plan, Inc. v. Tran*, 287 F.Supp.2d 167, 180 (W.D.N.Y. 2003); *LCD I*, 586 F.Supp.2d at 1128. Plaintiff has clearly alleged facts sufficient to show that Defendants' conduct was "consumer-oriented." Plaintiff alleges that Defendants' price-fixing conspiracy resulted in New York State Subclass members paying supracompetitive and artificially inflated prices for Plasma-Derivative Protein Therapies. ¶¶ 616, 617. Plaintiff also alleges that Defendants'

/ / /

36

conduct suppressed competition, which resulted in unconscionably higher prices for purchasers and increased benefits for Defendants."  ¶ 618.

### G. Plaintiffs Allege Sufficient Facts to Proceed with Unfair Competition Claims Under Maine and Colorado  Law

Citing *Tungate v. Maclean-Stevens Studios, Inc.*, 714 A.2d 792 (Me. 1998), Defendants strenuously urge that Plaintiff cannot bring a claim under Maine's unfair competition laws because the Complaint does not contain allegations of "inducement."  Defendants' reliance on that case is misplaced.  Unlike that case, here Plaintiff alleges that no other choices were available, and that it was forced to buy on the spot market.  There, the court noted that, "[i]n pricing cases under the [Unfair Trade Practices Act] the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase." *Tungate*, 714 A.2d at 797 (emphasis added).  In addition, the Complaint in this case alleges that Defendants "knowingly misled Maine State Subclass members by creating the illusion of competitive pricing controlled by market forces, rather than Defendants' illegal conspiracy." ¶ 581.  These Subclass members were thus "not aware of Defendants' price-fixing conspiracy or that they were being unfairly and illegally overcharged."  ¶ 582.  Accordingly, Defendants cannot reasonably dispute that the prices which they controlled and fixed had the effect of deceiving Maine Subclass members.

*In re New Motor Vehicles Canadian Export Antitrust Litig.* does not bar plaintiff's claims because that case only stands for the proposition that "to establish a claim under the CCPA, a

/ / /

37

private plaintiff must show that 'the challenged practice caused the plaintiffs (sic) injury.'" 350 F.Supp.2d 160, 179-80 & nn.28-30 (D. Me. 2004). Plaintiff has satisfied this requirement.[14]

### H. The Complaint Adequately Alleges that Defendants' Deceptive and Unconscionable Efforts to Fix the Price of Life-Saving Plasma Therapies Occurred within Certain States

The Complaint alleges that Defendants' deceptive conduct "restrained, suppressed, and eliminated" price competition in each of those jurisdictions; that the price of life-saving Plasma Derivative Protein Therapies was fixed at artificially high levels throughout each jurisdiction; that residents of each jurisdiction were deprived of free and open competition; and, significantly, that residents of each jurisdiction paid supracompetitive, artificially inflated prices for Plasma-Derivative Protein Therapies. ¶ 556 (Florida), ¶ 586 (District of Columbia), ¶ 550 (New York).[15] In light of these allegations, Plaintiff cannot reasonably dispute that the Complaint sufficiently alleges Defendants' deceptive conduct in relation to the sale of Plasma Derivative Protein-Therapies in Florida, New York, and the District of Columbia.

### I. Plaintiff Sufficiently Pleads Facts to Support its Claims Against PPTA

This Court has already held that allegations in the direct purchasers' Consolidated Complaint sufficiently allege that PPTA "helped [the other] defendants conceal the conspiracy by falsely denying the existence of supply shortages and over-reporting the actual supply to

---

[14] To the extent that the court in *New Motor Vehicles* noted that a plaintiff is required to allege that the withholding of information was intended to induce the consumer to enter into the transaction, Plaintiff has also clearly met this requirement. 350 F.Supp.2d at 180, n.29. Plaintiff alleges that Defendants agreed not to divulge the existence of the conspiracy, and that Defendants engaged in such conduct to "secure economic benefits from Colorado State Subclass members." ¶¶ 545, 546. These allegations demonstrate that Defendants willfully induced consumers, including Colorado Subclass members, to purchase Plasma Derivative Protein Therapies at higher prices. Indeed, as the Complaint notes, Defendants had no power to negotiate in such transactions, and were thus forced to do so. ¶ 546.

[15] Plaintiff presents similar allegations with regard to Defendants' deceptive conduct in the District of Columbia and the State of New York. ¶¶ 586, 550.

government officials." *See* Order at 17 (quoting ¶ 173 of the direct purchasers' consolidated

complaint). The Complaint similarly alleges PPTA's conscious assistance of the other

Defendants in furtherance of the conspiracy, in these and other ways. *See, e.g.*, ¶¶ 35, 124-131,

145, 198-212, 219-221, 223-232. Thus, under the laws of Colorado, Maine, Michigan, New

Mexico, and the District of Columbia, the Complaint adequately alleges facts establishing

Defendant PPTA's liability as aider and abettor of the other Defendants in the latters'

commission of the wrongful conduct alleged.[16] *See Holmes v. Young,* 885 P.2d 305, 309 (Col.

1994). None of the authority cited by Defendants is to the contrary. Thus, Defendants' motion

to dismiss the unfair competition claims against Defendant PPTA under these states' laws should

be denied.

/ / /

---

[16]*Abel v. Eli Lilly and Co.*, 94 Mich.App. 59, 88-89, 289 N.W.2d 20 (1979); *Ali v. Mid-Atlantic Settlement Services, Inc.*, 640 F.Supp.2d 1, 9 (D.D.C. 2009); *Fahey v. R.J. Reynolds Tobacco*, 4 Mass.L. Rptr. 21, 1995 WL 809837, at *8 (Mass. Super.Ct June 12, 1995); *Holmes v. Young*, 885 P.2d 305, 308 (Colo.App 1994); *Neely v. Bar Harbor Bankshares*, 270 F.Supp.2d 50, 55 (D. Me. 2003); *Rael v. Cadena*, 604 P.2d 822, 822-23 (N.M.Ct.App. 1979).

## V.     CONCLUSION

For the reasons set forth above, Defendants' motion should be denied except as noted in

Footnote 1.  To the extent that the Court determines that any aspect of Defendants' motion

should be granted, Plaintiff respectfully requests leave to amend.

Dated: June 22, 2011                                   Respectfully submitted,

                                                       By:____/s/ Steven N. Williams_____
                                                       Steven N. Williams
                                                       COTCHETT, PITRE & McCARTHY, LLP
                                                       840 Malcolm Road, Suite 200
                                                       Burlingame, CA 94010
                                                       Telephone: (650) 697-6000
                                                       Facsimile:  (650) 697-0577
                                                       E-mail: swilliams@cpmlegal.com

                                                       Stuart G. Gross
                                                       GROSS LAW
                                                       The Embarcadero
                                                       Pier 9 Suite 100
                                                       San Francisco, CA 94111
                                                       Telephone: (415) 671-4628
                                                       Facsimile: (415) 480-6688
                                                       E-mail: sgross@gross-law.com