UM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: PLASMA-DERIVATIVE PROTEIN THERAPIES ANTITRUST LITIGATION | ) ) ) ) | No. 09 C 7666 |
| COUNTY OF SAN MATEO, on behalf of itself and all others similarly situated, | ) ) ) ) | No. 11 C 1468 |
| Plaintiffs | ) ) | Judge Joan B. Gottschall |
| vs. | ) ) ) | Magistrate Judge Arlander Keys |
| CSL LIMITED; CSL BEHRING LLC; CSL PLASMA; BAXTER INTERNATIONAL INC.; and THERAPEUTICS ASSOCIATION, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendants', CSL Behring, CSL Limited, and CSL Plasma Inc. ("CSL" or "Defendants"), Motion to Compel the Mayo Clinic ("Mayo") to Produce Documents [411] in response to its May 10, 2011 subpoena, Defendants' Motion to Compel Downstream Discovery [425] in both the direct and indirect purchaser actions, and the Direct Purchaser Class Plaintiffs', The University of Utah, Hospital Damas Inc., and Ravi Patel, M.D., Inc. D/b/a Comprehensive Blood and Cancer Center ("Plaintiffs"), Motion for a Protective Order Quashing Subpoenas and Precluding Downstream Discovery [420]. For the reasons set forth below, Defendants' Motion to Compel Mayo Clinic [411] is granted in part and denied in part, Defendants' Motion to Compel

Downstream Discovery [425] is denied, and Plaintiffs' Motion for a Protective Order Quashing Subpoenas and Precluding Downstream Discovery [420] is denied.

**DISCUSSION**

The Court is tasked with deciding the proper scope of discovery in a class action suit pursuant to the Sherman Act. Prior to consolidation of this multidistrict litigation, Mayo Clinic was one of the initial individual plaintiffs that filed a complaint against CSL and other Defendants alleging a conspiracy to restrict the supply of two plasma-derivative protein therapies, immune globulin ("Ig") and albumin, within the United States in violation of Section 1 of the Sherman Act. On June 29, 2010, Mayo Clinic filed for voluntarily dismissal, and is now an absent class member. Mayo contends that, as an absent class member, Defendants' Motion to Compel should be denied as legally irrelevant, unduly burdensome, and because CSL has not met its burden of showing entitlement to such discovery.

While absent class members are not required to submit to discovery as a matter of course, the court has the power to authorize the use of discovery procedures under the Federal Rules of Civil Procedure if the court determines that justice to all parties requires that the absent parties furnish certain information and if adequate precautionary measures are taken to

insure that the absent class members are not misled. *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d, 999, 15 Fed. R. Serv. 2d 351, 13 A.L.R. Fed. 243 (7th cir. 1971).

Before ordering discovery from absent class members, the court must be assured that the requested information is actually needed in preparation for trial and that the discovery devices are not used to take unfair advantage of absent class members or as a stratagem to reduce the number of claimants. Moreover, adequate notice must be given to absent class members, so that such persons are fully informed of the discovery order and the possible consequences of their noncompliance. *Id.*

## I. Relevance of Subpoenaed Documents

Mayo's first contention against production of the information requested by CSL is that it pertains to "downstream information," or documents and data reflecting a purchaser's use or sale of a product after the purchase. Mayo opines that such information is irrelevant as a matter of law and inadmissable. Plaintiffs cite to *Hanover Shoe v. United Shoe Machinery Corp.*, 392 U.S. 481, 489, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977) for the proposition that antitrust defendants cannot avoid liability for damages on the grounds that plaintiffs were able to pass-on any additional costs, and a

string of district court rulings barring discovery of downstream data as irrelevant given the unavailability of the "pass-on" defense. Mayo concludes that CSL is attempting to rely upon a pass-on defense which courts generally prohibit in price-fixing cases. (Dkt. #419, P's Opp'n at 6-7.)

CSL argues that out of the 33 document requests contained in their subpoena, the majority of the categories sought are entirely unrelated to downstream information. Therefore, Defendants contend that Mayo has no excuse for failing to produce the majority of the categories of requested information. (Dkt. #424, Def.'s Reply at 3.) Moreover, CSL maintains entitlement to the data that is in fact downstream information, asserting that *Hanover Shoe* and *Illinois Brick* have no applicability here because defendants are not seeking the downstream data in order to assert a pass-on defense. Hedging all bets, CSL opines that this MDL proceeding is not limited to the direct purchaser claims, but also those of the putative indirect purchaser class, and "at a minimum, information relating to [Mayo's] downstream sales of Ig and albumin are relevant to the claims in the indirect purchasers action." (Dkt. #424, Def's Reply at 5.)

