```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


IN RE: PLASMA-DERIVATIVE          )   No. 09 C 7666
PROTEIN THERAPIES                 )
ANTITRUST LITIGATION              )
                                  )
COUNTY OF SAN MATEO, on           )
behalf of itself and all          )   No. 11 C 1468
others similarly situated,        )
                                  )
     Plaintiffs                   )   Judge Joan B. Gottschall
                                  )
     vs.                          )
                                  )   Magistrate Judge
CSL LIMITED; CSL BEHRING LLC;     )   Arlander Keys
CSL PLASMA; BAXTER                )
INTERNATIONAL INC.; and           )
THERAPEUTICS ASSOCIATION,         )
                                  )
     Defendants.                  )
```

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are several motions by the Direct Purchaser Class Plaintiffs, The University of Utah, Hospital Damas Inc., and Ravi Patel, M.D., Inc. D/b/a Comprehensive Blood and Cancer Center ("Plaintiffs") against Defendant, Plasma Protein Therapeutics Association ("PPTA" or "Defendant"): (1) Plaintiffs' Motion to Remove from Sequestration Certain Third-Party Documents that PPTA Contends are Privileged ("First Motion") [537], (2) Plaintiffs' Motion to Remove from Sequestration and Compel PPTA to Produce an Additional Third-Party Document that PPTA Contends is Privileged ("Second Motion") [544], and (3) Plaintiffs' Motion to Appoint a Third-Party to Audit Defendant PPTA's Document Production and to Take the

Depositions of Certain PPTA Document Custodians [541]. For the reasons set forth below, the First [537] and Second Motions [544] are granted, and Plaintiffs' Motion to Appoint a Third-Party to Audit Defendant PPTA's Document Production and to Take the Depositions of Certain PPTA Document Custodians [541] is granted in part and denied in part.

**BACKGROUND**

Defendant PPTA is a non-profit, nation-wide trade association, whose members include producers of plasma-derivative protein therapies, two of which, Baxter and CSL, are defendants in this lawsuit. Within PPTA are various Boards of Directors and Committees that address specific issues impacting the plasma-derivative protein therapies community. Each Director on the Global Board is a representative from PPTA's member companies, and is granted access to information created by PPTA staff.

At issue in Plaintiffs' First Motion are two documents relating to a meeting of PPTA's Global Board of Directors. In late 2011 and early 2012, third-party Octapharma Plasma Inc., a producer of plasma-derivative protein therapies and PPTA member, produced documents in response to Plaintiffs' subpoena. At PPTA's insistence, Plaintiffs sequestered the two documents produced by Octapharma, because PPTA believes them to be protected by the attorney-client privilege and the common-interest doctrine. On January 4, 2013, Plaintiffs moved to

2

remove from sequestration the two documents, arguing that they are not privileged. At issue in both documents is a single paragraph in an e-mail thread from Dennis Curtin, President of Octapharma, to various Octapharma employees (including non-lawyers), recounting an October 14, 2010 PPTA Global Board Meeting. (Pls.' First Motion [537], p. 4.)

Later in the course of this litigation, another third-party and PPTA member, Grifols, produced documents in response to Plaintiffs' subpoena. Afterward, Grifols stated that it believed a number of the documents turned over were protected, including one that is now at issue, and demanded that Plaintiffs sequester the document. Grifols then suggested that Plaintiffs take up the question of whether the one document at issue, a Powerpoint presentation given by PPTA's in-house counsel to PPTA's Global Board of Directors, was protected or not with PPTA directly. Plaintiffs and PPTA were unable to reach an agreement on this document. (Pls.' Second Motion [544], p. 2.) Thus, on January 11, 2013, Plaintiffs filed a Second Motion to remove from sequestration and compel the additional document. In sum, Plaintiffs have submitted a total of three documents, via two motions, for *in camera* review, requesting that all three be removed from sequestration and produced.

Finally, on January 11, 2013, Plaintiffs filed a motion to: (1) appoint a Third-Party auditor; (2) order the depositions of

two PPTA document custodians, and (3) order PPTA to recover all documents deleted by custodians after September 1, 2008 [544]. Plaintiffs argue that PPTA's document preservation efforts were inadequate and warrant a third-party audit, and depositions exclusively related to PPTA's document production, as well as the recovery of deleted e-mails. Defendant argues that Plaintiffs requests are simply a veiled attempt for an extension of the May 31st discovery cutoff, and that PPTA has fully complied with all its document preservation obligations. The Court will discuss each issue in turn.

