IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE: PLASMA-DERIVATIVE** | | No. 09 C 7666 |
| **PROTEIN THERAPIES** | ) | |
| **ANTITRUST LITIGATION** | ) | |
| | ) | |
| COUNTY OF SAN MATEO, on | ) | |
| behalf of itself and all | ) | No. 11 C 1468 |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs | ) | Judge Joan B. Gottschall |
| | ) | |
| vs. | ) | Magistrate Judge |
| CSL LIMITED; CSL BEHRING LLC; | ) | Arlander Keys |
| CSL PLASMA; BAXTER | ) | |
| INTERNATIONAL INC.; and | ) | |
| THERAPEUTICS ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant, Plasma Protein Therapeutics Association's ("PPTA"), motion for a protective order to quash Plaintiffs' notices of depositions of its attorneys. Plaintiffs seek to depose Mr. Paul Rosenthal, a partner at law firm Kelley Drye & Warren, LLP ("Kelley Drye") and PPTA's long-time General Counsel, as well as Mr. John Delacourt, PPTA's in-house counsel who, prior to joining PPTA, was an attorney at Kelley Drye, as well. For the reasons set forth below, the Court grants Defendants' motion for a protective order to quash Plaintiffs' notices of depositions of its attorneys.

**BACKGROUND**

This is a putative class action filed by entities alleged to be direct purchasers of two plasma-derivative protein therapies,

immune globulin and albumin, which are used by patients to treat blood and other disorders.  Plaintiffs allege that Defendants conspired to restrict output of these therapies, thereby artificially increasing the price. Defendant PPTA is neither a manufacturer nor a seller of plasma-derivative protein therapies, but rather a non-profit, nation-wide trade association, whose members include producers of plasma-derivative protein therapies, two of which, Baxter and CSL, are defendants in this lawsuit. Within PPTA are various Boards of Directors and Committees that address specific issues impacting the plasma-derivative protein therapies community.  Each Director on the Global Board is a representative from PPTA's member companies, and is granted access to information created by the PPTA staff.

Plaintiffs seek to depose PPTA's General Counsel and in-house counsel, arguing that they have highly relevant information that Plaintiffs cannot obtain from any other source. Specifically, Plaintiffs assert that Messrs. Delacourt and Rosenthal have specialized knowledge relating to key PPTA meetings, including meetings at which Defendants Baxter, CSL, and PPTA improperly discussed pricing and supply of plasma therapies, along with plans to close plasma collection centers. Pls.' Opp., at 1 (Dkt. 611).  Plaintiffs argue that Defendants' other deposition witnesses have generally testified to not recalling these discussions, however, Plaintiffs believe that Messrs.

Delacourt and Rosenthal should, as they were tasked with taking notes and drafting minutes at said meetings. *Id.*

PPTA, by and through its counsel, and pursuant to Fed. R. Civ. P. 26, moves the Court to enter a protective order quashing Plaintiffs' Notices of Deposition of Paul Rosenthal, PPTA's General Counsel, and John Delacourt, PPTA's in-house counsel. Defendants argue that the deposition of an attorney is a drastic measure, and that Plaintiffs are unable to satisfy the four-part standard courts generally employ when deciding whether to allow the deposition of a party's attorney. Defs.' Mem., at 2 (Dkt. 606). Moreover, Defendants opine that the risk of deposing PPTA's counsel outweighs any need Plaintiffs may have for the information. *Id.*

## DISCUSSION

It has been long-held that deposing an opponent's attorney is a "drastic measure." *M&R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992). However, as Plaintiffs highlight, the Seventh Circuit has never provided blanket immunity exempting attorneys from being deposed, nor made them a privileged class. Nonetheless, courts in this district have generally taken a critical view of deposing attorneys who represent a party to the case. *Johnstone v. Wabick,* 220 F.Supp.2d 899 (N.D.Ill.2002); *Prevue Pet Products v. Avian Adventures,* 200 F.R.D. 413 (N.D.Ill. 2001); *Harriston v. Chicago Tribune Co.,* 134

F.R.D. 232 (N.D.Ill.1990); *Marco Island Partners v. Oak Development Corp.,* 117 F.R.D. 418 (N.D.Ill.1987). Therefore, a party seeking to depose an opposing party's attorney shoulders a heavy burden of proving the necessity of such a deposition. *SEC v. Buntrock,* 217 F.R.D. 441, 445 (N.D. Ill. 2003).