The Court must first clarify the *direct purchaser* vs. *indirect purchaser* distinction. This MDL proceeding consists of two parts - a *direct purchaser* class action, which Mayo Clinic's action has been consolidated into, (Consolidated Am. Compl.[Dkt.

#222] ¶ 262, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 1:09-cv-07666 (N.D. Ill. June 4, 2010)), and an *indirect purchaser* class action (Class Action Compl.[Dkt. #1] ¶¶ 300-01, *County of San Mateo v. CSL Ltd.*, 1:11-cv-01468 (N.D. Ill. Dec 14, 2010)). The named *direct purchaser* class brings a putative class action that purports to comprise any entity or person who bought Ig and/or albumin directly from Defendants during the class period, whereas the putative *indirect purchaser* class purports to comprise any entity or person who bought Ig and/or albumin indirectly from Defendants during the class period. Mayo Clinic remains a member of the putative direct purchaser class on whose behalf this action is being asserted.

Plaintiffs seek to highlight the line distinguishing between the direct purchasers and indirect purchasers, arguing that they are two very different groups, represented by different counsel, and are consolidated herein solely for pretrial purposes by the MDL. (Hr'g Tr.17,Feb. 15, 2012.) However, Defendants opine that the distinction is not as clear, pointing to the fact that the substantive allegations of both groups are identical, there are common questions of fact, and that both the "direct and indirect plaintiffs' complaints are verbatim." (Id. at 17.) Defendants seek to blur the line between the two groups in an effort to solicit downstream information from both. Otherwise, Defendants would generally be prohibited from downstream discovery in a

direct purchaser action, yet are able to demand such discovery from an indirect purchaser.

Mayo directs the Court to a plethora of case law in which courts analyzing facts similar to those herein did not permit discovery into downstream data and financial information. *See In re Auto. Refinishing Paint Antitrust Litig.*, 2006 WL 1479819, at \*7-\*8 (E.D. Pa. May 26, 2006) (declining to "depart from the longheld practice of proscribing discovery of downstream data" in a price-fixing case); *see also, e.g., In re Air Cargo Shipping Svcs. Antitrust Litig.*, 2010 WL 4916723, at \*2-\*3 (E.D.N.Y. Nov. 24, 2010); *Meijer Inc. et al. v. Abbott Labs.*, 251 F.R.D. 431, 433-36 (N.D. Cal. 2008); *In re Aspartame Antitrust Litig.*, 2008 WL 2275528, at \*4 (E.D. Pa. April 8, 2008); *In re K-Dur Antitrust Litig.*, 2007 WL 5302308, at \*10-\*15 (D.N.J. Jan. 2, 2007); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. 492, 497-98 (M.D. Pa. 2005) (noting that courts "generally proscribe downstream discovery" in price-fixing cases); *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at \*16 (E.D. Pa. Nov. 29, 2004) ("courts have refused to require production of downstream data in antitrust price-fixing cases"); *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 298-301 (D.D.C. 2000); *In re Folding Cartons Antitrust Litig.*, No. MDL 250, 1978 U.S. Dist. Lexis 20409, at \*4-9 (N.D. Ill. May 5, 1978) (holding plaintiff's financial data irrelevant to the issue of whether defendants

6

conspired to fix prices).

Notwithstanding the above selection of case law in which courts prohibited downstream discovery, some even despite the actions also involving a related indirect purchaser such as the instant case, Defendants, nonetheless, aver that they have a right to the information as "none of the cases addressed the point that a pass-on defense, while not allowed under federal antitrust law, is permitted under the state laws asserted by the County of San Mateo in the indirect purchaser action. *See, e.g., Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1086 (Cal. 2010); *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 4-8 (D.D.C. 2003)." (Dkt. #424, Def's Repl, p.5 n.3.) While Defendants may have realized a possible nuance that arguably distinguishes the facts herein from the long-held case law above, it is futile due to Judge Gottschall, on March 23, 2012, recommending that the Judicial Panel on Multidistrict Litigation remand the indirect purchaser action (*County of San Mateo v. CSL Ltd.*, Case No. 11 C 1468) back to the Northern District of California. (*See* Dkt. #446). For the purpose of the ruling on the instant motion, the Court wil assume that Judge Gottschall's recommendation will be followed.

Aside from the now moot point that the MDL proceeding contains both groups, Defendants state that they "laid out several independent reasons the Court should allow downstream

7

discovery in both the direct and indirect actions." (Dkt. #455, Defs.' Response p. 1.) However, the Court found none of the other arguments articulated sufficiently, and only the relevance to the indirect purchaser action to be the most compelling reason to grant such discovery in an antitrust case. Without the indirect purchaser action being consolidated herein, the Court cannot justify going against the long-held precedent of proscribing downstream discovery in antitrust litigation. Thus, due to Judge Gottshall's recommendation of remanding the indirect purchaser action, the Court will not grant Defendants' Motion to Compel Downstream Discovery, and will instead wait for the JPML's ruling on remand. Therefore, Defendants' Motion to Compel Downstream Discovery [425] is denied.