**DISCUSSION**

**I. REMOVAL FROM SEQUESTRATION AND COMPEL PRODUCTION OF CERTAIN DOCUMENTS**

The purpose of the attorney-client privilege is to protect only those disclosures necessary to obtain informed legal advice that might not have been made absent the privilege. *See, e.g. Ziemack v. Central Corp*., 1995 WL 314526, *3-4 (N.D. Ill. May 19, 1995)(citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). As the party asserting the attorney-client privilege, PPTA has the burden of establishing all of the essential elements: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from

4

disclosure by himself or by the legal adviser, (8) except the protection be waived. *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012)(citing *U.S. v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997)). Communications from an attorney to the client are privileged only to the extent that they reveal confidential information from the client. *See, Ziemack*, 1995 WL 314526 at *4 (citation omitted). Legal advice or communications are not protected unless the proponent of the privilege demonstrates that such advice or communications relate to prior, confidential client communications. *Id.* In addition, the privilege applies only to communications made in confidence, because "a client who speaks openly or in the presence of a third party needs no promise of confidentiality to induce a disclosure." *Wachtel v. Health Net, Inc*., 482 F.3d 225, 231 (3rd Cir. 2007).

The common-interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Communications Corp*., 493 F.3d 345, 364 (3rd Cir. 2007); accord *King Drug Co. Of Florence, Inc. V. Cephalon, Inc*., 2011 WL 2623306, *2 (E.D. Pa. July 5, 2011). To qualify for protection under the common-interest privilege, "the communication must be shared with the attorney of the member of the community of interest and all members of the community must share a common legal interest in the shared communication."

5

*Teleglobe,* 493 F.3d at 364. (emphasis omitted); accord *King Drug*, 2011 WL 2623306, at *2-3. "The attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." *Teleglobe*, 493 F.3d at 365. Meanwhile, the requirement that the parties to the communication share "at least a substantially similar legal interest[1]" prevents abuse of the privilege and "unnecessary information sharing." *Id.*

The common-interest privilege does not apply unless the conditions of privilege are otherwise satisfied. Accordingly, the party asserting the common-interest doctrine has the burden of establishing not only the elements of the attorney-client privilege, but also those of the common interest doctrine. *See, e.g., United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007); *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 118 (E.D Pa. October 19, 2011).

PPTA argues that its status as a trade association makes communications between the association's counsel and its member company representatives, including, but not limited to, communications that are for the purpose of seeking legal advice, providing legal advice, or responding to legal advice, protected

---

[1]The common interest binding parties to the communication must be legal in nature, and not merely commercial or business related. See, *King Drug*, 2011 WL 2623306, at *3.

6

by the attorney-client privilege. Plaintiffs argue that the mere fact that PPTA is a trade association does not automatically establish that all the communications between PPTA's counsel and PPTA members are attorney-client privileged. The Court agrees, as assessments of whether such communications are privileged are made on a case-by-case basis. *See, United States v. Duke Energy Corp.*, 2012 WL 1565228, *13 (M.D.N.C. Apr. 30, 2012); *Harper-Wyman Co. V. Connecticut General Life Ins. Co.*, 1991 WL 62510, *5 (N.D. Ill. Apr. 17, 1991)(holding that the analysis of whether communications between trade association's attorney and association members are privileged "must be on a case-by-case basis, employing the usual concepts of attorney-client privilege."); *Westinghouse Elec. Corp. V. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978)(refusing to decide whether an attorney for a nation-wide, non-profit trade association represented every member of the association).

At the time the e-mail at issue was sent (October 14, 2010), Octapharma was a member of the PPTA and Mr. Curtin was a Director on PPTA's Global Board of Directors. (Def.'s Resp. p.6) In the e-mail, Mr. Curtin recounts a PPTA Global board Meeting to other Octapharma personnel saying:

> They [the PPTA Global Board] proceeded to a
> discussion of whether there should be an
> ethical investigation of Octapharma under
> the ethics code of the PPTA. Paul Rosenthal,
> their attorney, finally agreed there should
> not be an ethical investigation at this point.