Numerous federal courts in this district have followed the Eighth Circuit's four-part *Shelton* test in order to determine whether to allow the deposition of an opposing party's attorney, and it is the requesting party's burden to satisfy that: (1) the information sought is relevant to a major issue in the case; (2) there is no other means for obtaining the relevant information; (3) the need for the information outweighs the inherent risks of deposing opposition counsel; and (4) the information sought is not privileged. *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1987).

Defendants argue that the Plaintiffs cannot satisfy any of the *Shelton* factors listed above, and that, despite requests by PPTA, Plaintiffs have refused to identify the specific information they are seeking from PPTA's counsel, nor how such information is relevant to their case. Plaintiffs maintain that they are entitled to depose Messrs. Delacourt and Rosenthal because they satisfy each of the Shelton factors, and because PPTA has failed to establish any undue burden associated with the

4

taking of the depositions.  The Court will address each factor in turn.

## I. Relevancy of the Information Sought And There Being No Other Means

With respect to the first and second *Shelton* factors, that "the information sought is relevant to a major issue in the case" and that "there is no other means for obtaining the relevant information", the Court finds that the information Plaintiffs seek is indeed relevant to the major issues in the case, but that other sources are available that Plaintiffs must first explore and exhaust.  Plaintiffs have indicated that "the primary purpose of these depositions is to obtain testimony regarding events, especially PPTA meetings, to which [Messrs. Delacourt and Rosenthal] are witnesses."  July 8, 2013 Letter from A. O'Neill to R. Milone (Exhibit 7).  Although Plaintiffs identify four PPTA meetings/events where information exchanged could be relevant to their antitrust claim, Pls.' Opp., at 3 (Dkt. 612), Plaintiffs fail to show that PPTA's two attorneys are the only two individuals there with potential knowledge of the PPTA meetings/events.  Plaintiffs argue that "[m]any of Defendants' witnesses have been *generally* unable to recall details of meetings."  Pl.'s Opp., at 4 (Dkt. 612) (emphasis added). However, Plaintiffs fail to show that the other witnesses were unable to testify about the specific four meetings/events they

5

identify, and Plaintiffs' use of the term "generally" leads the Court to believe that one or more of the witnesses deposed have been perhaps somewhat able to aid in providing some detail of those meetings. Moreover, nearly all of the testimony cited by Plaintiffs, and provided to the Court, do not refer to the four meetings/events identified by Plaintiffs. *See M&R Amusements,* 142 F.R.D. at 305-06 (requesting party must show that "no other means for obtaining the relevant information exists. . . . The rule requires exhaustion of all other reasonable alternatives before a party should seek to depose his opponent's attorney"; denying motion to compel deposition of opposing counsel for failure to do so).

Lastly, other methods, such as written interrogatories, requests for production, or requests for admission, which do not involve the same dangers as an oral deposition of opposing counsel, should be explored first. The deposition of an attorney is "a highly unusual occurrence," *Anderson v. Hale*, 198 F.R.D. 493, 495 (N.D. Ill. Dec.20, 2000), and Plaintiffs have not established the first nor second element of proof. Because the first two elements have not been met, the Court need not address the remaining factors, but will do so in an effort to be clear.

## II. Need Outweighs Inherent Risks and Privilege

Next, Plaintiffs contend that their need for the information far outweighs any risks of deposing PPTA counsel.

6

Plaintiffs argue that "[i]n light of the highly relevant information in their possession, which Plaintiffs cannot obtain from any other source, Plaintiffs' need to depose Delacourt and Rosenthal far outweighs any 'risks' associated with deposing them." Pls.' Opp., at 7 (Dkt. 612). This argument fails, as the Court has found that Plaintiffs have other sources, and is not persuaded that Plaintiffs have exhausted said sources for the information they currently seek.