Defendant is correct, however, that a large number of requests contained in the subpoena are not related to downstream discovery whatsoever, and that Mayo should not be allowed to hide behind the possibility of a pass-on defense as a reason to be totally unresponsive to the subpoena. The Court agrees. Plaintiffs' attempt to cast the entirety of the subpoena in a light of downstream information is unavailing. On the other hand, Mayo is correct that many of the requests, as they are currently worded, are too broad in scope and burdensome to produce. However, the Court finds no compelling reason as to why Plaintiffs should not respond to the other, non-downstream

categories of requested documents as long as the parameters of production are not unnecessarily broad.

## II. Burden of Subpoenaed Documents

Plaintiff asserts that the information Defendants request is unduly burdensome to produce and that therefore, Mayo should not be compelled to produce any further data. (Dkt. #419, P's Opp'n at 8-9.) For example, Mayo points out that subpoenaed request 22 demands "'[a]ll communications with physicians or patients regarding uses or substitutes for Ig/and/or albumin,'" and Mayo contends that "[i]nformation related to each and every use of Ig or albumin since 2003 cannot be derived without a detailed search of individual patient records." (Id. at 8.) Defendants argue that the information sought need not be unduly burdensome, if only Plaintiff would cooperate in efforts to refine the discovery process together. During a meet-and-confer conference call on November 3, 2011, CSL's counsel, "in an effort to explore whether there was any scope for agreement with mayo Clinic on production of a subset of the materials sought by the Subpoena," indicated to Mayo 8 of the 33 requests that CSL sought as a matter of priority. (Dkt. #411, Defs.' Motion at 3) However, Mayo offered only to produce the additional limited set of documents "if CSL would agree to consider Mayo's obligations under the subpoena satisfied with that production." (Dkt. #419, Response, at 5, n.5) The Court agrees that Defendants' subpoena is overly broad,

9

and that discovery into individual patient records poses substantial patient-privacy concerns. However, the Court believes that the parties did not optimally utilize their meet-and-confer opportunities, and that it is possible for the parties to reconvene and possibly devise a mutually agreed upon set of requests for production.

Mayo argues that Defendants' Motion should be denied because Defendants have not moved to compel production of documents by the named Plaintiffs, yet seek them from Mayo, a non-party. (Dkt. #419, Pl.'s Opp'n at 9-12.) Defendants assert that the named Plaintiffs have agreed to produce many of the categories of documents requested, the parties have negotiated search terms to be employed, and "while the University of Utah (one of the named direct purchaser Plaintiffs) recently produced more than 90,000 pages of documents in response to Defendants' requests, Mayo Clinic has refused to produce anything other than the 157 pages of documents it produced to the Federal Trade Commission." (Dkt. #424, Defs.'Reply at 8) The Court finds Mayo's argument misplaced, as the number of pages of documents the named Plaintiffs have produced, or not, is not at all relevant to CSL's motion to compel Mayo Clinic specifically. Mayo argues that CSL is improperly using its subpoena power to target a non-party versus compelling the named Plaintiffs. However, service of subpoenas for documents on third parties is a common and accepted

practice, regardless of what other parties are involved. Pursuant to the Federal Rule of Civil Procedure Rule 45, a "party can also subpoena a third party to produce materials." (Rule 45).

### III. Entitlement to Subpoenaed Documents

Finally, Mayo asserts that its status as a non-party warrants consideration in the analysis of the reasonableness of CSL's requests, and relies upon *McPhail v. First Command Financial Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008) to assert that any further discovery by CSL should be denied. *McPhail* requires a party seeking individualized discovery of an absent class member to satisfy four factors: (1) that the discovery is not designed "as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants," (2) the discovery is "necessary," (3) responding to the discovery would not require "the assistance of technical and legal advice,", and (4) the discovery does not seek information already known to the requesting party. (*Id.*) Mayo contends that CSL does not satisfy any of the four *McPhail* factors, while Defendants argue that not only do they meet all of the four factors, but that *McPhail* is distinguishable and inapplicable to an absent class member such as Mayo. The Court agrees with Defendants.

Mayo Clinic is not your garden variety absent class member.

Prior to their voluntary dismissal, Mayo Clinic was one of the initial individual plaintiffs that filed a complaint against CSL and other Defendants, which was ultimately consolidated in this MDL. Mayo successfully sought appointment of its chosen counsel as one of the two lead firms representing the putative direct purchaser class in the instant lawsuit, on the basis that Mayo was the individual plaintiff with the most at stake – an "empowered plaintiff" in fact. (Pl.'s Mayo Clinic's Resp. To Appl. To Serve on the Pls.' Steering Comm. [133] 1-2.) Since filing for voluntary dismissal, Mayo attempts to detract from its original active role as a class representative, arguing that "Mayo's prior posture is legally irrelevant to the question whether certain information is relevant or not to a claim by direct purchasers under the Sherman Act." (Dkt. #419, Pl.'s Opp'n at 2.)

While the Court agrees with Mayo that its prior posture in this proceeding indeed is irrelevant to CSL's right to downstream discovery and unduly burdensome document requests, it is, however, instrumental in determining the appropriate limits that the Court will set regarding its discovery. A court should inquire as to whether the information sought from absent class members is available from other sources, and whether the proposed discovery will require class members to obtain personal legal counsel or technical advice from an expert. However, a court's

flexibility in this arena is wide-ranging. Where some courts have held that absent class members are not parties for the purpose of discovery by interrogatories, others have permitted limited numbers of interrogatories upon a showing of need, or imposed on defendants the added cost of mailing otherwise permissible interrogatories to absent members of a plaintiff class. (*Manual for Complex Litigation*, Fourth § 21.41 (2011).)

It is clear that deposing absent class members requires a greater justification than written interrogatories, and accordingly, a subpoena solely for documents requires even less justification. Defendants argue that the "cases cited by Mayo Clinic in support of its contention that CSL's Rule 45 third-party subpoena should be quashed are off-point because those concerned discovery requests, such as interrogatories and requests for admission, that the Federal Rules only permit to be served upon a *party*, rather than non-party subpoenas for documents under Rule 45." (Dkt. #424, Defs.'Reply at 9.) The Court agrees that Plaintiffs' reliance on *McPhail* and the like is readily distinguishable and warrants no further analysis of each factor, as *McPhail* sought interrogatories and requests for admission -not documents. Moreover, *McPhail* addressed discovery from absent members of a certified class. In the instant case, the discovery is sought of a "putative but as-yet *uncertified* [emphasis added] class." (Id.) The Court is not convinced by the

precedent that Plaintiff relies on, and does not find Mayo's status as an absent class member a compelling reason to shield it from further non-downstream discovery.

The Court is well aware that one of the principal advantages of class actions over massive joinder or consolidation would be lost if all class members were routinely subjected to discovery. However, herein, the Court is assured that the requested information is actually needed in preparation for trial, and that the discovery devices are not used to take unfair advantage of Mayo as an absent class members or as a stratagem to reduce the number of claimants. Therefore, Defendant's Motion to Compel Mayo Clinic [411] is granted in part and denied in part. The Motion is denied as it relates to any requested downstream information, or broad/vague terminology. However, it is granted as to the other non-downstream related categories of requested information. Defendants must remove all requests for downstream information and narrow the other categories of information sought. The Court encourages the parties to again hold a meet-and-confer, and this time to ardently work together in an effort to agree upon production of non-downstream, relevant, and streamlined categories of data that will be helpful in resolving this litigation. In the event that no mutual agreement can be reached, CSL is ordered to modify its requests in a manner that is consistent to what has been advised herein, and resubmit its

motion to compel. The modified motion to compel will be considered without prejudice.

Finally, a court must "quash or modify a subpoena if it fails to allow a reasonable time for compliance or subjects the deponent to an undue burden." CSC Holdings Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002.)(citing Fed.R.Civ.P. 45.) In deciding whether to grant a motion to quash or modify, a court "must evaluate such factors as timeliness, good cause, utility, and materiality." *(Id.)* (citation omitted)  Although Defendants' subpoena warrants redrafting, it is nonetheless timely and brought forward in good faith.  Overall, the subpoena seeks relevant and material information.  Once modifications are made to remove requests for downstream information and better parameters for information are implemented to control for breadth, CSL's subpoena will be fully enforceable.  Therefore, Plaintiffs' Motion for a Protective Order Quashing Subpoenas and Precluding Downstream Discovery [420] is denied.

In conclusion, the Court suggests that the parties again hold a meet-and-confer, and ardently work together in an effort to agree upon production of non-downstream, relevant, and streamlined categories of data that will be helpful in resolving this litigation and not unduly burdensome to produce.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Mayo Clinic [411] is granted in part and denied in part. Defendants' Motion to Compel Downstream Discovery [425] is denied. Lastly, Plaintiffs' Motion for a Protective Order Quashing Subpoenas and Precluding Downstream Discovery [420] is denied.

Dated: April 27, 2012

E N T E R E D:

*[signature: Arlander Keys]*

ARLANDER KEYS

United States Magistrate Judge