7

PPTA has failed to meet their burden of proving how the elements of the attorney-client privilege are met through this communication. And, as a result, common-interest doctrine protection is unavailable, as well. The Court finds the paragraph to contain no confidential legal advice, nor does it seek or provide legal advice. Additionally, the paragraph is a business-related update that is not primarily legal in nature. Morever, the main element of confidentiality is completely waived by the very fact that Mr. Curtin forwarded this e-mail to various other individuals at Octapharma, instead of restricting it to PPTA personnel solely. PPTA argues that Mr. Curtin's circulation of the e-mail does not waive the privilege as the privilege is PPTA's, not his. Such reasoning is compelling but nonetheless not the law. PPTA has failed to meet the elements of the law delineating the attorney-client privilege, and therefore this document must be produced.

Plaintiffs' Second Motion challenges PPTA's claim of privilege over a Microsoft Powerpoint presentation given by PPTA's in-house counsel to PPTA's Global Board of Directors on February 18, 2010. The Powerpoint is entitled "PPTA Legal Affairs Update" and covers topics including in-house counsel outreach, antitrust compliance, litigation defense, and the PPTA bylaws. Plaintiffs obtained this document from Grifols, another producer of plasma-derivative protein therapies and a member of

the PPTA, in response to a subpoena. Grifols produced the document pursuant to a "clawback" agreement. (Def.'s Resp. p. 7)

The Court finds that the Powerpoint presentation given by PPTA's in-house counsel to the local Board of Directors is indeed legal in nature, and clearly provides legal advice. *See Jones v. National Council of Young Men's Christian Associations of the U.S.*, 2011 WL 1740122, at *1 (N.D. Ill. May 3, 2011)(concluding presentation by general counsel to board of directors was privileged.) However, herein the case is distinguished by the confidentiality element. Octapharma was in the room during the Powerpoint presentation on February 18, 2010, as evidenced by PPTA's privilege log. The Powerpoint presentation took place after PPTA was informed that Octapharma did not have a common interest. Having an adverse party in the room during the presentation expressly disclaims any privilege, and also expressly negates confidentiality. The privilege was waived. Therefore, the Court finds that the Powerpoint presentation document must be removed from sequestration and produced.

**II. Third Party Auditor, Depositions of PPTA Document Custodians, and Deleted Document Recovery**

on January 11, 2013, Plaintiffs filed a motion to: (1) appoint a Third-Party auditor; (2) order the depositions of two PPTA document custodians, and (3) order PPTA to recover all

9

documents deleted by custodians after September 1, 2008 [544]. Plaintiffs argue that PPTA's document preservation efforts were inadequate, while PPTA maintains that it has fully complied with all of its document preservation obligations and that the scope of the relief Plaintiffs seek is disconnected from the problems alleged.

A. Third-Party Audit

The Seventh Circuit has held that "district courts should only impose sanctions that are 'proportionate to the circumstances surrounding a party's failure to comply with discovery rules.'" *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (quoting *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 672 (7th Cir. 1996)). Recent guidance provided by the 7th Circuit's Electronic Discovery Committee further clarifies that discovery of e-discovery, like Plaintiffs' vendor audit request, can sometimes take on a life of its own. Consequently, such relief is highly disfavored. *See* 7th Circuit E-Discovery Principles, at Principle 2.04(b) (Aug. 2010) ("[d]iscovery concerning the preservation and collection efforts of another party . . . if used unadvisedly, can contribute to unnecessary expense and delay").

Appointment of a third party auditor to "double check" the work of a litigant's e-discovery vendor is appropriate only in egregious cases. In *Multifeeder Tech., Inc. v. British*

*Confectionary Co. Ltd.*, No. 09-cv-1090, 2012 WL 4135848, at *1 (D. Minn. Sept. 28, 2012), plaintiff first sought, and obtained, an order to compel by identifying specific materials and explaining why they were relevant. Six months later, when defendant still had not complied with the order, plaintiff requested appointment of a third-party computer forensics expert. *Id*. at *2. Even in the face of defendant's acknowledged non-compliance with the order, the court refused, finding that plaintiffs had failed to demonstrate that defendant "acted intentionally or in bad faith with respect to its discovery obligations." *Id*. Only after another month of court-ordered negotiations between the parties did the court conclude that appointment of an auditor was warranted. *Id*.

Herein, Plaintiffs have not obtained a court order against PPTA, and have not attempted to show that PPTA acted "intentionally or in bad faith" with respect to its discovery obligations. Nonetheless, Plaintiffs ask the Court to appoint an auditor, identifying four specific issues with PPTA's document production. Plaintiffs describe in detail how PPTA provided an incorrect estimate of volume of documents produced by search terms, there are date discrepancies between the face of e-mails and metadata, there is an issue with the lower volume of Jan Bult and Julie Birkofer e-mails, and some of Ms. Birkofer's e-mails are corrupted. Plaintiffs have not proven any of these issues to

be intentional or done in bad faith, and neither standing alone nor taken together, do they rise to the level of justifying appointment of a third party e-discovery auditor. PPTA has retained a reputable e-discovery vendor, Kroll Ontrack, as well as qualified in-house and outside counsel, and continues to work towards remedying any issues that have arisen. Therefore, the Court denies the motion for appointment of a third-party auditor.

B. Depositions of PPTA Document Custodians

In addition to appointment of a third-party auditor, Plaintiffs request that the court order "three hour depositions related solely to . . . document production issues" for Mr. Jan Bult and Ms. Julie Birkofer. (Pls.' Brief p. 14) PPTA argues that Plaintiffs fail to offer any basis for a "seemingly punitive action" nor any evidence in support of their allegations warranting the depositions. The Court disagrees. Plaintiffs' brief speaks at long length of several document production errors, general complications, and litigation hold mishandling. While the Court does not feel that any of it reaches a level warranting a third-party auditor, depositions of the two PPTA custodians, which would allow Plaintiffs to better assess whether or not there was full compliance in good fath with preservation and production obligations, is granted.

The depositions are granted and are ordered to take place within two weeks of the Court's ruling on ths motion, the

depositions will not count toward the agreed-upon fact deposition limits in the case, and Plaintiffs are permitted to depose these same witnesses regarding the substantive issues of the case later in this litigation, after PPTA's document production is complete.

C. Deleted Document Recovery After September 1, 2008

Finally, Plaintiffs request that the Court order PPTA to recover, including backup tapes, all documents deleted by custodians Mr. Jan Bult, Ms. Julie Birkofer, or Ms. Brenda Norman after September 1, 2008. PPTA's first litigation hold was issued orally shortly after receipt of Plaintiffs' First Amended Complaint, followed by a more detailed, written hold, and the final preservation order was not entered until more than seven months after the original order, in August 2010. (08/25/10 Stipulation and Order for the Preservation and Production of Documents and Electronically Stored Information [Dkt. 283]) The Court denies the request to order recovery of deleted documents as early as September 1, 2008. Moreover, the Court finds that PPTA carried out its duty to preserve documents in a manner commensurate with the likely scope and role of PPTA's participation in future litigation.

Reasonable preservation efforts do not require a potential litigant to "preserve every single scrap of paper in its business." *Id. See also Danis v. USN Communications, Inc.*, No. 98 C 7482, 2000 WL 1694325, at *32 (N.D. Ill. Oct. 23, 2000). Nor

13

is a party required to preserve every e-mail.  Plaintiffs suggest that an earlier-issued litigation hold would necessarily have included an instruction to halt periodic, document retention policy-mandated purges of PPTA staff e-mail accounts, but such an instruction is required by neither law nor good practice. Therefore, the Court denies Plaintiffs' request to order PPTA to recover all documents deleted by custodians Jan Bult, Julie Birkofer, or Brenda Norman after September 1, 2008.

## CONCLUSION

For the reasons set forth above, the First [537] and Second Motions [544] are granted.  Plaintiffs' Motion to Appoint a Third-Party to Audit Defendant PPTA's Document Production and to Take the Depositions of Certain PPTA Document Custodians and recover deleted e-mail [541] is granted in part and denied in part. Specifically, the Court solely orders the depositions of Mr. Jan Bult and Ms. Julie Birkofer.

Dated: March 04, 2013

E N T E R E D:

*Arlander Keys*
_____
ARLANDER KEYS

United States Magistrate Judge