Additionally, Plaintiffs contend that none of the discussions at any PPTA meetings were privileged "because Octapharma - one of the attendees at the PPTA meetings – viewed itself as not having a common interest with PPTA and not being represented by PPTA counsel." Pls.' Opp. at 9 (Dkt. 612). Plaintiffs' attempt at applying the Court's reasoning from its previous order of production is unavailing, as the facts are not the same and, therefore, the decision is different.

The Court previously ordered PPTA to produce a February 2010 presentation by PPTA's counsel to the PPTA Global Board because "[t]he Powerpoint presentation took place after PPTA was informed that Octapharma did not have a common interest." *See* March 4, 2013 Memorandum Opinion and Order, at 9 (Dkt. 566). Octapharma's common interest with PPTA allegedly ceased on or about January 25, 2010, which is after the four meetings/events identified by Plaintiffs in their Opposition to PPTA's Motion for a Protective

Order. *See* Plaintiffs' Opposition to Defendant PPTA's Motion to Reconsider the Court's March 4, 2013 Order, at 1-2, 5-6 (Dkt. 572) (arguing that PPTA had requested of Octapharma whether it wished to participate in a joint defense agreement on January 25, 2010 and, by the time of the February 2010 presentation, Octapharma had rejected the offer); March 4, 2013 Memorandum Opinion and Order, at 9 (Dkt. 566). The Court finds that Octapharma's presence at the four meetings identified by the Plaintiffs had no effect on the privilege of the information sought via direct deposition of Messrs. Delacourt and Rosenthal.

Lastly, Defendants argue that the information Plaintiffs seek is ultimately protected by the attorney-client privilege. Plaintiffs contend that "[b]y putting PPTA's counsel's 'antitrust guidance' at issue, Defendants have waived any applicable privilege with respect to all communications between PPTA's counsel and the other participants at all PPTA meetings." Pls.' Opp., at 11 (Dkt. 612). The Court finds Plaintiffs argument unavailing. No defendant in the case has raised advice of counsel as a defense, or any defense putting PPTA counsel's advice at issue. Therefore, attorney-client communications between PPTA counsel and PPTA are not at issue herein.

Plaintiffs' examples miss the point, as the witnesses do not put the advice of PPTA's counsel at issue. One of Plaintiffs' examples cites to the testimony of Larry Guiheen, a

representative from Baxter who attended certain PPTA meetings.

*See* Pls.' Opp., at 10 (Dkt. 612).  Mr. Guiheen testified that an

attorney attended PPTA meetings for antitrust compliance

purposes:

> So in the board meetings, there were reminders
> about what the role, you know, the principles
> of how these meetings should be run in terms
> of meeting FTC guidelines. In meeting
> guidelines, there was – outside counsel
> attended these meetings, so there was, you
> know, certainly there to monitor and assure
> that there was – that we were compliant to the
> requirements.

*See* Guiheen Tr., 564:16-23 (Pl.'s Ex. 19).

The Court finds that Mr. Guiheen's testimony does not amount to

PPTA putting the advice of its counsel at issue, instead, he was

answering a general question from Plaintiffs' counsel about

"safeguards that were put in place to ensure that at the meetings

discussion did not stray into any improper subjects." *Id.* at

564:05-07.  This is legally appropriate and the type of advice

the privilege is designed for. It is the trade association that

holds the privilege, not the members, and only PPTA can waive the

privilege.  The Court does not find it to have been waived,

therefore, the information Plaintiffs seek is protected.

Because Plaintiffs have failed to establish the *Shelton*

factors, and specifically failed to persuade the Court that the

information sought from the four identified PPTA meetings/events

cannot be obtained from the significant number of other non-

attorney percipient fact witnesses that have been and will be deposed, the Court grants Defendants' Motion.

## CONCLUSION

For the reasons set forth above, PPTA's Motion for a Protective Order to Quash Plaintiffs' Notices of Deposition of its Attorneys [Dkt. #605] is granted.

Date: September 18, 2013

E N T E R E D:

_____

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT